1  MARK S. LEE (State Bar No. 094103)
   E-mail: mlee@manatt.com
2  Manatt, Phelps & Phillips, LLP
   11355 West Olympic Boulevard
3  Los Angeles, California 90064-1614
   Telephone: (310) 312-4000
4  Facsimile: (310) 312-4224

5  *Attorneys for Plaintiffs*
   THOMAS STEINBECK and BLAKE SMYLE

6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  THOMAS STEINBECK, an individual; and BLAKE SMYLE, an individual, | No. |
| 13                    Plaintiffs, | **COMPLAINT FOR:** |
| 14         vs. | **(1) DIRECT COPYRIGHT INFRINGEMENT;** |
| 15  WAVERLY SCOTT KAFFAGA, an individual; JEAN ANDERSON BOONE, an individual; DAVID SCOTT FARBER, an individual; ANDERSON FARBER KING, an individual; JEBEL KAFFAGA, an individual; BAHAR KAFFAGA, an individual; DRAMATISTS PLAY SERVICE, a New York Corporation; MCINTOSH & OTIS, INC., a New York Corporation; and Does 1-10, inclusive, | **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |
| | **(3) BREACH OF CONTRACT;** |
| | **(4) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND** |
| | **(5) DECLARATORY RELIEF;** |
| 23                    Defendants. | **DEMAND FOR JURY TRIAL** |

25          Plaintiffs Thomas Steinbeck ("Thom") and Blake Smyle ("Blake")

26  allege as follows as their complaint in this action by their attorneys, Manatt Phelps

27  & Phillips, LLP.

28

## SUMMARY OF ACTION

1.      Defendants refuse to acknowledge Plaintiffs' copyright ownership of stage or motion picture rights in three works of John Steinbeck, even though Plaintiffs' ownership of those rights has been expressly or impliedly determined in prior legal proceedings.  Defendants continue to exploit rights owned by Plaintiffs without Plaintiffs' permission, and are not paying Plaintiffs the sums they are owed from Defendants' unauthorized exploitation of those rights despite a legal and contractual obligation to do so.  Plaintiffs seek money damages for the significant harm Defendants' actions have caused, a declaratory judgment that they own certain interests in three of John Steinbeck's intellectual properties, termination of agreements that certain Defendants have materially breached, and injunctive relief as described below.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202, as well as pendent jurisdiction over the state law claims asserted herein.  Venue is proper in this district under 28 U.S.C. § 1391(b) in that, *inter alia*, defendants are located in, found, and/or do business in this district, and a substantial portion of the events described in this complaint took place in this district.

## PARTIES

3.      Plaintiff Thomas Steinbeck ("Thom") is an individual who resides in this District.  He is the only living child of noted author John Steinbeck.

4.      Plaintiff Blake Smyle ("Blake") is an individual who resides in West Virginia.  She is the only living grandchild of author John Steinbeck.

5.      Individual Elaine Steinbeck ("Elaine") was the widow of John Steinbeck ("Steinbeck").  She had no children by John Steinbeck, but did have a daughter by a previous marriage to Zachary Scott.  Elaine inherited certain interests

1  in the works of John Steinbeck, and following her death, passed those interests on

2  to certain testamentary heirs.

3      6.    Defendant Waverly Scott Kaffaga ("Waverly") is an individual who

4  resides in this District.  She is the daughter of Elaine by Zachary Scott, is the

5  executrix of Elaine's will and Estate, and inherited the right to enjoy one-half of

6  Elaine's interest in all copyrights and proceeds from the exploitation of copyrights

7  in the works of John Steinbeck during Waverly's lifetime.  Pursuant to Elaine's

8  will, upon Waverly's death, Waverly's interest in John Steinbeck's works will pass

9  to the living Scott Family Defendants.  Thom and Blake are informed and believe

10  that as the executrix of Elaine's will and Estate, Waverly succeeded to a Power of

11  Attorney held by Elaine during her lifetime concerning Thom's and Blake's

12  interests in Steinbeck works.

13      7.    Defendant Jean Anderson Boone ("Jean") is a sister of Elaine who

14  resides in New York.  She inherited the right to enjoy a one-quarter interest of all

15  copyrights and proceeds from the exploitation of copyrights in the works of John

16  Steinbeck during Jean's lifetime.  Pursuant to Elaine's will, Jean's interests in John

17  Steinbeck's works will eventually pass to the Scott Family Defendants.

18      8.    Defendant Bahar Kaffaga is an individual who resides in this District.

19  He is a son of Waverly, grandson of Elaine, and pursuant to Elaine's will, Plaintiffs

20  are informed and believe that he presently owns a 6.25% interest in all copyrights

21  and proceeds from the exploitation of copyrights in the works of John Steinbeck.

22  Also pursuant to Elaine's will, if he survives Waverly and Jean, Plaintiffs are

23  informed and believe that Bahar eventually will own at least a 25% interest in all

24  copyrights and proceeds from the exploitation of copyrights in the works of John

25  Steinbeck.

26      9.    Defendant David Scott Farber is an individual who resides in Florida.

27  He is a son of Waverly, grandson of Elaine, and pursuant to Elaine's will, Plaintiffs

28

1    are informed and believe that he presently owns a 6.25% interest in all copyrights

2    and proceeds from the exploitation of copyrights in the works of John Steinbeck.

3    Also pursuant to Elaine's will, if he survives Waverly and Jean, Plaintiffs are

4    informed and believe that he eventually will own at least 25% interest in all

5    copyrights and proceeds from the exploitation of copyrights in the works of John

6    Steinbeck.

7         10.   Defendant Jebel Kaffaga is an individual who resides in Texas. He is

8    a son of Waverly, grandson of Elaine, and pursuant to Elaine's will, Plaintiffs are

9    informed and believe that he presently owns a 6.25% interest in all copyrights and

10   proceeds from the exploitation of copyrights in the works of John Steinbeck. Also

11   pursuant to Elaine's will, if he survives Waverly and Jean, Plaintiffs are informed

12   and believe that he will own at least a 25% interest in all copyrights and proceeds

13   from the exploitation of copyrights in the works of John Steinbeck.

14         11.   Defendant Anderson Farber King is an individual who resides in South

15   Carolina. She is a daughter of Waverly, granddaughter of Elaine, and pursuant to

16   Elaine's will, Plaintiffs are informed and believe that she presently owns a 6.25%

17   interest in all copyrights and proceeds from the exploitation of copyrights in the

18   works of John Steinbeck. Also pursuant to Elaine's will, if she survives Waverly

19   and Jean, Plaintiffs are informed and believe that she will own at least a 25%

20   interest in all copyrights and proceeds from the exploitation of copyrights in the

21   works of John Steinbeck.

22         12.   Defendant Dramatists Play Service, Inc. ("DPS"), is a corporation that

23   has its offices in New York and which does business in this District.

24         13.   Defendant McIntosh & Otis, Inc. ("M&O"), is a corporation that has

25   its offices in New York and which does business in this District. At all relevant

26   times herein it has acted as the literary agent for, *inter alia*, John Steinbeck, Elaine

27

28

1  Steinbeck, Thomas Steinbeck, Blake Smyle, and the individual Defendants

2  identified above.

3    14.   Defendants Does 1 through 10, inclusive, are sued here under fictitious

4  names because their true names and capacities are unknown at this time and have

5  been withheld from Plaintiffs.  This complaint will be amended appropriately when

6  their true names and capacities are ascertained.

7    15.   Plaintiffs are informed and believe that Defendants Does 1 through 10

8  are individuals and business entities who are acting in concert and active

9  participation with the named Defendants herein and with each other in committing

10  the wrongful acts alleged herein.

11                    **GENERAL BACKGROUND**

12    16.   John Steinbeck was one of the greatest literary figures of the 20th

13  Century.  Author of dozens of novels, short stories, plays, screenplays, and articles,

14  many of his works, such as *Of Mice and Men*, *Grapes of Wrath*, *East of Eden*, *The*

15  *Red Pony, The Long Valley* and others have become hallmarks of American

16  literature.  Many of his works also have been adapted for stage, screen and

17  television.

18    17.   Steinbeck married Gwyn (Conger) Steinbeck in 1943, and had two

19  children by her, namely plaintiff Thom and John Steinbeck IV ("John IV").

20  Steinbeck divorced Gwyn (Conger) Steinbeck in 1948, and married Elaine in 1950.

21  He remained married to Elaine until his death.

22    18.   Steinbeck died on December 20, 1968.  Elaine inherited certain of

23  Steinbeck's copyright interests in his works pursuant to the residuary provision of

24  his will.  Elaine died in 2003, and her will left her interests in those works to her

25  sisters and daughter, with the intent that they eventually pass to her daughter's

26  children, who are Elaine's grandchildren (the "Scott Family Defendants").

27

28

19.     Besides the rights in Steinbeck's works that passed to Elaine by will, copyright law granted certain rights in Steinbeck's works to his sons and statutory heirs Thom and John IV and their descendants.  At the time of John Steinbeck's death, copyright law granted Elaine, Thom and John IV jointly what are called "renewal" interests in certain Steinbeck works.

20.     Disputes arose between Elaine, Thom and John IV concerning the extent of Thom's and John IV's renewal interests in Steinbeck's works, Elaine's management of the Steinbeck works, and the allocation of the monies received from exploitation of the Steinbeck works in which Thom and John IV had renewal interests.  Thom and John IV filed suit against Elaine in the United States District for the Southern District of New York in 1981 in that certain action entitled *John Steinbeck IV and Thom Steinbeck v. Elaine Steinbeck*, Case No. 81-Civ.-6105 (the "1981 Action") to resolve those disputes .  The 1981 Action was settled in about February 1983 by way of a written settlement agreement (the "1983 Agreement"), a copy of which is attached as Exhibit A.

21.     The 1983 Agreement allocated copyright renewal ownership interests and copyright royalties in certain Steinbeck works between Elaine, Thom and John IV, and required Elaine and M&O to pay Thom and John IV the amounts owed to them as renewal copyright owners as set forth in the 1983 Agreement.  Thom and John IV also granted to Elaine the exclusive power to manage Steinbeck works, including works in which Thom and John IV had copyright interests.  Thom and John IV granted Elaine a power of attorney in connection with the exploitation of those Steinbeck works in which Thom and John IV had or would gain interests as described in the 1983 Agreement.  In the 1983 Agreement Thom and John IV also agreed to use M&O, Elaine's agent, as their agent.  *See* Exhibit A.

22.     The Copyright Act of 1976 created new rights, that it calls "termination rights," which permit an author or the author's statutory heirs to

1  "terminate" certain grants of copyright interests that an author had previously made

2  "notwithstanding any agreement to the contrary." *See, e.g.*, 17 U.S.C.

3  §§ 304(c), (d).  John Steinbeck had granted book publishing, motion picture,

4  television, or other rights in many of his works to third parties during his lifetime,

5  and many of those rights were and are subject to termination under the Copyright

6  Act's termination provisions.  For example, John Steinbeck granted motion picture

7  rights to Republic Pictures Corporation for two of this works, namely *The Red Pony*

8  and *The Long Valley*.  Steinbeck also granted certain non-professional stage rights

9  in *Of Mice and Men* to DPS.  Some of Steinbeck's third party grants became

10  subject to termination beginning as early as 1985, but Elaine and M&O never

11  exercised termination rights in most of those works.  Thom and John IV could not

12  exercise their rights without Elaine's participation at that time, because together

13  Thom and John IV owned only 50% of the termination interests in relevant

14  Steinbeck works, and the termination statute states that only those who own more

15  than 50% of the termination interests can exercise those rights.

16      23.     John IV died on February 7, 1991, leaving his daughter Blake, who

17  was born in 1970.  Under applicable copyright law, upon John IV's death, his

18  inchoate termination rights in Steinbeck works passed to Blake.

19      24.     Following Elaine's death in 2003, Thom and Blake for the first time

20  possessed more than 50% of the termination rights under the relevant termination

21  statute, and they served notices of termination on various entities that had been

22  granted book publishing rights, motion picture rights, and stage rights in various

23  Steinbeck works.  Among the notices of termination Thom and Blake served are the

24  following:

25      (A)     On or about May 20, 2004, Thom and Blake served and filed with the

26  copyright office a Notice of Termination of motion picture rights granted by John

27  Steinbeck in *The Red Pony*.  A copy of that notice of termination is attached as

28

1    Exhibit B.

2          (B)    On or about May 20, 2004, Thom and Blake served and filed with the

3    Copyright Office a Notice of Termination of motion picture rights granted by John

4    Steinbeck in *The Long Valley*.  A copy of that notice of termination is attached as

5    Exhibit C.

6          (C)    On or about April 14, 2006, Thom and Blake served and filed with the

7    Copyright Office a Notice of Termination of motion picture rights granted by John

8    Steinbeck in *Of Mice And Men*.  A copy of that notice of termination is attached as

9    Exhibit D.

10         25.    Disputes arose between Thom and Blake, on the one hand, and Elaine,

11   Elaine's Estate, the Scott Family Defendants, and agent M&O on the other,

12   concerning the validity of the notices of termination served by Thom and Blake, as

13   well as over Elaine's, Waverly's, and M&O's management of the Steinbeck works

14   and failure to exercise available termination rights.  On July 19, 2004, Thom and

15   Blake filed suit against Elaine's Estate, Waverly, the Scott Family Defendants, and

16   others in the United States District Court for the Southern District of New York in

17   that certain action entitled *Thomas Steinbeck and Blake Smyle v. McIntosh & Otis,*

18   *Inc., et al*, Case No. 04-CV-5497 (the "2004 Action"), to resolve those issues.

19         26.    In response to cross motions for summary judgment filed in the 2004

20   Action, The Hon. Richard Owen granted summary judgment in favor of Thom and

21   Blake and affirmed the validity of most of the notices of termination they had filed.

22   *See Steinbeck v. McIntosh & Otis, et al.*, 433 F.Supp.2d 395 (S.D.N.Y. 2006).  In

23   that decision, Judge Owen held, *inter alia*,  that:  a) a notice of termination served

24   on the book publisher for a number of Steinbeck works was valid despite Elaine's

25   entry into a 1994 agreement with the publisher to contract around those rights, and

26   b) two notices of termination for motion picture rights in *The Red Pony* and *The*

27   *Long Valley* were valid despite provisions in the 1983 Agreement which stated that

28

Elaine had the sole right to exercise termination rights, and despite the power of attorney Thom and John IV had signed in favor of Elaine as required by the 1983 Agreement. Specifically rejecting Elaine's Estate's and M&O's argument that the 1983 Agreement and Power of Attorney granted to Elaine by that agreement extinguished Thom's and Blake's power to serve notices of termination themselves, Judge Owen ruled:

> "If this theory is meant to suggest that the terms of the 1983 Settlement Agreement void all of Thom's and Blake's termination rights-that Elaine successfully contracted away the right of these statutory heirs when she settled litigation with them-it is barred by the plain language of 17 U.S.C. § 304(c)(5) and (d)(1). Any portion of the settlement agreement which limits or extinguishes Thom's and Blake's statutory termination rights is invalidated as a statutorily-prohibited 'agreement to the contrary' (citing cases)."

433 F.Supp.2d. at 404, and n. 30.

27.     Defendants appealed Judge Owen's summary judgment. The Second Circuit Court of Appeals reversed the summary judgment in Thom's and Blake's favor regarding book publishing rights in *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d.193 (2d. Cir. 2008) (the "2008 Decision"). However, the 2008 Decision did <u>not</u> reverse the summary judgment in Thom's and Blake's favor regarding their notices of termination for motion picture rights in *The Red Pony* or *The Long Valley*. *Id.* All appeals concerning Judge Owen's summary judgment and the 2008 Decision have now been exhausted, and the time to file any further appeal has long since passed. Thus, Judge Owens' decisions regarding *The Red Pony* and *The Long Valley* now operate as *res judicata* as to the parties to that action, including all of the Defendants in this Action, and collaterally estop the Defendants in this action and those in privity with them from disputing that judgment and the legal arguments it rejected.

28.     Following remand of the 2008 Decision, the 2004 action was transferred from Judge Owen for health reasons, and assigned to the Hon. George B. Daniels.  Judge Daniels granted summary judgment in favor of Defendants on the remaining state law claims, holding, *inter alia*, that under state law neither Elaine's Estate nor M&O owed Thom and Blake any fiduciary duties because Elaine's power of attorney was "coupled with an interest." Judge Daniels further held that under state law M&O's agency relationship with Thom and Blake was constrained by Thom's and John IV's contractual relationship with Elaine as set forth in the 1983 Agreement.  Judge Daniels further held that absent a fiduciary duty, Elaine's Estate, the Scott Family Defendants and M&O owed Thom and Blake only "a generalized duty to account for revenues or to refrain from abuses of power" under state law.  *Steinbeck v. McIntosh & Otis, Inc.,* 2009 WL 928189 (S.D.N.Y. March 31, 2009).

29.     Judge Daniels' ruling concerning the lack of fiduciary duty under state law was affirmed in a "not for publication" decision issued by the Second Circuit Court of Appeals in *Steinbeck v. Steinbeck Heritage Foundation,* 400 Fed. Appx. 572 (2d Cir. 2010) (the "2010 Decision").  However, neither Judge Daniel's state law rulings, nor the 2010 Decision affirming some of them as described above, reversed, amended or modified the copyright termination decisions made under federal law in Judge Owens' summary judgment and the 2008 Decision.

## DEFENDANTS' WRONGFUL CONDUCT

30.     Notwithstanding Judge Owen's summary judgment affirming the validity Thom's and Blake's notices of termination regarding motion picture rights in *The Red Pony* and *The Long Valley*, and rejecting Elaine's Estate's argument that the 1983 Agreement and associated Power of Attorney invalidated Thom's and Blake's notices of termination, as well as the 2008 and 2010 Decisions' lack of a reversal, or even criticism, of Judge Owen's summary judgment with regard to

1  those notices of termination, Defendants since 2010 have continued, and to this day

2  continue, to deny the validity of the 2004 notices of termination for *The Red Pony*

3  and *The Long Valley*, the 2006 Notice of Termination for stage rights in *Of Mice*

4  *And Men,* and all other notices of termination regarding Steinbeck works served by

5  Thom and Blake.  Defendants continue to claim that the 1983 Agreement, and the

6  Power of Attorney associated with it, gave Elaine, and now give Waverly as the

7  Estate's Executrix, and M&O as Waverly's, Thom's and Blake's agents, the sole

8  power to exercise Thom's and Blake's termination rights.  Defendants and M&O

9  dispute the validity of the above-described notices of termination, and all other

10 notices of termination filed and served by Thom and Blake, on the very grounds

11 Judge Owen rejected.  As M&O stated in an email it sent to Thom on behalf of

12 Elaine's Estate on November 9, 2011, that disputed the validity of all of Thom's

13 and Blake's notices of termination based on the 1983 Agreement:

14     "We have alerted . . . the Rights Center that your claim . . . that [you]
       represent[] these film and/or stage rights based upon the works of John
15     Steinbeck: . . . [including] *Of Mice and Men, The Red Pony*, [and]the
       short stories included in the *Long Valley* . . . is blatantly false.  As you
16     well know, Judge Daniels' decision, affirmed by the Second Circuit
       ruled that the Estate of Elaine A Steinbeck, Waverly Kaffaga,
17     Executrix, has 'the complete power and authority to negotiate,
       authorize and take action with respect the exploitation and/or
18     termination of rights in the works of John Steinbeck" by virtue of the
       1983 Settlement Agreement."
19

20 *See* Exhibit E.

21     31.   M&O's actions on behalf of itself, Waverly and the Scott Family

22 Defendants have induced, encouraged and persuaded DPS to continue to exploit

23 stage rights in *Of Mice and Men* despite Thom's and Blake's objection.  M&O also

24 has induced, encouraged and persuaded DPS to pay M&O all monies generated by

25 DPS's exercise of those rights despite the Notice of Termination served by Thom

26 and Blake as shown in Exhibit D.  DPS has advised Thom and Blake that it believes

27 that the Notice of Termination attached as Exhibit D is valid, and that it believes the

28

monies generated pursuant to Exhibit D are owed to Thom and Blake, but that DPS continues to pay those monies to M&O rather than Thom and Blake because M&O, acting on behalf of Elaine's Estate and the Scott Family Defendants, disputes the validity of that notice of termination and demands that M&O, as Thom's and Blake's agent, be paid all such royalties.  M&O, in turn, has not paid Thom and Blake any of the royalties it has received as Thom's and Blake's purported agent from the exploitation of non-professional theatrical stage rights in *Of Mice and Men*, instead diverting and distributing such monies to Waverly, Jean, and the Scott Family Defendants.

## FIRST CLAIM FOR RELIEF

### (Direct Copyright Infringement Against DPS)

32.    Thom and Blake reallege paragraphs 1 through 31 herein.

33.    Steinbeck secured a copyright registration for the novel *Of Mice and Men* on or about February 26, 1937, copyright registration number A:102928, and secured a copyright registration for the a derivative play version of *Of Mice and Men* on December 10, 1937, copyright registration number DP:53848.  Steinbeck secured renewal registrations for both versions of *Of Mice and Men* in 1964 and 1965, renewal registration numbers R:342179 and R:359895, respectively.

34.    Steinbeck granted certain stage rights to DPS pursuant to an agreement dated June 29, 1940.  A true and correct copy of that agreement is attached as Exhibit F.

35.    Thom and Blake served a notice of termination of Steinbeck's grant to DPS described in Exhibit F, listing an effective date of termination on February 27, 2012.  See Exhibit D.  As of that effective date, and continuing to the present, Thom and Blake have pursuant to 17 U.S.C. § 304 owned and own the exclusive copyright in all stage rights in *Of Mice and Men* that Steinbeck granted to DPS.  As the owners of those rights, Thom and Blake have been and are the sole owners

authorized to, among other things, permit the public performance of, reproduction of, copying, distribution, and other exploitation of the non-professional stage rights they recovered by Exhibit D.

36.    Thom and Blake have not authorized DPS to permit the public performance of, reproduce, copy, distribute, or otherwise exploit the stage rights Steinbeck granted to DPS.

37.    DPS nevertheless has since February 27, 2012, and continuing to the present, purported to authorize others to publicly perform, created derivatives of, reproduced, copied, distributed and otherwise exploited the non-professional stage rights in *Of Mice and Men* governed by Exhibits D and F, with knowledge of Thom's and Blake's rights, and thus have infringed and are continuing to infringe Thom's and Blake's copyright in the non-professional stage rights associated with *Of Mice and Men.*

38.    DPS's unauthorized acts have occurred and will continue to occur without Thom's and Blake's permission, consent or authorization unless restrained by the Court.  Such acts therefore have constituted and will continue to constitute a knowing, deliberate and willful infringement of Thom's and Blake's exclusive copyright interests in *Of Mice and Men.*

39.    Thom and Blake have been damaged and will continue to be damaged by DPS's infringement of Thom's and Blake's copyright interests in *Of Mice and Men* in an amount to be proven at trial.  Further, DPS's continuing infringement will cause irreparable harm to Thom and Blake and the value of their copyright interests in *Of Mice and Men.*

## SECOND CLAIM FOR RELIEF

(Contributory Copyright Infringement Against Waverly and M&O)

40.    Thom and Blake reallege paragraphs 1 through 39 herein.

41.     With knowledge of Thom's and Blake's ownership of copyright interests in the non-professional stage rights in *Of Mice and Men* arising from the notice of termination attached as Exhibit D, and of the infringement of those rights that occurs when DPS exploits those rights without Thom and Blake's permission, Waverly, as the executrix of Elaine's Estate, and M&O induced, encouraged, persuaded and caused DPS to directly infringe Thom's and Blake's copyright interests in nonprofessional stage rights to *Of Mice and Men*, and to pay M&O all monies DPS was contractually required to pay pursuant to the 1940 Agreement, so that Defendants, rather than Thom and Blake, could receive the revenues obtained by DPS's exploitation of those rights.

42.     Waverly's and M&O's unauthorized acts have occurred and will continue to occur without Thom's and Blake's permission, consent or authorization unless restrained by the Court.  Such acts therefore have constituted and will continue to constitute a knowing, deliberate and willful contributory infringement of Thom's and Blake's exclusive copyright interests in *Of Mice and Men*.

43.     Thom and Blake have been damaged and will continue to be damaged by Waverly's and M&O's contributory infringement of Thom's and Blake's copyright interests in *Of Mice and Men* in an amount to be proved at trial.  Further, DPS's continuing infringement will cause irreparable harm to Thom and Blake and the value of their copyright interests in *Of Mice and Men*.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract Against Waverly and M&O)

44.     Thom and Blake reallege paragraphs 1 through 43 herein.

45.     Pursuant to the 1983 Agreement, Waverly, as the Executrix of Elaine's Estate, and M&O had contractual obligations to pay Thom and Blake the monies Thom and Blake are owed in connection with their ownership interests in the Steinbeck works, to account to Thom and Blake for the revenues and income due to

them from exploitation of the Steinbeck works in which Thom and Blake own an interest, and to refrain from abusing their power by, *inter alia*, failing to pay Thom and Blake the monies Thom and Blake are owed and diverting and distributing those monies among themselves and the Scott Family Defendants.

46.     Notwithstanding their contractual obligations as described above, Waverly and M&O have breached their contractual obligations under the 1983 Agreement and the accompanying Powers of Attorney and agency relationship by failing to pay Thom and Blake the monies Thom and Blake are owed due to Thom's and Blake's ownership interest in non-professional stage rights in *Of Mice and Men*. Waverly and M&O have further breached their obligations by diverting to themselves the monies that should have been paid to Thom and Blake based on those rights and distributing that money among themselves and the Scott Family Defendants.

47.     Waverly's and M&O's actions described herein have damaged Thom and Blake, and will continue to damage Thom and Blake for so long as said defendants fail to comply with their contractual obligations to pay Thom and Blake the monies owed to Thom and Blake pursuant to Thom's and Blake's ownership interest in non-professional stage rights in *Of Mice and Men*.

48.     Waverly's and M&O's breach of their contractual obligations as described herein is material, and justifies the termination of M&O's agency relationship with Thom and Blake created by the 1983 Agreement, in connection with the Steinbeck works in which Thom and Blake have ownership interests.

## FOURTH CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Waverly and M&O)

49.     Thom and Blake reallege paragraphs 1 through 48 herein.

50.    California and New York law imply a covenant of good faith and fair dealing in all contracts.  Waverly and M&O have a duty pursuant to the rights they gained by the 1983 Agreement and accompanying Powers of Attorney to exercise their discretion in exercising their rights to affect Thom's and Blake's Steinbeck interests in good faith, and in accordance with fair dealing.

51.    Waverly's and M&O's actions in inducing DPS to pay to M&O as Thom's and Blake's agent the monies generated by DPS's exploitation of non-professional stage rights in *Of Mice and Men* so that M&O can divert those funds to itself and the other Defendants were actions undertaken in bad faith to frustrate the benefits Thom and Blake were to receive from their ownership interests in the works of John Steinbeck.

52.    As a result of the actions of Waverly and M&O, and each of them set forth hereinabove, said Defendants have violated the implied covenant of good faith and fair dealing contained in their agreements with Thom and Blake as against Thom and Blake.  As a result of that breach, Thom and Blake are entitled to damages according to proof.

53.    The actions of Waverly and M&O as described hereinabove in violation of said implied covenant of good faith and fair dealing have caused Thom and Blake to suffer damages in an amount according to proof.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief Against All Defendants)

54.    Thom realleges paragraph numbers 1 through 53 herein.

55.    Thom and Blake are informed and believe that Defendants contend that:

(a)    Thom's and Blake's Notices of Termination for *The Red Pony* and *The Long Valley* attached as Exhibits B and C, respectively, are invalid because they were filed and served by Thom and Blake, while "Waverly has 'the complete

power and authority to negotiate, authorize and take action with respect the exploitation and/or termination of rights in the works of John Steinbeck" by virtue of the 1983 Settlement Agreement" (Exhibit E), and Waverly did not serve those Notices of Termination on Thom's and Blake's behalf;

(b)    Thom's and Blake's Notice of Termination of non-professional stage rights in *Of Mice and Men* attached as Exhibit D is invalid because it was served by Thom and Blake, while "Waverly has 'the complete power and authority to negotiate, authorize and take action with respect the exploitation and/or termination of rights in the works of John Steinbeck" by virtue of the 1983 Settlement Agreement" (Exhibit E), and Waverly did not serve that Notice of Termination on Thom's and Blake's behalf;

(c)    Any notice of termination served by Thom and Blake is invalid because "Waverly has 'the complete power and authority to negotiate, authorize and take action with respect the exploitation and/or termination of rights in the works of John Steinbeck" by virtue of the 1983 Settlement Agreement" (Exhibit E)," and Waverly did not serve that Notice of Termination on Thom's and Blake's behalf;

(d)    Except for the renewal interests owned by Thom and Blake pursuant to the 1983 Agreement, Waverly, Jean and the Scott Family Defendants own all copyright interests in the works of John Steinbeck not granted to third parties, including those interests in the Steinbeck works governed by all notices of termination served by Thom and Blake, and none of the notices of termination served by Thom and Blake are valid; and

(e)    Thom and Blake have no copyright interests in non-professional stage rights in, and therefore no Defendant is infringing Thom's and Blake's copyright in that work, and Defendants are not breaching any agreement or the

1    implied covenant of good faith and fair dealing in retaining funds from DPS's

2    exploitation of that work.

3          56.    Thom and Blake dispute Defendants' claims, and contend that:

4          (a)    The right to serve notices of termination that vested in Thom

5    and Blake after Elaine's death are under copyright law new rights independently

6    exercisable by Thom and Blake that are not governed by the 1983 Agreement,

7    accompanying Powers of Attorney or M&O's agency relationship;

8          (b)    To the extent the 1983 Agreement, the accompanying Powers of

9    Attorney and M&O's agency relationship with Thom and Blake purport to

10   contractually prohibit Thom and Blake from exercising their copyright termination

11   rights, those agreements are unenforceable "agreements to the contrary" barred by

12   the relevant copyright termination statute, 17 U.S.C. § 304(c) and (d);

13         (c)    Res Judicata precludes Defendants from disputing the validity of

14   the Notices of Termination Thom and Blake previously filed and served for *The*

15   *Red Pony*, and *The Long Valley*, as Judge Owen's summary judgment already ruled

16   in favor of Thom and Blake on that issue;

17         (d)    Defendants are collaterally estopped from disputing the validity

18   of the Notice of Termination of non-professional stage rights in *Of Mice and Men*

19   filed and served by Thom and Blake as shown in Exhibit D on the grounds that the

20   1983 Agreement or its accompany power of attorney invalidated it, as Judge

21   Owen's summary judgment expressly rejected that argument;

22         (e)    Defendants are collaterally estopped from disputing validity of

23   any Notice of Termination filed and served by Thom and Blake on the grounds that

24   the 1983 Agreement or its accompany power of attorney invalidated it, as Judge

25   Owen's summary judgment expressly rejected that argument;

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313180092.1                                    18                                    COMPLAINT

1    (f) Thom and Blake own the copyright interests in *The Red Pony*,

2 *The Long Valley*, and *Of Mice and Men* described in the Notices of Termination

3 attached as Exhibits B, C and D, respectively;

4    (g) Defendants' continued exploitation of non-professional stage

5 rights in *Of Mice and Men* without Thom's and Blake's permission directly and

6 contributorily infringes Thom's and Blake's copyright interests in that work; and

7    (h) Waverly's and M&O's actions in inducing DPS to continue to

8 exploit non-professional stage rights in *Of Mice and Men* without Thom's and

9 Blake's permission, and diverting and distributing the monies generated from that

10 exploitation to themselves materially breaches their contractual obligations to Thom

11 and Blake and justify termination of the power of attorney and agency relationship

12 created by the 1983 Agreement.

13   57. A genuine controversy exists between Thom and Blake, on the one

14 hand, and Defendants, on the other, as to the validity of Thom's and Blake's notices

15 of termination as described herein, whether Defendants are infringing Thom's and

16 Blake's copyright interests, and whether Waverly's and M&O's actions constitute a

17 material breach of the power of attorney with Waverly's Estate and agency

18 agreement with M&O that justifies an order terminating the agreement and

19 clarifying that Thom and Blake are free to designate another agent of their choosing

20 for all Steinbeck works in which they own or control any copyright interests.

21 Declaratory relief is needed to clarify and adjudicate the rights of the parties on

22 these issues.

23   58. Thom and Blake have no adequate remedy at law.

24       **PRAYER FOR RELIEF**

25   Wherefore, Thom and Blake pray for judgment against Defendants as

26 follows:

27    (1) For compensatory damages in an amount to be proven at trial;

28

(2)     Alternatively, for statutory damages pursuant to the Copyright Act, 17 U.S.C. § 504(c);

(3)     For an injunction prohibiting Defendants, their officers, agents and employees, and all persons in active concert or participation with them, from infringing or persuading others to infringe Thom's and Blake's copyright interests in *The Red Pony*, *The Long Valley*, and *Of Mice And Men*;

(4)     For the imposition of a constructive trust on monies due Plaintiffs that Defendants have received from their exploitation of Thom's and Blake's stage rights in *Of Mice and Men* as described in paragraphs 30, 31, 41-43,47-48 and 52-53 above;

(5)     For an order declaring that Thom and Blake own the copyright interests in *Of Mice and Men*, *The Red Pony*, and *The Long Valley* described in paragraphs 24 and 56, and Exhibits B through D above;

(6)     For an order declaring that Waverly and M&O have materially breached their contractual obligations to Thom and Blake by failing to account to Thom and Blake for the monies Thom and Blake are owed pursuant to their ownership interests in the stage rights in *Of Mice and Men* described above, and have abused their authority by diverting monies owed to Thom and Blake to M&O, Waverly and the Scott Family Defendants;

(7)     For an order terminating Waverly's power of attorney and M&O's agency agreement with Thom and Blake as John IV's successor, and declaring Thom and Blake free to manage their own affairs with regard to any Steinbeck works in which they own or control an interest;

(8)     For an accounting to Thom and Blake, respectively, of all monies owed to them from Defendants' unauthorized exploitation of Thom's and Blake's interests in non-professional stage rights in *Of Mice and Men*;

1           (9)    For Plaintiffs' attorneys' fees and costs pursuant to 17 U.S.C.

2   § 505;

3           (10)   For prejudgment interest on any recovery by Plaintiffs;

4           (11)   For costs of suit incurred herein; and

5           (12)   For such other and further relief as the Court deems just and

6   proper.

7   Dated:   November 7, 2014        MANATT, PHELPS & PHILLIPS, LLP

8

9   By: _____

10   Mark S. Lee
      *Attorneys for Plaintiffs*

11   THOMAS STEINBECK and BLAKE
      SMYLE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff Thomas Steinbeck and Blake Smyle hereby demand a jury trial on all claims in this complaint that are triable to a jury.

Dated:    November 7, 2014                    MANATT, PHELPS & PHILLIPS, LLP


By: _____
Mark S. Lee
*Attorneys for Plaintiffs*
THOMAS STEINBECK and BLAKE
SMYLE