# EXHIBIT A

## SETTLEMENT AGREEMENT

Whereas, John Steinbeck IV and Thom Steinbeck commenced an action in the United States District Court for the Southern District of New York entitled <u>John Steinbeck IV and Thom Steinbeck</u> v. <u>Elaine Steinbeck</u>, 81 Civ. 6105 ("the Action"); and

Whereas, Elaine Steinbeck filed an answer in the Action denying the material allegations of the complaint as amended and liability therefor, and asserting various affirmative defenses; and

Whereas, Elaine Steinbeck moved for summary judgment, which motion was granted on December 8, 1982; and

Whereas, the Action was dismissed with prejudice on December 28, 1982, and judgment in favor of Elaine Steinbeck was entered on January 3, 1983; and

Whereas, John Steinbeck IV and Thom Steinbeck filed a Notice of Appeal to the United States Court of Appeals for the Second Circuit; and

Whereas, John Steinbeck IV and Thom Steinbeck have stated their intention to file an action against Elaine Steinbeck for copyright infringement in connection with the foreign exploitation of the works of John Steinbeck, and against McIntosh and Otis, Inc. ("M & O") for breach of fiduciary duty, and have indicated that they may seek to

challenge the will of John Steinbeck (hereinafter collect-
ively referred to as the "Unasserted Claims"); and

Whereas, John Steinbeck IV and Thom Steinbeck and
Elaine Steinbeck (hereinafter the "Parties") are desirous of
settling the Action and the Unasserted Claims in order to
avoid the burdens and expenses of further litigation,

It is hereby agreed that:

1.   Elaine Steinbeck shall pay to John Steinbeck IV
and to Thom Steinbeck $66,876.30 each, which amount repre-
sents the difference between one-half and one-third of the
net royalties received through December 31, 1982 from the
domestic exploitation during their copyright renewal terms of
those works of John Steinbeck which entered their copyright
renewal terms after his death (the "renewed works") and their
derivatives which were initially licensed during the renewal
terms of the renewed works.  As used in this Agreement, the
phrase "renewal term" shall mean the 47 year term granted
pursuant to the U.S. Copyright Law, 17 U.S.C. § 304(a), ir-
respective of whether there has been a termination of grants
and/or renegotiation of rights pursuant to 17 U.S.C. § 304.

2.   The Parties shall each be entitled from Decem-
ber 31, 1982 forward to receive one-third of the net royal-
ties received from the domestic exploitation during their
copyright renewal terms (a) of the renewed works and their

derivatives which were initially licensed during the renewal terms of the renewed works and may be licensed in the future; and (b) so long as all the Parties are alive, of those works of John Steinbeck which will enter their copyright renewal terms in the future and their derivatives which may be initially licensed during such renewal terms.  Upon the death of any of the Parties, all royalties payable under this Paragraph shall be paid to the deceased party's executors, administrators, successors, representatives, heirs and assigns.

3.   Elaine Steinbeck or her executors, administrators, successors, representatives, heirs and assigns are the sole owners of all foreign copyrights in the works of John Steinbeck and all rights deriving therefrom and shall be the sole recipients of all royalties earned from the foreign exploitation of the works of John Steinbeck and their derivatives, including but not limited to: (a) all works which entered their renewal terms after John Steinbeck's death; and (b) all works which will enter their renewal terms in the future; and John Steinbeck IV and Thom Steinbeck hereby relinquish all present and future claims thereto; provided, however, that royalties earned from sales outside the United States of the United States publishers' editions of the

3

renewed works shall be shared in accordance with the terms of paragraphs 1 and 2 above.

4.   All sums due and owing to John Steinbeck IV and to Thom Steinbeck under paragraphs 1 and 2 of this Agreement shall be paid to them through their attorneys, Lowe, Bressler & Kaufman, 2700 Que Street, N.W., Washington, D.C.

5.   The Parties hereby appoint M & O as their literary agent to administer in the future, as it has in the past, all copyrights and rights deriving therefrom in the works of John Steinbeck.  Said appointment shall be termi-nable solely at the discretion of Elaine Steinbeck.  Elaine Steinbeck and/or her agent shall have the complete power and authority to negotiate, authorize and take action with respect to the exploitation and/or termination of rights in the works of John Steinbeck in which John Steinbeck IV and Thom Steinbeck have or will have renewal or termination rights.  In order to effectuate the terms of this Paragraph, John Steinbeck IV and Thom Steinbeck shall each execute, simultaneously with the execution of this Agreement, an irrevocable power of attorney in favor of Elaine Steinbeck in the form attached hereto as Exhibit A.

6.   Elaine Steinbeck and/or the literary agent shall maintain an accurate set of books and records reflec-ting royalties earned from the domestic exploitation of the

4

orks of John Steinbeck in which John Steinbeck IV and Thom Steinbeck have or will have renewal rights and shall, without notice or demand, provide them with semi-annual accounting statements.

7.   This Agreement shall supersede the letters dated January 21, 1974 from Elizabeth R. Otis to John Steinbeck IV and Thom Steinbeck.  With the exception of said letters, the Parties hereby ratify and confirm all existing contracts and agreements previously executed by them or by M & O on their behalf with respect to those works of John Steinbeck in which they have rights under the U.S. Copyright Law.

8.   Simultaneously with the execution of this Agreement, John Steinbeck IV and Thom Steinbeck shall execute a release in favor of Elaine Steinbeck in the form attached hereto as Exhibit B.

9.   Simultaneously with the execution of this Agreement, John Steinbeck IV and Thom Steinbeck shall execute a release in favor of M & O in the form attached hereto as Exhibit C.

10.   Within five days after the execution of this Agreement, John Steinbeck IV and Thom Steinbeck, through their attorneys, Lowe, Bressler & Kaufman, shall withdraw the Notice of Appeal referred to herein and hereby agree never to assert the Unasserted Claims.

11.   The terms of this settlement shall be kept confidential and shall not be communicated in any way to any-one other than the Parties and their heirs, successors and assigns, their attorneys and accountants, and M & O and its attorneys, except to the extent that disclosure may be required by law.

12.   This Agreement represents a compromise of the claims asserted in the Action and of the Unasserted Claims and is not and shall not be construed, represented or argued to be an acknowledgment of the merits of the claims asserted in the Action or the Unasserted Claims, or an admission of liability on the part of Elaine Steinbeck or M & O.

13.   This Agreement shall not be modified in any way except by a written agreement signed by the Parties.

14.   This Agreement shall bind the Parties and their heirs, successors and assigns.


_____
Elaine Steinbeck


_____
John Steinbeck IV


_____
Thom Steinbeck


6

## Power of Attorney

I, John Steinbeck IV, hereby irrevocably appoint Elaine Steinbeck my attorney-in-fact to act in my place, to the extent I am permitted by law to act through an agent or attorney-in-fact, as follows: to exercise my rights of renewal and rights to terminate grants to third parties and make new contracts and grants and assignments of copyrights, and to negotiate and sign contracts and agreements and otherwise take and authorize action on my behalf, directly or through such agents or attorneys-in-fact as she, in her sole discretion, may appoint, all solely with respect to the works of John Steinbeck in which I now have or will have renewal or termination rights under the U.S. Copyright Law.

_John Steinbeck IV_

Dated:

February 16, 1983

EXHIBIT A

## Power of Attorney

I, Thom Steinbeck, hereby irrevocably appoint Elaine Steinbeck my attorney-in-fact to act in my place, to the extent I am permitted by law to act through an agent or attorney-in-fact, as follows: to exercise my rights of renewal and rights to terminate grants to third parties and make new contracts and grants and assignments of copyrights, and to negotiate and sign contracts and agreements and otherwise take and authorize action on my behalf, directly or through such agents or attorneys-in-fact as she, in her sole discretion, may appoint, all solely with respect to the works of John Steinbeck in which I now have or will have renewal or termination rights under the U.S. Copyright Law.

Thom Steinbeck

Dated:

February 22, 1983

EXHIBIT A

ṉṉṉ. Cḥạṭ John Steinbeck IV

as RELEASOR,

...sideration of the sum of sixty six thousand eight hundred seventy six and 30/100 dollars

and other good and valuable consideration ($ 66,876.30),

...ceived from

Elaine Steinbeck

as RELEASEE,

...eipt whereof is hereby acknowledged, releases and discharges

Elaine Steinbeck

the RELEASEE, RELEASEE'S heirs, executors, adminis-
tors, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds,
...ls, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents,
...cutions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR,
...LEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may have
...upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this
...LEASE, except such claims as may arise from the obligations set
forth in the Settlement Agreement between the Releasor
and Releasee executed contemporaneously herewith.

Whenever the text hereof requires, the use of singular number shall include the appropriate plural number as the text of
within instrument may require.

This RELEASE may not be changed orally.

In Witness Whereof, the RELEASOR has hereunto set RELEASOR'S hand and seal on the

of FEB 16 19 83.

In presence of KAREN C MICHAEL

_____ L.S.

...TE OF Colorado , COUNTY OF Boulder ss.:
On FEBRUARY 16 19 93 before me KAREN MICHAEL
...onally came JOHN STEINBECK IV

...e known, and known to me to be the individual(s) described in, and who executed the foregoing RELEASE, and duly
...owledged to me that he executed the same.

Karen C Michael
NOTARY PUBLIC MAY 11 935
Commission Expi...

**Know That** Thom Steinbeck, AKA's Thomas Steinbeck

as **RELEASOR**,

in consideration of the sum of **sixty six thousand eight hundred seventy six and 30/100 dollars and other good and valuable consideration**

($66,876.30 ),

received from **Elaine Steinbeck**

as **RELEASEE**,

receipt whereof is hereby acknowledged, releases and discharges

**Elaine Steinbeck**

the RELEASEE, RELEASEE'S heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this **RELEASE, except such claims as may arise from the obligations set forth in the Settlement Agreement between the Releasor and Releasee executed contemporaneously herewith.**

══════════════════ GENERAL ACKNOWLEDGMENT ══════════════════

State of California }
} ss.
County of _____ }

On this the _____ day of _____ 19 __ before me,

_____

the undersigned Notary Public, personally appeared

_____

☐ personally known to me

☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) _____ **is** _____ subscribed to the within instrument, and acknowledged that _____ **he** _____ executed it

WITNESS my hand and official seal

_____
Notary's Signature

**Know That** Thom Steinbeck  AKA  Thomas Steinbeck, **J.S.**

as **RELEASOR,**

consideration of the sum of  **One dollar and no/100**

**and other good and valuable consideration.**

ceived from  **McIntosh and Otis, Inc.**

($ **1.00** ),

as **RELEASEE,**

ceipt whereof is hereby acknowledged, releases and discharges

**McIntosh and Otis, Inc.**

the RELEASEE, RELEASEE'S heirs, executors, adminis-
ators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds,
lls, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents,
ecutions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR,
ELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have
r, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this
ELEASE.

---

**GENERAL ACKNOWLEDGMENT**

State of California

County of _Alameda_  } ss.

On this the _22nd_ day of _February_ 19 _83_ before me.

_Barbara Grant Margaret_

the undersigned Notary Public, personally appeared

_Thom Steinbeck asker Thomas Steinbeck_

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) ___is___ subscribed to the
within instrument, and acknowledged that ___he___ executed it
WITNESS my hand and official seal.

_Barbara Grant Margaret_
Notary's Signature

# EXHIBIT B

## NOTICE OF TERMINATION

### VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED

TO: Paramount Pictures Corporation, successor-in-interest to Republic Pictures Corporation
and Repix, Inc.
5555 Melrose Avenue
Los Angeles, CA 90038
Attn: Legal Department

Estate of Elaine Steinbeck
c/o McIntosh and Otis, Inc.
353 Lexington Avenue
New York, New York 10016
Ph: 212-687-7400

PLEASE TAKE NOTICE that pursuant to 17 U.S.C. §304(d), Thomas Steinbeck and
Blake Smyle, he being the sole surviving child of deceased author John Steinbeck, and she
being the sole surviving child of deceased John Steinbeck IV, who was the only other child of
deceased author John Steinbeck, terminate grants made to you before January 1, 1978 in the
works described below:

| Title | Author | Date Copyright Secured | Copyright Reg: # | Effective Date of Termination |
|---|---|---|---|---|
| The Red Pony and all stories included therein, namely: | John Steinbeck | Sept. 24, 1937 | A:109632 | Sept. 25, 2012 |
| The Gift | John Steinbeck | Oct. 18, 1933 | B:204366 | Oct. 19, 2008 |
| The Great Mountains | John Steinbeck | Nov. 16, 1933 | B:206800 | Nov. 17, 2008 |
| The Promise | John Steinbeck | July 20, 1937 | B:345443 | July 21, 2012 |

Deceased author John Steinbeck's widow Elaine Steinbeck being deceased, and there
being no other surviving child or grandchild of deceased author John Steinbeck, Thomas
Steinbeck and Blake Smyle are all of the persons whose signatures are necessary to terminate
the grants described herein under 17 U.S.C. §304. Termination of renewal term rights under
17 U.S.C. §304(c) has not been exercised before.

This notice terminates all rights granted to you or your predecessors in interest by
Charles K. Feldman Group Productions and Lewis Milestone Productions, Inc. pursuant to an
agreement and supplemental agreement dated March 2, 1947, which was referenced by an
instrument dated April 19, 1949, and recorded in the U.S. Copyright Office on June 29, 1949 at
Volume 711, pages 205-206, which granted to Republic Pictures Corp. the right to release,
exhibit and distribute a motion picture entitled "The Red Pony", based on the story and/or
literary material by John Steinbeck entitled "The Red Pony", "The Great Mountains", "The

"Gift", "The Long Valley", "Leader of the People", and "The Promise", and to broadcast by radio material therefrom, as well as to exploit limited publication rights therein for advertising purposes. This notice also terminates all rights you or your predecessors-in-interest received from on assignment by deceased author John Steinbeck to Lewis Milestone of all motion picture, radio and television rights in the above works, and in the stories "The Great Mountains", "The Promise", and "The Gift" by an agreement between those parties dated September 26, 1946 and recorded as three separate instruments dated October 11, 1946 and recorded February 11, 1947 in volume 626, pages 89-94 of the U.S. Copyright Office Records, which rights Republic Pictures Corp. was assigned by a certificate of sale and foreclosure dated September 25, 1952, recorded November 28, 1952, in volume 857, pages 2 and 3 in the U.S. Copyright Office record.

Dated: May 13, 2004

_____
Thomas Steinbeck

Dated: May 17, 2004

_____
Blake Smyle

40645393.1

# EXHIBIT C

## NOTICE OF TERMINATION

<u>VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED</u>

TO:   Paramount Pictures Corporation, successor-in-interest to Republic Pictures Corporation
and Repix, Inc.
5555 Melrose Avenue
Los Angeles, CA 90038
Attn: Legal Department

Estate of Elaine Steinbeck
c/o McIntosh and Otis, Inc.
353 Lexington Avenue
New York, New York 10016
Ph: 212-687-7400

PLEASE TAKE NOTICE that pursuant to 17 U.S.C. §304(d), Thomas Steinbeck and
Blake Smyle, he being the sole surviving child of deceased author John Steinbeck, and she
being the sole surviving child of deceased John Steinbeck IV, who was the only other child of
deceased author John Steinbeck, terminate grants made to you before January 1, 1978 in the
works described below:

| Title | Author | Date Copyright Secured | Copyright Reg. # | Effective Date of Termination |
|---|---|---|---|---|
| The Long Valley and all stories included therein, namely: | John Steinbeck | Sept. 16, 1938 | A:388033 | Sept. 17, 2013 |
| Chrysanthemums | John Steinbeck | | | |
| White Quail | John Steinbeck | | | |
| Flight | John Steinbeck | | | |
| Snake | John Steinbeck | | | |
| Breakfast | John Steinbeck | | | |
| Raid | John Steinbeck | | | |
| Harness | John Steinbeck | | | |
| Vigilante | John Steinbeck | | | |
| Johnny Bear | John Steinbeck | | | |
| Murder | John Steinbeck | | | |
| Saint Katy The Virgin | John Steinbeck | | | |
| Red Pony | John Steinbeck | | | |

Deceased author John Steinbeck's widow Elaine Steinbeck being deceased, and there
being no other surviving child or grandchild of deceased author John Steinbeck, Thomas
Steinbeck and Blake Smyle are all of the persons whose signatures are necessary to terminate
the grants described herein under 17. U.S.C. §304. Termination of renewal term rights under
17 U.S.C. §304(c) has not been exercised before.

This notice terminates all rights granted to you or your predecessors in interest by

Charles K. Feldman Group Productions and Lewis Milestone Productions, Inc. pursuant to an agreement and supplemental agreement dated March 2, 1947, which was referenced by an instrument dated April 19, 1949, and recorded in the U.S. Copyright Office on June 29, 1949 at Volume 711, pages 205-206, which granted to Republic Pictures Corp. the right to release, exhibit and distribute a motion picture entitled "The Red Pony", based on the story and/or literary material by John Steinbeck entitled "The Red Pony", "The Great Mountains", "The Gift", "The Long Valley", "Leader of the People", and "The Promise", and to broadcast by radio material therefrom, as well as to exploit limited publication rights therein for advertising purposes. This notice also terminates all rights you or your predecessors-in-interest received from on assignment by deceased author John Steinbeck to Lewis Milestone of all motion picture, radio and television rights in the above works, and in the stories "The Great Mountains", "The Promise", and "The Gift" by an agreement between those parties dated September 26, 1946 and recorded as three separate instruments dated October 11, 1946 and recorded February 11, 1947 in volume 626, pages 89-94 of the U.S. Copyright Office Records, which rights Republic Pictures Corp. was assigned by a certificate of sale and foreclosure dated September 25, 1952, recorded November 28, 1952, in volume 857, pages 2 and 3 in the U.S. Copyright Office record. This notice also terminates all other rights referenced in the above-described agreements relating to these works.

Dated: May 13, 2004

Dated: May 17 2004

Thomas Steinbeck

Blake Smyle

40645393.9

# EXHIBIT D

# AMENDED NOTICE OF TERMINATION

TO:   Dramatists Play Service, Inc.
      c/o Stephen Sultan
      440 Park Avenue South
      New York, New York  10016

      Estate of Elaine Steinbeck
      c/o McIntosh & Otis, Inc.
      323 Lexington Ave.
      New York, New York  10016

PLEASE TAKE NOTICE that pursuant to 17 U.S.C. §304(d), Thomas Steinbeck and Blake Smyle, he being the sole surviving child of deceased author John Steinbeck, and she being the sole surviving child of deceased John Steinbeck IV, who was the only other child of deceased author John Steinbeck, terminate grants John Steinbeck made to Dramatists Play Service before January 1, 1978 in the works described below:

| Title | Author | Date Copyright Secured | Copyright Reg. # | Effective Date of Termination |
|---|---|---|---|---|
| Of Mice and Men (Novel) | John Steinbeck | February 26, 1937 | A:102928 | February 27, 20012 |
| Of Mice and Men (Play) | John Steinbeck | December 10, 1937 | DP: 53848 | December 11, 20012 |

Deceased author John Steinbeck's widow Elaine Steinbeck being deceased, and there being no other surviving child or grandchild of deceased author John Steinbeck, Thomas Steinbeck and Blake Smyle are all of the persons whose signatures are necessary to terminate the grants described herein under 17 U.S.C. §304.  A right of termination for the extended renewal term pursuant to 17 U.S.C. § 304(c) has not been previously exercised.

This Notice terminates all grants of rights made to Dramatists Play Service, Inc. or its predecessors in interest in the above described works before January 1, 1978, including but not limited to any and all grants of book or play publication rights, dramatic rights, theatrical stage rights, or other rights of any nature in said works, as well as all amendments, revisions, or renewals of such grants. Such grants include, but are not limited to that certain contract dated 29 June, 1940 between John Steinbeck and Dramatists Play Service, Inc. and all other agreements entered into between John Steinbeck and Dramatists Play Service, or its predecessors in interest, successors in interest, or assignors before January 1, 1978, as well as all amendments, revisions, or renewals of or to said agreements.

Dated: April _13_ , 2006
                                        _Thomas Steinbeck_
                                        Thomas Steinbeck

Dated: April _13_ , 2006
                                        _Blake Smyle_
                                        Blake Smyle

V3481 D590

1



406/5393.13

# EXHIBIT E

**From:** Eugene Winick <genewinick@mcintoshandotis.com>

**Date:** November 9, 2011 2:01:01 PM PST

**To:** Thomas Steinbeck <palladingroup@cox.net>

**Cc:** Elizabeth Winick Rubinstein <ewinick@mcintoshandotis.com>

Dear Gail,

We write to let you know that we are very troubled by your interference with the Warner Brothers East of Eden agreement. We apprised Warner Brothers concerning the inaccurate information you transmitted to them. I attach a copy of our correspondence.

We have also alerted Emilly Parker at the Rights Center that your claim in your email to her that "The Palladin Group also represents these film and/or stage rights based upon the works of John Steinbeck: The Grapes of Wrath, Of Mice and Men, The Red Pony, the short stories included in The Long Valley; Flight, The Chrysanthemums, The White Quail, The Snake, Breakfast, The Raid, The Harness, The Vigilante, Johnny Bear, The Murder, and Saint Katy the Virgin" is blatantly false.

As you well know, Judge Daniels' decision, affirmed by the Second Circuit, ruled that the Estate of Elaine A Steinbeck, Waverly Kaffaga, Executrix, has "the complete power and authority to negotiate, authorize and take action with respect to the exploitation and/or termination of rights in the works of John Steinbeck" by virtue of the 1983 Settlement Agreement. Since the US Supreme Court denied Thom's petition for certiorari, these decisions are final and binding. As you also know, the same decisions denied Thom's attempt to terminate McIntosh and Otis's appointment as agent for the works.

The decisions and their effect are clear, and there can be no good faith basis for your misrepresenting the facts to Warner Brothers. Thus, we have to assume that you (and Thom) are deliberately attempting to interfere with deals made by the Estate of Elaine A. Steinbeck. Should you or Thom persist in interfering with agreements, proposed deals and other exploitations of the Steinbeck Works, this letter is to inform you that McIntosh and Otis and/or the Estate reserve all their rights, including the right to pursue any available remedies such as interference with contract.

McIntosh and Otis, Inc. on behalf of the Estate is working to provide the best possible results for the works of John Steinbeck. Attempts to circumvent such efforts only devalue the works and dilute Thom's, as well as Blake's and Nancy's , potential interests. It is absolutely self-defeating.

We trust we will not have to write you again in this regard.

Yours,

Gene and Elizabeth

1

# EXHIBIT F

MEMORANDUM OF AGREEMENT, made this 29th day of June, 1940, between JOHN STEINBECK, hereinafter called the Author; and the DRAMATISTS PLAY SERVICE, INC., hereinafter called the Service.

1. The Author hereby grants and assigns to the Service the sole and exclusive right to lease the play entitled OF MICE AND MEN to non-professional producers for performances on the stage, with living actors, throughout the world, in the English language only, for a rental fee of not more than Thirty-five Dollars ($35.00) for the first performance and Twenty-five Dollars ($25.00) a performance for subsequent performances, which fee may in the discretion of the Service be reduced in consideration of special circumstances. The Author guarantees and represents that he has full power to make this agreement and grant.

2. The Author hereby authorizes the Service to publish the play in a paper-bound edition to sell at retail for not more than Seventy-five Cents (.75) a copy, for the general purpose of promoting the leasings of the play to non-professional producers, provided, however, that the Service secures whatever consent may be necessary from THE VIKING PRESS, publisher of the regular trade edition.

3. The Author grants to the Service the right to publish short excerpts from the said play, at its discretion, in a collection or anthology designed to advertise the Service, its plays, and authors. The Author shall receive no payment for such use of the excerpts as long as no other author, from whose play excerpts are published in the collection or anthology, receives payment for such use. If any such other author is paid therefor, than the author herein shall be paid at the same rate. This grant is contingent upon the Service's securing the consent of The Viking Press to the publication of excerpts in such collection or anthology.

4. If the Service publishes the play under its own imprint, all expenses of publication shall be borne by the Service, except that, if the Service is required by the Author to make any corrections or alterations in the type (other than those necessitated by typographical errors) costing in excess of ten per cent (10%) of the cost of original composition, the Author agrees to pay such excess cost.

5. The Author guarantees and represents that the said play is innocent and contains no matter libelous or otherwise unlawful, and that he will hold harmless the Service against any suit, claim, demand or recovery, by judgment finally sustained, by reason of any violation of proprietary right or copyright by, or any unlawful matter contained in, the said play.

6. The Service agrees to advertise the said play to non-professional producing groups and to use its best efforts to lease the play to such groups for production.

7. The Service agrees to present to the Author ten (10) free copies of the said play upon publication and to permit the Author to buy additional copies at forty per cent (40%) discount from the retail catalogue price, for his own personal use.

8. The Service agrees to pay jointly to the Author and Sam H. Harris, the Manager, as long as the Manager is entitled to share therein, and thereafter solely to the Author, eighty per cent (80%) of all monies received by it from non-professional performances of said play. The respective shares of such monies due the Author and the Manager shall be paid to each direct: i.e., to the Manager, on performances in the United States and Canada, fifty per cent (50%) of the aforesaid eighty per cent (80%); on performances in foreign countries other than Great Britain and Canada, forty per cent (40%) of the aforesaid eighty per cent (80%); to the Author the balance remaining, or the full eighty per cent (80%); whenever the Manager is not entitled to share therein. On performances in Great Britain (i.e. the United Kingdom of Great Britain, Northern Ireland and the Irish Free State) the Manager is not entitled to share therein. Statements of monies received shall be rendered on the first day of February and the first day of August in each year for the semi-annual period up

to the first day of the month preceding such statements, and shall be accompanied by payment of the amount shown to be due thereon. The Service also agrees, provided the net sum due is not less than Ten ($10.00) Dollars, to make payment of the amount due at any time upon written demand, the Service having two (2) weeks within which to make such payment and submit an accounting.

If any monies due from non-professional performances of the play are not paid to the Service within a reasonable time, it is agreed that the Service shall be entitled to employ an attorney to collect such monies, and in that event the percentages due the Service and the Author and the Manager under this contract shall be based upon the amount actually received by the Service, after the deduction of the fee and expenses paid such attorney.

9.   If the Service publishes the play under its own imprint, the Service agrees to pay to the Author a royalty of ten (10%) percent of the catalog retail price on all copies of the play published and actually sold by the Service, which shall be construed as not including copies given to the Author, copies given away for review, and copies otherwise given away for the purpose of promoting the sale of the play. Statements of sales shall be rendered on the first day of February and the first day of August in each year for the semi-annual period up to the first day of the month preceding such statements and shall be accompanied by payment of the amount shown to be due thereon.

10.   All required accountings and notices shall be sent to John Steinbeck, Annie Laurie Williams, 18 East 41st Street, New York City, and to Sam H. Harris at 239-247 West 45th Street, New York City, unless the Service shall have received written instructions to the contrary.

11.   The Author grants the Service the exclusive right to rent manuscript or mimeographed copies of the play, including parts, for the use of non-professional producing groups in connection with performances of the play.

12.   The Author or his authorized representative shall have the right, upon written request, to examine the books of account of the Service insofar as they relate to the said play, which examination shall be at the cost of the Author unless errors of accounting amounting to five (5%) percent or more of the total sums paid to the Author shall be found to his disadvantage, in which case the cost shall be paid by the Service.

13.   If at any time after the expiration of five (5) years from the date of the first leasing, no performances of the play has been given in any two (2) successive years, the Service shall not be obligated to continue the play on its active list and the Author shall have the right, on thirty (30) days' written notice to the Service, to terminate this Agreement, and all rights granted herein to the Service shall revert to the Author. In the event of such termination, should the play have been published by the Service and should the plates be owned by the Service, the Author shall have the right to buy the plates at half their cost of manufacture, and any bound or unbound copies at their actual cost of manufacture, in default of which the Service shall have the right to melt any plates and sell remaining copies at cost or less, without payment of royalty to the Author upon such sales.

14.   It is understood that all rights, now existent or which may hereafter come into existence, except those herein specifically granted to the Service, are hereby reserved to the Author.

15.  In case of bankruptcy, receivership, assignment for the benefit of creditors (or liquidation for any cause whatever) of the Service, all rights granted herein shall revert to the Author.

16.  This agreement expresses and contains the entire understanding of the parties hereto and replaces and supersedes all previous agreements or understandings, either verbal or written, relating to the subject matter herein.

17.  This Agreement shall be binding upon and inure to the benefit of the executors, administrators and assigns of the Author and Manager and upon and to the successors and assigns of the Service; but no assignment, voluntary or by operation of law, shall be binding upon either of the parties hereto without the written consent of the other party to this agreement; provided, however, that the Author and Manager may assign or transfer any monies due or to become due them under this Agreement.

DRAMATISTS' PLAY SERVICE, INC.

by _____

_____
(Author)

WITNESS: _____

WITNESS: _____

Countersigned by
The Dramatists' Guild of the Authors' League of America, Inc.

By _____
        Executive Secretary