1 | Kenneth D. Freundlich (SBN: 119806)
2 | Michael J. Kaiser (SBN: 258717)
  | FREUNDLICH LAW
3 | 16133 Ventura Blvd. Suite 1270
  | Encino, CA 91436
4 | P: (310) 275-5350
  | P: (818) 377-3790
5 | F: (310) 275-5351
  | E-Mail:    ken@freundlichlaw.com
6 |            mkaiser@freundlichlaw.com

7 | *Attorneys for Plaintiffs*
8 | THOMAS STEINBECK and BLAKE SMYLE

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 |

| | |
|---|---|
| THOMAS STEINBECK, an individual; and BLAKE SMYLE, an individual, | No. 14-cv-08681-PJW |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR:** |
| v. | **(1) DECLARATORY RELIEF** |
| WAVERLY SCOTT KAFFAGA, an individual and as executrix of the ESTATE OF ELAINE STEINBECK; JEAN ANDERSON BOONE, an individual; DAVID SCOTT FARBER, an individual; ANDERSON FARBER KING, an individual; JEBEL KAFFAGA, an individual; BAHAR KAFFAGA, an individual; DRAMATISTS PLAY SERVICE, a New York Corporation; MCINTOSH & OTIS, INC., a New York Corporation; and Does 1-10, inclusive, | **(2) COPYRIGHT INFRINGEMENT;** |
| | **(3) CONTRIBUTORY COPYRIGHT INFRINGEMENT;** |
| | **(4) BREACH OF CONTRACT; AND** |
| | **(5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiffs Thomas Steinbeck ("T. Steinbeck") and Blake Smyle ("Blake") (collectively, "Plaintiffs") allege as follows as their First Amended Complaint in this action by their attorneys, Freundlich Law.

## SUMMARY OF ACTION

1.      This lawsuit seeks to affirm and protect Plaintiffs' statutory rights, as terminators of grants of rights to third parties under the United States Copyright Act (1976) (the "Act"), 17 U.S.C. §§ 101, et seq., and holders of inchoate future rights of termination, to the unfettered ownership and control of those terminated rights in the works of the acclaimed novelist John Steinbeck (sometimes referred to herein as "J. Steinbeck"), as provided by the Act.[1]

2.      Respectful and mindful of the decisions that emerged from years of contentious litigation in New York that produced two appellate decisions from the United States Court of Appeals for the Second Circuit, Plaintiffs seek relief from interference and intermeddling by the Defendants in Plaintiffs' ownership and control of one or more of Plaintiffs' Terminated Rights (defined in footnote 1 herein). Obstruction and confusion has continued unabated with respect to Plaintiffs' statutory termination rights, since 2004, when Plaintiffs, who had the exclusive statutory right to do so, terminated Defendants as their agents/attorneys-in-fact.[2]

---

[1] Plaintiffs' terminated rights include Plaintiffs' (i) collective interest in the domestic ancillary rights to J. Steinbeck's novel *The Grapes Of Wrath*, (ii) collective one hundred percent (100%) interest in the domestic motion picture rights to J. Steinbecks' novel *The Red Pony*, (iii) collective one hundred percent (100%) interest in the domestic motion picture rights to J. Steinbeck's *The Long Valley*, (iv) collective one hundred percent (100%) interest in the domestic non-professional stage rights to J. Steinbeck's novel *Of Mice and Men*, and (v) the domestic professional stage rights to J. Steinbeck's novel *Of Mice and Men* (individually and collectively, "Plaintiffs' Terminated Rights").

[2] Litigation in New York did not determine the issue before this Court - - whether a certain 1983 settlement agreement (more particularly described at ¶30, *infra*) could interfere with Plaintiffs' unfettered and unencumbered enjoyment of the rights in works that Plaintiffs have terminated under the Act.

3.      Plaintiffs expect that, without a court order preventing Defendants from doing so, Defendants will continue to purport to represent Plaintiffs in connection with Plaintiff's Terminated Rights and Plaintiffs' future ability to terminate grants of rights in John Steinbeck's works ("Plaintiffs' Inchoate Termination Rights"). Plaintiffs therefore seek relief to establish that the Defendants have no further right to interfere or participate in any way in Plaintiffs' Terminated Rights and any of the Plaintiffs' Inchoate Termination Rights from and after the date Plaintiffs dismissed Defendants as agent/attorney-in-fact.

4.      Among other things, Defendants directly and/or indirectly through Defendant literary agent McIntosh & Otis, Inc., have refused to acknowledge Plaintiffs' copyright ownership and control of certain terminated stage or motion picture rights in the works of J. Steinbeck, even though Plaintiffs' ownership of those rights has been expressly or impliedly determined in prior legal proceedings and Plaintiffs have duly terminated prior grants giving them sole or shared ownership of Plaintiffs' Terminated Rights.

5.      Defendants' claim of rights to interfere with Plaintiffs' unfettered exploitation and control of Plaintiffs' Terminated Rights, despite Plaintiffs' termination of Defendants as agents and attorneys-in fact, is apparently derived from two sources: (i) a power of attorney given to J. Steinbeck's second wife Elaine Steinbeck in the 1983 Agreement (defined in ¶30, *infra*), and (ii) the claims that the 1983 Agreement appointed Mcintosh & Otis as Plaintiffs' agent in perpetuity.

6.      To the extent that the 1983 Agreement purported to grant to Defendants a perpetual right to control and participate in Plaintiffs' Terminated Rights and Plaintiffs' Inchoate Termination Rights, that agreement is a classic "agreement to the contrary" and unenforceable under the Act with respect to Plaintiffs' Terminated Rights and Plaintiffs' Inchoate Termination Rights.

7.     Defendants continue to exploit Plaintiffs' Terminated Rights without Plaintiffs' permission. Moreover, Defendants have interceded in Plaintiffs' negotiation and contact with third parties concerning Plaintiffs' Terminated Rights (in some instances preventing Plaintiffs from learning of their right to terminate particular grants) and the collection of monies with respect to Plaintiffs' Terminated Rights. Defendants have also delayed payments, reduced payments, and refused to provide Plaintiffs with a copy of contracts (which among things caused Plaintiffs to miss certain termination deadlines). Indeed, sometimes, on information and belief, this resulted in no payment to Plaintiffs at all even though the sums Defendants have collected belong to Plaintiffs.

8.     Plaintiffs seek money damages for the significant harm Defendants' actions have caused, a declaratory judgment that Plaintiffs' ownership of Plaintiffs' Terminated Rights is unfettered and unencumbered by the Defendants in any way, and that none of the Defendants have the right to interfere with Plaintiffs' Inchoate Termination Rights and Plaintiffs' ability to collect all of the revenue that any exploitation of Plaintiffs' Terminated Rights or Inchoate Termination Rights produce. Furthermore, injunctive relief should be granted as described below.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338(a), 2201 and 2202, as well as pendent jurisdiction over the state law claims asserted herein.  Venue is proper in this district under 28 U.S.C. §1391(b) in that, *inter alia*, Defendants are located in, found, and/or do business in this district, and a substantial portion of the events described in this complaint took place in this district.

## PARTIES

10.     Plaintiff Thomas Steinbeck ("T. Steinbeck") is an individual who resides in this District.  He is the only living child of noted author John Steinbeck.

4

11.     John Steinbeck IV ("J. Steinbeck IV") is a deceased individual who was the second child of John Steinbeck (T. Steinbeck and J. Steinbeck IV were John Steinbeck's only children).

12.     Plaintiff Blake Smyle ("Blake") is an individual who resides in West Virginia and is J. Steinbeck IV's only child and the only living grandchild of author John Steinbeck.

13.     Elaine Steinbeck ("Elaine") was the widow of John Steinbeck ("Steinbeck").  She had no children by John Steinbeck, but did have a daughter by a previous marriage to Zachary Scott.  Elaine inherited certain interests in the works of John Steinbeck, and following her death, passed those interests to certain testamentary heirs.

14.     Defendant Waverly Scott Kaffaga ("Waverly") is an individual who resides in this District.  She is the daughter of Elaine by Zachary Scott, is the executrix of Elaine's will and Estate, and upon information and belief, purports to have inherited the right to enjoy one-half of Elaine's interest in all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck during Waverly's lifetime.  Pursuant to Elaine's will, upon Waverly's death, Waverly's interest in John Steinbeck's works will pass to the living Scott Family Defendants (defined at ¶26 *infra*).  T. Steinbeck and Blake are informed and believe that as the executrix of Elaine's will and Estate, Waverly has purported to succeed to a Power of Attorney held by Elaine during her lifetime concerning T. Steinbeck's and Blake's interests in John Steinbeck's works.  Waverly is being sued herein both in her individual capacity and as the executrix of Elaine's will and Estate.

15.     Defendant Jean Anderson Boone ("Jean") is a sister of Elaine who resides in New York.  Upon information and belief, Jean purports to have inherited the right to enjoy a one-quarter interest of all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck during Jean's lifetime.

Pursuant to Elaine's will, Jean's interests in John Steinbeck's works will eventually pass to the Scott Family Defendants (defined at ¶26 *infra*).

16.     Defendant Bahar Kaffaga is an individual who resides in this District. He is a son of Waverly, grandson of Elaine, and pursuant to Elaine's will, Plaintiffs are informed and believe that he purports to own a 6.25% interest in all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck. Also pursuant to Elaine's will, if he survives Waverly and Jean, Plaintiffs are informed and believe that Bahar eventually will purport to own at least a 25% interest in all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck.

17.     Defendant David Scott Farber is an individual who resides in Florida. He is a son of Waverly, grandson of Elaine, and pursuant to Elaine's will, Plaintiffs are informed and believe that he purports to own a 6.25% interest in all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck. Also pursuant to Elaine's will, if he survives Waverly and Jean, Plaintiffs are informed and believe that he eventually will purport to own at least 25% interest in all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck.

18.     Defendant Jebel Kaffaga is an individual who resides in Texas.  He is a son of Waverly, grandson of Elaine, and pursuant to Elaine's will, Plaintiffs are informed and believe that he purports to own a 6.25% interest in all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck.  Also pursuant to Elaine's will, if he survives Waverly and Jean, Plaintiffs are informed and believe that he will purport to own at least a 25% interest in all copyrights and proceeds from the exploitation of copyrights in the works of John Steinbeck.

19.     Defendant Anderson Farber King is an individual who resides in South Carolina.  She is a daughter of Waverly, granddaughter of Elaine, and pursuant to

1  Elaine's will, Plaintiffs are informed and believe that she purports to own a 6.25%

2  interest in all copyrights and proceeds from the exploitation of copyrights in the

3  works of John Steinbeck.  Also pursuant to Elaine's will, if she survives Waverly

4  and Jean, Plaintiffs are informed and believe that she will purport to own at least a

5  25% interest in all copyrights and proceeds from the exploitation of copyrights in

6  the works of John Steinbeck.

7       20.    Defendant Dramatists Play Service, Inc. ("DPS"), is a corporation that

8  has its offices in New York and which does business in this District.

9       21.    Defendant McIntosh & Otis, Inc. ("M&O"), is a corporation that has

10  its offices in New York and which does business in this District.  At all relevant

11  times herein it has acted as the literary agent for, *inter alia*, John Steinbeck, Elaine

12  Steinbeck, T. Steinbeck, Blake, and the individual Defendants identified above.

13       22.    Defendants Does 1 through 10, inclusive, are sued here under fictitious

14  names because their true names and capacities are unknown at this time and have

15  been withheld from Plaintiffs.  This complaint will be amended appropriately when

16  their true names and capacities are ascertained.

17       23.    Plaintiffs are informed and believe that Defendants Does 1 through 10

18  are individuals and business entities who are acting in concert and active

19  participation with the named Defendants herein and with each other in committing

20  the wrongful acts alleged herein.

21  **<u>GENERAL BACKGROUND</u>**

22       24.    John Steinbeck was one of the greatest literary figures of the 20th

23  Century.  He is the author of dozens of novels, short stories, plays, screenplays, and

24  articles, many of which, such as *Of Mice and Men*, *Grapes of Wrath*, *East of Eden*,

25  *The Red Pony, The Long Valley* and others have become hallmarks of American

26  literature.  Many of his works also have been adapted for stage, screen and

27  television.

28

25. John Steinbeck married Gwyn (Conger) Steinbeck in 1943, and had two children by her, namely plaintiff T. Steinbeck and J. Steinbeck IV. John Steinbeck divorced Gwyn (Conger) Steinbeck in 1948, and married Elaine in 1950. He remained married to Elaine until his death.

26. John Steinbeck died on December 20, 1968. Elaine inherited certain of John Steinbeck's copyright interests in his works pursuant to the residuary provision of his will.  Elaine died in 2003, and her will left her interests in those works to her sister and daughter, with the intent that they eventually pass to her daughter's children, who are Elaine's grandchildren (the "Scott Family Defendants").

27. Besides the rights in Steinbeck's works that passed to Elaine by will, copyright law granted certain rights in Steinbeck's works to his sons and statutory heirs T. Steinbeck and J. Steinbeck IV and their children.

28. At the time of John Steinbeck's death in 1968, copyright law granted Elaine, T. Steinbeck and J. Steinbeck IV equally, what are called "renewal" rights in certain Steinbeck works. The termination rights currently at issue did not exist under the 1909 Copyright Act then in effect. Prior to her death, Elaine, on behalf of herself and T. Steinbeck and J. Steinbeck IV over whom she possessed power of attorney, exercised many of such renewal rights and these are not the subject of this action.[3]

29. The Copyright Act of 1976 created new rights, that it called "termination rights," the effect of which was to give a majority of John Steinbeck's statutory heirs (consisting of the survivors among Elaine, T. Steinbeck and J. Steinbeck IV) the right to "terminate" certain grants of copyright interests that an

---

[3] On information and belief there are seventeen such renewals as listed on the attached **Exhibit A** (the "Elaine Renewed Rights"). Plaintiffs do not dispute that in accordance with the various rulings in New York, M&O is the exclusive agent on Plaintiffs' behalf in connection with the Elaine Renewed Rights.

author had previously made or the renewal of such rights, "notwithstanding any agreement to the contrary." *See*, *e.g*., 17 U.S.C. §§304(c), (d).

30.     Disputes arose between Elaine, on the one hand, and T. Steinbeck and J. Steinbeck IV, on the other hand, concerning the extent of T. Steinbeck's and J. Steinbeck IV's renewal interests in John Steinbeck's works, Elaine's management of the John Steinbeck works, and the allocation of the monies received from exploitation of John Steinbeck's works in which T. Steinbeck and J. Steinbeck IV had renewal interests.  T. Steinbeck and J. Steinbeck IV filed suit against Elaine in the United States District for the Southern District of New York in 1981 in that certain action entitled *John Steinbeck IV and Thomas Steinbeck v. Elaine Steinbeck*, Case No. 81 Civ. 6105 (the "1981 Action") to resolve those disputes.  The 1981 Action was settled in or about February 1983 by way of a written settlement agreement (i.*e.,* the "1983 Agreement"), a copy of which is attached as **Exhibit B**.

31.     The 1983 Agreement, *inter alia*, allocated copyright renewal ownership interests and copyright royalties in certain John Steinbeck works among Elaine, T. Steinbeck and J. Steinbeck IV, and required Elaine and M&O to pay T. Steinbeck and J. Steinbeck IV the amounts owed to them as renewal copyright owners as set forth in the 1983 Agreement.  T. Steinbeck and J. Steinbeck IV also granted to Elaine the exclusive power to manage John Steinbeck works, including works in which T. Steinbeck and J. Steinbeck IV had copyright interests.  T. Steinbeck and J. Steinbeck IV also granted Elaine a power of attorney in connection with the exploitation of those John Steinbeck works in which T. Steinbeck and J. Steinbeck IV had or would gain interests as described in the 1983 Agreement.  In the 1983 Agreement T. Steinbeck and J. Steinbeck IV also agreed to give Elaine the sole power to hire or fire the agents at M&O, in connection with John Steinbeck's works. *See* **Exhibit C**.

32.    Upon information and belief, Elaine purported to bind her heirs, the Defendants in this case, to this "agreement to the contrary" by making any inheritance under her will conditioned on their also signing a power of attorney over to M&O.

33.    The 1983 Agreement purported to make the grant of rights to Elaine and to M&O rights which Plaintiffs could never terminate which constitutes, in that respect, an "agreement to the contrary" to Plaintiffs' termination rights granted to them by the Act.

34.    During his lifetime, John Steinbeck granted book publishing, motion picture, television, theatrical and other rights in many of his works to third parties, many rights which he renewed, and such rights were and are subject to termination under the Copyright Act's termination provisions.  For example, John Steinbeck granted and renewed motion picture rights to Twentieth Century Fox Film Corp. ("Fox') for *The Grapes of Wrath*, and to Republic Pictures Corporation for two of his works, namely *The Red Pony* and *The Long Valley*.  Steinbeck also granted certain non-professional stage rights in *Of Mice and Men* to DPS and professional stage rights therein to Samuel French.

35.    Some of John Steinbeck's third party grants became subject to termination beginning as early as 1985, but Elaine never exercised most of these termination rights.[4] Any effort by T. Steinbeck and J. Steinbeck IV, who did not own together a majority of the statutory termination interest required under the Act, would have been unsuccessful since during her life, Elaine had the statutory ability to thwart any such termination.

36.    J. Steinbeck IV died on February 7, 1991, leaving his daughter Blake, who was born in 1970.  Under applicable copyright law, upon J. Steinbeck IV's

---

[4]  Plaintiffs are only aware of two instances of Elaine's exercising of termination rights - - the ancillary rights in *The Grapes of Wrath* and *Tortilla Flat*, both discussed below.

death, his inchoate termination rights in copyright grants pertaining to John Steinbeck's works passed to Blake. §§304 (c) and (d) of the Act.

37. In May 1994, M&O terminated certain rights, including motion picture rights, in *Tortilla Flat* as Elaine's and T. Steinbeck's "agents" which operated under the Act, to vest such rights in Elaine, T. Steinbeck and Blake (even though M&O neglected to put Blake's name in the official termination documents). *See* **Exhibit D**.

38. Plaintiffs have been unable to get any information from the Defendants as to what, if anything, has been done concerning the exploitation of the terminated rights in *Tortilla Flat*.

39. In 1998, Elaine terminated Fox's motion picture rights in *The Grapes Of Wrath* on behalf of herself and as T. Steinbeck's attorney-in-fact, which operated under the Act to vest the motion picture rights in *The Grapes of Wrath* in Elaine, T. Steinbeck and Blake (even though Elaine neglected to put Blake's name in the official termination documents). *See* **Exhibit E**.

40. Upon information and belief, an agreement has been made by M&O granting to DreamWorks the *non-exclusive* domestic rights to produce and exploit a motion picture based on *The Grapes of Wrath*. On further information and belief, M&O and Waverly have received payments from DreamWorks on account of this grant and have not paid their share of such payments to Plaintiffs.

41. Following Elaine's death in 2003, T. Steinbeck and Blake now own all inchoate statutory termination rights equally, and therefore control the majority required to effectuate termination. Accordingly, beginning in 2004, T. Steinbeck and Blake served notices of termination on various entities that had been granted book publishing rights, motion picture rights, and stage rights in various Steinbeck works. Among the notices of termination T. Steinbeck and Blake served were a termination of John Steinbeck's book publishing rights John Steinbeck had granted

to Penguin Group (USA) Inc. (the "Penguin Termination") , and a series of other terminations including, without limitation, the following:

(A)   On or about May 20, 2004, T. Steinbeck and Blake served and filed with the Copyright Office a Notice of Termination of motion picture rights granted by John Steinbeck in *The Red Pony*.  A copy of that notice of termination is attached as **Exhibit F**.

(B)   On or about May 20, 2004, T. Steinbeck and Blake served and filed with the Copyright Office a Notice of Termination of motion picture rights granted by John Steinbeck in *The Long Valley*.  A copy of that notice of termination is attached as **Exhibit G**.

(C)   On or about April 14, 2006, T. Steinbeck and Blake served and filed with the Copyright Office a Notice of Termination of the non-professional stage rights granted by John Steinbeck in *Of Mice And Men*.  A copy of that notice of termination is attached as **Exhibit H**.

(D)   In or about 2014, T. Steinbeck and Blake served and filed with the Copyright Office a Notice of Termination of the professional stage rights granted by John Steinbeck in *Of Mice And Men*.  A copy of that notice of termination is attached as **Exhibit I.**

42.   Disputes arose between T. Steinbeck and Blake, on the one hand, and Elaine's Estate, the Scott Family Defendants, and agent M&O on the other, concerning the validity of the 2004 notices of termination served by T. Steinbeck and Blake, as well as over Elaine's, Waverly's, and M&O's management of the Steinbeck works and failure to exercise available termination rights.

43.   In or about 2004, Plaintiffs formally dismissed M&O as agent (the "M&O Dismissal") and Defendants as attorney-in-fact (the "POA Dismissal"). M&O and Defendants contested, and continue to contest these dismissals claiming that the 1983 Agreement prevents such dismissal by Plaintiffs.

44.     On July 19, 2004, T. Steinbeck and Blake filed suit against Elaine's Estate, Waverly, the Scott Family Defendants, and others in the United States District Court for the Southern District of New York in that certain action entitled *Thomas Steinbeck and Blake Smyle v. McIntosh & Otis, Inc., et al*, Case No. 04-CV-5497 (the "2004 Action"), to resolve those issues.

45.     Following a series of District Court opinions and two appellate decisions from the Second Circuit which have been the subject of much debate and scholarship in the copyright community, the New York litigation invalidated the Penguin termination and several other terminations that are not the subject of this action, but left standing, a determination by Hon. Richard Owen in the District Court action *Steinbeck v. McIntosh & Otis, et al*., 433 F.Supp.2d 395 (S.D.N.Y. 2006) that Plaintiffs' notices of termination for motion picture rights in *The Red Pony* and *The Long Valley* were valid. *Id*. All appeals concerning Judge Owen's ruling in this regard have now been exhausted, and the time to file any further appeal has long since passed.  Thus, Judge Owen's decisions regarding *The Red Pony* and *The Long Valley* now operate as *res judicata* as to the parties to that action, including all of the Defendants in this Action, and collaterally estop the Defendants in this action and those in privity with them from disputing that judgment and the valid termination of rights it provides for.

46.     The New York litigation did not resolve the issue now raised as to whether the 1983 Agreement would, insofar as it creates an agreement divesting Plaintiffs of their unfettered power to terminate M&O and/or Elaine (or her heirs) and obtain complete control and revenues in connection with any terminated rights, be invalid as an "agreement to the contrary" under the Act.

**DEFENDANTS' WRONGFUL CONDUCT**

47.     Notwithstanding Judge Owen's summary judgment affirming the validity of T. Steinbeck's and Blake's 2004 notices of termination regarding motion

1   picture rights in *The Red Pony* and *The Long Valley*, and rejecting M&O's

2   argument that the 1983 Agreement and associated Power of Attorney invalidated T.

3   Steinbeck's and Blake's notices of termination, Defendants continue to this day, to

4   deny the validity of the 2004 Notices of Termination for *The Red Pony* and *The*

5   *Long Valley*, the 2006 Notice of Termination for stage rights in *Of Mice And Men,*

6   and have impermissibly interfered with Plaintiffs' terminated motion picture rights

7   in *The Grapes of Wrath*, and, upon information and belief, will continue to interfere

8   with all other notices of termination regarding John Steinbeck's works served by T.

9   Steinbeck and Blake.

10      48.   Defendants continue to claim that the 1983 Agreement, and the Power

11   of Attorney associated with it, gave Elaine, as the John Steinbeck Estate's

12   Executrix, and M&O as Waverly's, T. Steinbeck's and Blake's putative agents, the

13   sole power to exercise T. Steinbeck's and Blake's termination rights, the sole right

14   to administer the copyrights in Plaintiffs' Terminated Rights, and the sole and

15   unfettered ability to control the money flow and take commissions in connection

16   therewith.

17      49.   Defendants dispute the validity of the above-described 2004-2006

18   notices of termination, and all other notices of termination filed and served by T.

19   Steinbeck and Blake, on the very grounds Judge Owen rejected as evidenced by an

20   e-mail M&O sent to T. Steinbeck on behalf of Elaine's Estate on November 9,

21   2011, that disputed the validity of all of T. Steinbeck's and Blake's notices of

22   termination based on the 1983 Agreement:

23       "We have alerted... the Rights Center that your claim... that [you]
         represent[] these film and/or stage rights based upon the works of John
24       Steinbeck:... [including] *Of Mice and Men*, *The Red Pony*, [and]the
         short stories included in the *Long Valley*... is blatantly false.  As you
25       well know, Judge Daniels' decision, affirmed by the Second Circuit
         ruled that the Estate of Elaine A Steinbeck, Waverly Kaffaga,
26       Executrix, has 'the complete power and authority to negotiate,
         authorize and take action with respect the exploitation and/or
27       termination of rights in the works of John Steinbeck" by virtue of the
         1983 Settlement Agreement."

28

14

1

2   *See* **Exhibit J**.

3        50.    Indeed, in a letter dated December 24, 2014, Defendants' counsel,

4   Jenner & Block, delivered a letter to Plaintiffs, copied to M&O and Samuel French,

5   rejecting Plaintiffs' termination of professional stage rights in *Of Mice And Men*,

6   ignoring the Act and taking the position that the 1983 Agreement (which is an

7   "agreement to the contrary" under the Act) bars Plaintiffs from even exercising

8   Plaintiffs' statutory termination rights (let alone having the sole control and

9   financial rewards resulting therefrom). (**Exhibit K**).

10        51.    Furthermore, M&O's actions on behalf of itself, Waverly and the Scott

11   Family Defendants ignore the law and prior rulings in New York concerning

12   terminated rights. Among other things, M&O has induced, encouraged and

13   persuaded DPS to continue to exploit stage rights in *Of Mice and Men* despite T.

14   Steinbeck's and Blake's objection.  M&O also has induced, encouraged and

15   persuaded DPS to pay M&O all monies generated by DPS's exercise of those rights

16   despite the Notice of Termination served by T. Steinbeck and Blake as shown in

17   **Exhibit H**.  DPS has advised T. Steinbeck and Blake that it believes that the Notice

18   of Termination attached as **Exhibit H** are valid, and that it believes the monies

19   generated pursuant to **Exhibit H** are owed to T. Steinbeck and Blake, but that DPS

20   continues to pay those monies to M&O rather than T. Steinbeck and Blake because

21   M&O, acting on behalf of Elaine's Estate and the Scott Family Defendants,

22   disputes the validity of that Notice of Termination and demands that M&O, as T.

23   Steinbeck's and Blake's supposed agent, be paid all such royalties.

24        52.    On information and belief, Waverly and M&O, in turn, have not paid

25   T. Steinbeck and Blake any of the royalties it has received as T. Steinbeck's and

26   Blake's purported agent from the exploitation of non-professional theatrical stage

27   rights in *Of Mice and Men*, instead diverting and distributing such monies to

28   Waverly, Jean, and the Scott Family Defendants.

53.     On further information and belief, Waverly has received monies from DreamWorks pertaining to the motion picture being made of *The Grapes Of Wrath* and has failed to turn over such monies to Plaintiffs while also granting a gratis license for a documentary film to be created based on the same underlying material, a right in which Plaintiffs have an interest.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief Against All Defendants)

54.     T. Steinbeck and Blake repeat and reallege paragraph numbers 1 through 53 herein.

55.     T. Steinbeck and Blake are informed and believe that Defendants contend that:

(a)     M&O is the agent for T. Steinbeck and Blake in perpetuity, with respect to Plaintiffs' Terminated Rights and Plaintiffs' Inchoate Termination Rights, and the M&O Dismissal is invalid;

(b)     Waverly and her heirs possess a power of attorney with respect to Plaintiffs' Terminated Rights and Plaintiffs' Inchoate Termination Rights, that survived the death of Elaine and never ends, and therefore the POA Dismissal is invalid;

(c)     M&O continues to have the right to unilaterally raise its commissions and continue to commission Plaintiffs' income from Plaintiffs' terminated rights even though M&O has been dismissed;

(d)     M&O is entitled to have the sole contact with any of the third parties with whom Plaintiffs have made new deals relating to their terminated rights, and M&O is not required to allow T. Steinbeck and Blake access to contracts or records;

(e)     T. Steinbeck's and Blake's Notices of Termination for *The Red Pony* and *The Long Valley* attached as **Exhibits F and G**, respectively, are invalid

1   because they were filed and served by T. Steinbeck and Blake, while Waverly has

2   "the complete power and authority to negotiate, authorize and take action with

3   respect the exploitation and/or termination of rights in the works of John Steinbeck"

4   by virtue of the 1983 Settlement Agreement (**Exhibit B**), and Waverly did not serve

5   those Notices of Termination on T. Steinbeck's and Blake's behalf;

6          (f)    T. Steinbeck's and Blake's Notice of Termination of non-

7   professional stage rights in *Of Mice and Men* attached as **Exhibit H** is invalid

8   because it was served by T. Steinbeck and Blake, while Waverly has "the complete

9   power and authority to negotiate, authorize and take action with respect the

10   exploitation and/or termination of rights in the works of John Steinbeck" by virtue

11   of the 1983 Settlement Agreement (**Exhibit B**), and Waverly did not serve that

12   Notice of Termination on T. Steinbeck's and Blake's behalf;

13          (g)    Any notice of termination served or to be served by T. Steinbeck

14   and Blake is invalid because "Waverly has "the complete power and authority to

15   negotiate, authorize and take action with respect the exploitation and/or termination

16   of rights in the works of John Steinbeck" by virtue of the 1983 Settlement

17   Agreement (**Exhibit B**), and Waverly did not serve that Notice of Termination on

18   T. Steinbeck's and Blake's behalf;

19          (h)    Except for the renewal interests owned by T. Steinbeck and

20   Blake pursuant to the 1983 Agreement, Waverly, Jean and the Scott Family

21   Defendants own all copyright interests in the works of John Steinbeck not granted

22   to third parties, including those interests in the Steinbeck works governed by all

23   notices of termination served by T. Steinbeck and Blake, and none of the notices of

24   termination served by T. Steinbeck and Blake are valid;

25          (i)    T. Steinbeck and Blake have no copyright interests in non-

26   professional stage rights in *Of Mice and Men*, and therefore no Defendant is

27   infringing T. Steinbeck's and Blake's copyright in that work, and Defendants are

28

17

1   not breaching any agreement or the implied covenant of good faith and fair dealing

2   in retaining funds from DPS's exploitation of that work;

3          (j)    T. Steinbeck and Blake have no copyright interests in

4   professional stage rights in *Of Mice and Men*, and therefore no Defendant is

5   infringing T. Steinbeck's and Blake's copyright in that work; and

6          (k)    T. Steinbeck and Blake have no right to directly contact the

7   producer of the planned *The Grapes of Wrath* motion picture.

8      56.   T. Steinbeck and Blake dispute Defendants' claims, and contend that:

9          (a)    The right to serve notices of termination that vested in T.

10  Steinbeck and Blake after Elaine's death are under copyright law new rights

11  independently exercisable by T. Steinbeck and Blake that are not governed by the

12  1983 Agreement, accompanying Powers of Attorney or M&O's agency

13  relationship;

14         (b)    The M&O Dismissal is valid as it pertains to Plaintiffs'

15  Terminated Rights and Plaintiffs' Inchoate Termination Rights, and M&O no

16  longer has the right to interfere with Plaintiffs' exercise of Plaintiff's Terminated

17  Rights or Plaintiffs' Inchoate Termination Rights, or to participate in any of the

18  monies paid to Plaintiffs on account of any such rights;

19         (c)    The POA Dismissal is valid as it pertains to Plaintiffs'

20  Terminated Rights and Plaintiffs' Inchoate Termination Rights, and neither

21  Waverly, her heirs, Jean Boone nor M&O any longer have the right to interfere

22  with Plaintiffs' exercise of Plaintiffs' Terminated Rights or Plaintiffs' Inchoate

23  Termination Rights, or to participate in any of the monies paid to Plaintiffs on

24  account of any such rights;

25         (d)    To the extent the 1983 Agreement, the accompanying Power of

26  Attorney and M&O's agency relationship with T. Steinbeck and Blake purport to

27  contractually prohibit T. Steinbeck and Blake from exercising their copyright

28

termination rights, those agreements are unenforceable "agreements to the contrary" barred by the relevant copyright termination statute, 17 U.S.C. § 304(c) and (d);

(e)     Res Judicata precludes Defendants from disputing the validity of the Notices of Termination T. Steinbeck and Blake previously filed and served for *The Red Pony* and *The Long Valley,* as Judge Owen's summary judgment already ruled in favor of T. Steinbeck and Blake on that issue;

(f)     Defendants are collaterally estopped from disputing the validity of the Notice of Termination of non-professional stage rights in *Of Mice and Men* filed and served by T. Steinbeck and Blake as shown in **Exhibit H** on the grounds that the 1983 Agreement or its accompany power of attorney invalidated it, as Judge Owen's summary judgment decision expressly rejected that argument;

(g)     Defendants are collaterally estopped from disputing validity of any Notice of Termination filed and served by T. Steinbeck and Blake on the grounds that the 1983 Agreement or its accompany power of attorney invalidated it, as Judge Owen's summary judgment decision expressly rejected that argument;

(h)     T. Steinbeck and Blake own the copyright interests in *The Red Pony*, *The Long Valley*, and *Of Mice and Men* described in the Notices of Termination attached as **Exhibits F-I**, respectively;

(i)     Defendants' continued exploitation of non-professional stage rights in *Of Mice and Men* without T. Steinbeck's and Blake's permission directly and contributorily infringes T. Steinbeck's and Blake's copyright interests in that work and has interfered with their economic gain;

(j)     Defendants' continued exploitation of the professional stage rights in *Of Mice and Men* without T. Steinbeck's and Blake's permission directly and contributorily infringes T. Steinbeck's and Blake's copyright interests in that work; and

1      (k)    Waverly's and M&O's actions in inducing DPS to continue to
2   exploit non-professional stage rights in *Of Mice and Men* without T. Steinbeck's
3   and Blake's permission, and diverting and distributing the monies generated from
4   that exploitation to themselves materially breaches their contractual obligations to
5   T. Steinbeck and Blake and justify termination of the power of attorney and agency
6   relationship created by the 1983 Agreement.

7      57.    A genuine controversy exists between T. Steinbeck and Blake, on the
8   one hand, and Defendants, on the other, as to the validity of T. Steinbeck's and
9   Blake's notices of termination as described herein, whether Defendants are
10   infringing T. Steinbeck's and Blake's copyright interests, and whether Waverly's
11   and M&O's actions constitute a material breach of the power of attorney with
12   Elaine's Estate and its beneficiaries and of an agency agreement with M&O that
13   justifies an order terminating the agreements and clarifying that T. Steinbeck and
14   Blake are free to designate another agent of their choosing for all Steinbeck works
15   in which they own or control any copyright interests.  Declaratory relief is needed
16   to clarify and adjudicate the rights of the parties on these issues.

17      58.    T. Steinbeck and Blake have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Copyright Infringement Against DPS)

20      59.    T. Steinbeck and Blake reallege paragraphs 1 through 58 herein.

21      60.    John Steinbeck secured a copyright registration for the novel *Of Mice*
22   *and Men* on or about February 26, 1937, copyright registration number A:102928,
23   and secured a copyright registration for the a derivative play version of *Of Mice and*
24   *Men* on December 10, 1937, copyright registration number DP:53848.  John
25   Steinbeck secured renewal registrations for both versions of *Of Mice and Men* in
26   1964 and 1965, renewal registration numbers R:342179 and R:359895,
27   respectively.

28

61.    John Steinbeck granted certain stage rights to DPS pursuant to an agreement dated June 29, 1940.  A true and correct copy of that agreement is attached as **Exhibit L**.

62.    T. Steinbeck and Blake served a notice of termination of John Steinbeck's grant to DPS described in **Exhibit L**, listing an effective date of termination oF February 27, 2012.  *See* **Exhibit H**.  As of that effective date, and continuing to the present, T. Steinbeck and Blake have pursuant to 17 U.S.C. §304 owned and own the exclusive copyright in all stage rights in *Of Mice and Men* that Steinbeck granted to DPS.  As the owners of those rights, T. Steinbeck and Blake have been and are the sole owners authorized to, among other things, engage in or permit the public performance of, reproduction of, copying, distribution, and other exploitation of the non-professional stage rights they recovered by **Exhibit H**.

63.    T. Steinbeck and Blake have not authorized DPS to engage in, permit the public performance of, reproduce, copy, distribute, or otherwise exploit the stage rights Steinbeck granted to DPS.

64.    DPS nevertheless has since February 27, 2012, and continuing to the present, purported to engage in and authorize others to publicly perform, create derivatives of, reproduce, copy, distribute and otherwise exploit the non-professional stage rights in *Of Mice and Men* with knowledge of T. Steinbeck's and Blake's rights, and thus have infringed and are continuing to infringe T. Steinbeck's and Blake's copyright in the non-professional stage rights associated with *Of Mice and Men*.

65.    DPS's unauthorized acts have occurred and will continue to occur without T. Steinbeck's and Blake's permission, consent or authorization unless restrained by the Court.  Such acts therefore have constituted and will continue to constitute a knowing, deliberate and willful infringement of T. Steinbeck's and Blake's exclusive copyright interests in *Of Mice and Men.*

66.    T. Steinbeck and Blake have been damaged and will continue to be damaged by DPS's infringement of T. Steinbeck's and Blake's copyright interests in *Of Mice and Men* in an amount to be proven at trial.  Further, DPS's continuing infringement will cause irreparable harm to T. Steinbeck and Blake and the value of their copyright interests in *Of Mice and Men.*

## THIRD CLAIM FOR RELIEF

(Contributory Copyright Infringement Against Waverly and M&O)

67.    T. Steinbeck and Blake reallege paragraphs 1 through 66 herein.

68.    With knowledge of T. Steinbeck's and Blake's ownership of copyright interests in the non-professional stage rights in *Of Mice and Men* arising from the notice of termination attached as **Exhibit H**, and of the infringement of those rights that occurs when DPS exploits those rights without T. Steinbeck and Blake's permission, Waverly, as the executrix of Elaine's Estate, and M&O induced, encouraged, persuaded and caused DPS to directly infringe T. Steinbeck's and Blake's copyright interests in nonprofessional stage rights to *Of Mice and Men*, and to pay M&O all monies DPS was contractually required to pay pursuant to the 1940 Agreement (**Exhibit L**), so that Defendants, rather than T. Steinbeck and Blake, could receive the revenues obtained by DPS's exploitation of those rights.

69.    Waverly's and M&O's unauthorized acts have occurred and will continue to occur without T. Steinbeck's and Blake's permission, consent or authorization unless restrained by the Court.  Such acts therefore have constituted and will continue to constitute a knowing, deliberate and willful contributory infringement of T. Steinbeck's and Blake's exclusive copyright interests in *Of Mice and Men.*

70.    T. Steinbeck and Blake have been damaged and will continue to be damaged by Waverly's and M&O's contributory infringement of T. Steinbeck's and Blake's copyright interests in *Of Mice and Men* in an amount to be proved at

1   trial.  Further, DPS's continuing infringement will cause irreparable harm to T.

2   Steinbeck and Blake and the value of their copyright interests in *Of Mice and Men*.

3   **FOURTH CLAIM FOR RELIEF**

4   (Breach of Contract Against Waverly and M&O)

5   71.   T. Steinbeck and Blake reallege paragraphs 1 through 70 herein.

6   72.   Pursuant to the 1983 Agreement, Waverly, as the Executrix of Elaine's

7   Estate, and M&O had contractual obligations to pay T. Steinbeck and Blake the

8   monies T. Steinbeck and Blake are owed in connection with their ownership

9   interests in John Steinbeck's works, to account to T. Steinbeck and Blake for the

10   revenues and income due to them from exploitation of John Steinbeck's works in

11   which T. Steinbeck and Blake own an interest, and to refrain from abusing their

12   power by, *inter alia*, failing to pay T. Steinbeck and Blake the monies T. Steinbeck

13   and Blake are owed and diverting and distributing those monies among themselves

14   and the Scott Family Defendants.

15   73.   Notwithstanding their contractual obligations as described above,

16   Waverly and M&O have breached their contractual obligations under the 1983

17   Agreement and the accompanying Powers of Attorney and agency relationship by

18   failing to pay T. Steinbeck and Blake the monies T. Steinbeck and Blake are owed

19   due to T. Steinbeck's and Blake's ownership interest in non-professional stage

20   rights in *Of Mice and Men*.  Waverly and M&O have further breached their

21   obligations by diverting to themselves the monies that should have been paid to T.

22   Steinbeck and Blake based on those rights and distributing that money among

23   themselves and the Scott Family Defendants.

24   74.   Waverly's and M&O's actions described herein have damaged T.

25   Steinbeck and Blake, and will continue to damage T. Steinbeck and Blake for so

26   long as said defendants fail to comply with their contractual obligations to pay T.

27   Steinbeck and Blake the monies owed to T. Steinbeck and Blake pursuant to T.

28

1   Steinbeck's and Blake's ownership interest in non-professional stage rights in *Of*
2   *Mice and Men*.

3       75.    Waverly's and M&O's breach of their contractual obligations as
4   described herein is material, and justifies the termination of M&O's agency
5   relationship with T. Steinbeck and Blake and the power of attorney created by the
6   1983 Agreement, in connection with the Steinbeck works in which T. Steinbeck
7   and Blake have ownership interests.

8                    **FIFTH CLAIM FOR RELIEF**

9            (Breach of the Implied Covenant of Good Faith and
10               Fair Dealing Against Waverly and M&O)

11      76.    T. Steinbeck and Blake reallege paragraphs 1 through 75 herein.

12      77.    California and New York law imply a covenant of good faith and fair
13  dealing in all contracts.  Waverly and M&O have a duty pursuant to the rights they
14  gained by the 1983 Agreement and accompanying Powers of Attorney to exercise
15  their discretion in exercising their rights to affect T. Steinbeck's and Blake's
16  Steinbeck interests in good faith, and in accordance with fair dealing.

17      78.    Waverly's and M&O's actions in inducing DPS to pay to M&O as T.
18  Steinbeck's and Blake's agent the monies generated by DPS's exploitation of non-
19  professional stage rights in *Of Mice and Men* so that M&O can divert those funds to
20  itself and the other Defendants were actions undertaken in bad faith to frustrate the
21  benefits T. Steinbeck and Blake were to receive from their ownership interests in
22  the works of John Steinbeck.

23      79.    As a result of the actions of Waverly and M&O, and each of them set
24  forth hereinabove, said Defendants have violated the implied covenant of good faith
25  and fair dealing contained in their agreements with T. Steinbeck and Blake.  As a
26  result of that breach, T. Steinbeck and Blake are entitled to damages according to
27  proof.

28

24

## **PRAYER FOR RELIEF**

Wherefore, T. Steinbeck and Blake pray for judgment against Defendants as follows:

(1)     For compensatory damages in an amount to be proven at trial;

(2)     Alternatively, for statutory damages pursuant to the Copyright Act, 17 U.S.C. § 504(c);

(3)     For an injunction prohibiting Defendants, their officers, agents and employees, and all persons in active concert or participation with them, from infringing or persuading others to infringe T. Steinbeck's and Blake's copyright interests in *The Red Pony*, *The Long Valley*, and *Of Mice And Men*;

(4)     For the imposition of a constructive trust on monies due Plaintiffs that Defendants have received from their exploitation of T. Steinbeck's and Blake's stage rights in *Of Mice and Men* as well as *The Grapes of Wrath* feature film and documentary;

(5)     For an order declaring that T. Steinbeck and Blake own the copyright interests in *Of Mice and Men*, *The Red Pony*, *Grapes of Wrath* and *Tortilla Flat* and *The Long Valley* as alleged herein;

(6)     For an order declaring that Waverly and M&O have materially breached their contractual obligations to T. Steinbeck and Blake by failing to account to T. Steinbeck and Blake for the monies T. Steinbeck and Blake are owed pursuant to their ownership interests in the stage rights in *Of Mice and Men* and *The Grapes of Wrath* described above, and have abused their authority by diverting monies owed to T. Steinbeck and Blake to M&O, Waverly and the Scott Family Defendants;

(7)     For an order (i) terminating Waverly's claims to hold power of attorney over T. Steinbeck and Blake, (ii) terminating M&O's agency agreement with respect to Plaintiffs' Terminated Rights and Plaintiffs' Inchoate Termination

Rights, and (iii) declaring T. Steinbeck and Blake free to manage their own affairs with regard to any Steinbeck works in which they own or control any rights;

(8)     For an accounting to T. Steinbeck and Blake, respectively, of all monies owed to them from Defendants' unauthorized exploitation of T. Steinbeck's and Blake's interests in non-professional stage rights in *Of Mice and Men* and ancillary rights in *The Grapes of Wrath*;

(9)     For Plaintiffs' attorneys' fees and costs pursuant to 17 U.S.C. §505;

(10)    For prejudgment interest on any recovery by Plaintiffs;

(11)    For costs of suit incurred herein; and

(12)    For such other and further relief as the Court deems just and proper.

Dated: March 27, 2015                    FREUNDLICH LAW

Kenneth D. Freundlich
Attorneys for Plaintiffs
THOMAS STEINBECK and BLAKE
SMYLE

**DEMAND FOR JURY TRIAL**

Plaintiffs T. Steinbeck and Blake Smyle hereby demand a jury trial on all claims in this complaint that are triable to a jury.

Dated:   March 27, 2015

FREUNDLICH LAW

_Kenneth D. Freundlich_

Attorneys for Plaintiffs
THOMAS STEINBECK and BLAKE SMYLE