# Exhibit 2

Richard Dannay
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY 10036
Phone: 212-790-9200
Fax: 212-575-0671

Attorneys for Plaintiff
Penguin Group (USA) Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

PENGUIN GROUP (USA) INC.,

        Plaintiff,

  - against -

THOMAS STEINBECK and
BLAKE SMYLE,

        Defendants.

---------------------------------X





Civil Action No. _____

COMPLAINT FOR
DECLARATORY JUDGMENT

JUDGE HOLWELL
04 CV 6795
ECF CASE

RECEIVED
AUG 24 2004
U.S.D.C. S.D.N.Y.
CASHIERS

        Plaintiff Penguin Group (USA) Inc. ("Penguin"), by its attorneys Cowan, Liebowitz & Latman, P.C., for its complaint, alleges:

### JURISDICTION AND VENUE

        1. Pursuant to 28 U.S.C. §2201(a) and 2202, Penguin seeks a declaration and judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction between Penguin and defendants concerning the validity and effectiveness of defendants' Notice of Termination under Section 304(d) of the Copyright Act, 17 U.S.C. §304(d). Subject matter jurisdiction exists

in this case pursuant to 28 U.S.C. §1331, giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. §1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the copyright laws of the United States.

2. This Court has personal jurisdiction over defendants because a substantial part of the events giving rise to the claim in this Complaint occurred in the State of New York; defendants have established at least minimum contacts with this State and have purposefully availed themselves of the benefits and protections of the laws of this State; defendants have transacted, and continue to transact, continuous, systematic and routine business in this State; and defendants' activities in this State have had, and continue to have, a direct and foreseeable impact on the commerce of this State.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b) and 1400(a).

### THE PARTIES

4. Penguin Group (USA) Inc., a Delaware corporation having its principal place of business in the City and County of New York, is the U.S. affiliate of the internationally renowned Penguin Group, the second-largest English-language trade book publisher in the world and a leading United States adult and children's trade book publisher. Penguin possesses one of the world's most prestigious lists of best-selling authors, including John Steinbeck, the winner of the 1962

Nobel Prize in Literature, and the author of the works involved in this case.

5. Defendant Thomas Steinbeck ("Thom") is an individual who, on information and belief, resides in California, and is an author, screenwriter, and the only living child of John Steinbeck.

6. Defendant Blake Smyle ("Blake") is an individual who, on information and belief, resides in Maryland and is the only living grandchild of John Steinbeck.

## COPYRIGHT ACT BACKGROUND

7. The 1976 Copyright Act, effective January 1, 1978, abandoned the copyright renewal scheme of the 1909 Copyright Act for works created on or after January 1, 1978 (and for works with common law copyright on that date). The reversionary feature of copyright renewal was modified and included in a provision for optional termination of transfers and licenses (i.e., grants), made by authors on or after that date. Section 203 of the Copyright Act, 17 U.S.C. §203.

8. Section 304(c) of the Copyright Act, 17 U.S.C. §304(c), is largely similar to Section 203 and thus takes a similar approach for optional termination of grants with respect to certain grants of renewal rights made before January 1, 1978. The 1976 Copyright Act extended existing and future renewal copyright terms for a total of 19 years (from a renewal term of 28 years to 47 years, for a total copyright term of 75 years). The law also gave authors and other

copyright renewal claimants the potential to recover this extended period free and clear of certain preexisting grants. Thus, Section 304(c) gave authors and their statutory successors (e.g., the author's surviving spouse and children) the option, under certain conditions and limitations, to terminate grants insofar as the extended period was concerned (i.e., following the 28-year original term plus the 28-year renewal term).

9. Both provisions, Sections 203 and 304(c), are complex with respect to their operation, including the grants covered, the persons who may exercise the termination rights, the effective dates of termination, the time and manner of terminating, the effect of termination, exceptions to termination, and further grants of terminated rights. For example, termination must be effected within specified time periods, and the statutory termination provisions do not apply to works made for hire or dispositions by will, nor to utilization of derivative works prepared under a grant before its termination, nor to rights outside the federal copyright statute (i.e., rights under any other federal, state or foreign laws, including foreign copyright laws). Moreover, termination of grants "may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." 17 U.S.C. §§ 203(a)(5) and 304(c)(5).

10. The 1976 Copyright Act was accompanied by a lengthy and detailed legislative history that is essential to its understanding

- 4 -

and application. See, e.g., House of Representatives Report No. 94-1476 (94th Cong., 2d Session, Sept. 3, 1976) ("House Report"). The House Report makes clear that "nothing in this section [§304] or legislation is intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment" (House Report at 142), and that the law "...would not prevent the parties to a transfer or license from voluntarily agreeing at any time to terminate an existing grant and negotiating a new one ..." (House Report at 127).

11. The Sonny Bono Copyright Term Extension Act (effective October 27, 1998), among other things, added a further 20 years to the 1976 Copyright Act's 19-year extension of the renewal term (for a total copyright term of 95 years). The Sonny Bono Act also added another termination-of-grants provision for grants executed before January 1, 1978, namely, subsection (d) of Section 304. Section 304(d), 17 U.S.C. §304(d), applies to copyrights in their renewal term on the effective date of that Act (i.e., Oct. 27, 1998) for which the termination right under Section 304(c) has expired by that date and where the author or owner of the Section 304(c) termination right has not previously exercised the right. In that case, provided the grant was executed before January 1, 1978, Section 304(d) provides for termination rights similar in their operation to those under Section 304(c). Section 304(d) thus provides an optional

22159/021/642401.1

termination right for pre-1978 grants for the extra 20 years of the copyright term conferred by the Sonny Bono Act.

12. The statutory termination rights in Sections 304(c) and 304(d) apply only to grants executed before January 1, 1978. The Section 203 termination right is the only one that applies to grants made on or after January 1, 1978. Moreover, Section 203 applies only to grants made by authors, and not, as Sections 304(c) and 304(d) do, to grants made by the author's statutory successors.

### THE PARTIES' DISPUTE

13. Penguin (including its predecessors) is the longtime and principal publisher of the works by Nobel laureate John Steinbeck. John Steinbeck is the author of the following works ("the Works"), among many others:

> Cup of Gold
>
> The Pastures of Heaven
>
> The Red Pony (including all three of its stories, "The Gift," "The Great Mountains" and "The Promise")
>
> To A God Unknown
>
> Tortilla Flat
>
> In Dubious Battle
>
> Of Mice and Men
>
> Of Mice and Men (Play)
>
> The Long Valley (including all 13 of its stories, "The Chrysanthemums," "The White Quail," "Flight," "The Snake," "Breakfast,"

- 6 -

>  "The Raid," "The Harness," "The Vigilante,"
> "Johnny Bear," "The Murder," "Saint Katy the
> Virgin," "Red Pony" (in 3 parts)," and "The
> Leader of the People")

> The Grapes of Wrath

14. Elaine Anderson Steinbeck ("Elaine"), the widow and second wife of John Steinbeck (who died in 1968), and the sole executor of his estate, died in April 2003.

15. On or about October 24, 1994, Elaine Steinbeck and Penguin's predecessor (Viking Penguin, a division of Penguin Books USA Inc.), entered into a publishing agreement ("the 1994 Agreement") for 19 works by John Steinbeck, including the ten Works described above. A copy of the 1994 Agreement is attached to this Complaint as Exhibit A. Elaine Steinbeck, who inherited her rights from John Steinbeck, was the owner of the copyrights in the 19 works subject to the 1994 Agreement. The copyrights in all of the ten Works described above were renewed by John Steinbeck in his lifetime.

16. The 1994 Agreement was a "new agreement" (Preamble) for continued publication of those 19 John Steinbeck works. It contained substantially new terms and consideration, and expressly cancelled and superseded the previous agreements, as amended, for those works (Para. 19). The 1994 Agreement, as amended from time to time, continues in effect "for the remaining term of copyright, and such renewals or extensions thereof as may now or hereafter exist" (Para. 1).

22159/021/642401.1

17.  In June 2004, Thom and Blake served on Penguin (and on the Estate of Elaine Steinbeck) a Notice of Termination dated June 8, 2004 ("Termination Notice"), purporting to "terminate," under Section 304(d) of the Copyright Act, 17 U.S.C. §304(d), "grants made ...before January 1, 1978" in the ten Works, such termination to be effective on the various dates specified in the Termination Notice, beginning as soon as July 1, 2006 and running through April 15, 2014. A copy of the Termination Notice is attached to this Complaint as Exhibit B.

18.  All of the Works described in the Termination Notice are subject to the 1994 Agreement. The 1994 Agreement, by its express terms, cancelled and superseded all prior agreements concerning the Works including, therefore, any agreements made before 1978. Accordingly, there are no existing pre-1978 agreements with respect to the Works, and all such agreements were lawfully revoked in 1994 and are no longer subject to termination. The validity and enforceability of the 1994 Agreement have never been challenged or questioned in the 10 years since it was signed.

19.  As previously stated, the Section 304(d) termination right -- on which the Termination Notice is based -- applies only to grants executed before 1978. However, there are no existing pre-1978 grants or agreements for the Works (or any of them). Therefore the Section 304(d) termination right cannot apply to any of the Works, which are subject only to the 1994 Agreement.

20. By statutory definition, the 1994 Agreement is not among the only category of agreements that is subject to the Section 304(d) termination right, namely, grants of renewal copyrights "executed before January 1, 1978."

21. The 1994 Agreement -- executed four years before the Section 304(d) termination right was created -- is not an "agreement to the contrary" under Section 304(d)(1) (incorporating Section 304(c)(5)).

22. For the foregoing reasons, Penguin asserts that the Termination Notice is invalid as a matter of law.

## CLAIM FOR DECLARATORY RELIEF

### (By Penguin, pursuant to 28 U.S.C. §2201(a), that Defendants' Termination Notice is Invalid)

23. Penguin repeats paragraphs 1 through 22 of this Complaint.

24. The dispute initiated by defendants' service of the Termination Notice on Penguin has given rise to an actual, substantial and justiciable controversy between plaintiff and defendants requiring resolution by this Court.

25. Defendants Thom and Blake contend that they have the right to terminate under Section 304(d), that the Termination Notice is valid, and that Penguin's rights in the Works will terminate as of the dates recited in the Termination Notice.

26. Penguin contends that defendants Thom and Blake have no right to terminate under Section 304(d) or otherwise, that the

22159/021/642401.1

Termination Notice is invalid, and that Penguin's rights in the Works will not terminate as of the dates recited in the Termination Notice or otherwise.

27. Failure to resolve the parties' dispute by invalidating the Termination Notice will cast a cloud over Penguin's rights to continue publication of the Works and will cause serious harm to its publishing program and contractual rights and interests.

28. To resolve this actual controversy, Penguin seeks a declaration and judgment that the Termination Notice is invalid and that Penguin's rights in the Works will not terminate thereunder.

## PRAYER FOR RELIEF

Wherefore, Penguin prays for judgment as follows:

1. A declaration that the defendants' Termination Notice is invalid and unenforceable, and that Penguin's rights in the Works will not terminate thereunder.

2. An award of Penguin's costs and attorney's fees in connection with this action.

3. Such other and further relief as the Court may deem just and proper.

Dated: New York, N.Y.
August 20, 2004

*Richard Dannay*

Richard Dannay (RD 9407)
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY 10036-6799
Phone (212) 790-9200
Fax (212) 575-0671

Attorneys for Plaintiff
Penguin Group (USA) Inc.

22159/021/642401.1