# Exhibit 3

# 182

# ORIGINAL

PILLSBURY WINTHROP LLP
Susan J. Kohlmann (SK1855)
Carolina A. Fornos (CF 6689)
Nancy V. Thornton (NT 5325)
1540 Broadway
New York, New York 10036
(212) 858-1000

$20$

*Attorneys for Defendant and Counterclaim*
*Plaintiff Waverly Scott Kaffaga, as the*
*Executrix of the Estate of Elaine Anderson*
*Steinbeck (the "Estate of Elaine Steinbeck")*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THOMAS STEINBECK, an individual; and BLAKE
SMYLE, an individual,

> *Plaintiffs,*
> *Counterclaim Defendants,*

v.

MCINTOSH & OTIS, INC., a New York corporation;
THE STEINBECK HERITAGE FOUNDATION, a non-
profit New York corporation; EUGENE H. WINICK, an
individual; SAMUEL PINKUS, an individual; JEAN
ANDERSON BOONE, an individual; FRANCIS
ANDERSON ATKINSON, an individual; WAVERLY
SCOTT KAFFAGA, an individual and Executor of the
Estate of Elaine Anderson Steinbeck; DAVID SCOTT
FARBER, an individual; ANDERSON FARBER
RUNKLE, an individual; JEBEL KAFFAGA, an
individual; BAHAR KAFFAGA, an individual; and
STEVEN FRUSHTICK, an individual; and Does 1-10,

> *Defendants,*
> *Counterclaim Plaintiffs.*

No. 04 CIV. 5497 (RO)

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANT
## AND COUNTERCLAIM PLAINTIFF THE ESTATE OF ELAINE STEINBECK

Defendant and Counterclaim Plaintiff the Estate of Elaine Steinbeck, through its

# A-183

attorneys Pillsbury Winthrop LLP, respectfully submits this answer, affirmative defenses, and counterclaims in response to the Complaint filed by Thomas Steinbeck ("Thomas") and Blake Smyle ("Blake").

## ANSWER TO COMPLAINT

The Estate of Elaine Steinbeck answers the Complaint filed by Thomas and Blake as follows:

1. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 1.

a. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 1(a).

b. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 1(b).

c. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 1(c).

d. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 1(d).

### Jurisdiction and Venue

2. The Estate of Elaine Steinbeck admits that Plaintiffs purport to base jurisdiction and venue on the allegations of Paragraph 2.

### Parties

3. The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 except admits that Thomas is the only living child of John Steinbeck.

4. The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 4.

5. The Estate of Elaine Steinbeck denies that Elaine was the second wife of John Steinbeck. The Estate of Elaine Steinbeck admits the allegations of the first, second, and third

2

## 184

sentences of Paragraph 5 and admits that Elaine Anderson Steinbeck ("Elaine") was the widow of John Steinbeck.

6.     The Estate of Elaine Steinbeck admits that McIntosh & Otis, Inc., ("M&O") has offices in New York, New York and that at certain times has acted as the literary agent for John Steinbeck and Elaine Steinbeck. Except as so expressly admitted, the Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 6 and refers to the Will of Elaine Steinbeck for a true and accurate description of the contents therein.

7.     The Estate of Elaine Steinbeck admits that Eugene H. Winick ("Winick") is a principal of M&O, and except as expressly so admitted, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 7 and refers to the contents of the Will of Elaine Steinbeck for a true and accurate description of the contents therein.

8.     The Estate of Elaine Steinbeck admits that Jean is a sister of Elaine Steinbeck who resides in New York and with respect to the remaining allegations in Paragraph 8 refers to the Will of Elaine Steinbeck for a true and accurate description of the contents and bequests therein.

9.     The Estate of Elaine Steinbeck admits that Francis [*sic*] Anderson Atkinson is a sister of Elaine Steinbeck and refers to the Will of Elaine Steinbeck for a true and accurate description of the contents and bequests therein, and affirmatively states that Frances Anderson Atkinson survived Elaine but is now deceased.

# A-185

10.      The Estate of Elaine Steinbeck admits that Waverly is the daughter of Elaine Steinbeck and Zachary Scott, and that she resides in Austin, Texas, and refers to the Will of Elaine Steinbeck for a true and accurate description of the contents and bequests therein.

11.      The Estate of Elaine Steinbeck denies that Jebel Kaffaga resides in East Meadow, New York, and denies that Anderson Farber resides in Mount Pleasant, South Carolina. The Estate of Elaine Steinbeck affirmatively states that Frances' name is spelled with an "e" and that Anderson Farber does not use the surname "Runkle." The Estate of Elaine Steinbeck admits that David Scott Farber resides in Oakland, California and that Bahar Kaffaga resides in Venice, California. With respect to the remaining allegations of Paragraph 11, the Estate of Elaine Steinbeck refers to the Will of Elaine Steinbeck for a true and accurate description of the contents and bequests therein.

12.      The Estate of Elaine Steinbeck admits that The Steinbeck Heritage Foundation is a non-profit corporation organized by Elaine Steinbeck in or about 1998 in New York, New York and admits that Steven Frushtick and Jean Boone are members of the Board of Directors of the Foundation, who reside and/or do business in New York, New York. Except as expressly so admitted, the Estate of Elaine Steinbeck denies the remaining allegations of Paragraph 12.

13.      The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 13.

14.      The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 14.

## General Background

15.      The Estate of Elaine Steinbeck admits each and every allegation of Paragraph 15.

16.      The Estate of Elaine Steinbeck admits each and every allegation of Paragraph 16.

17.      The Estate of Elaine Steinbeck neither admits nor denies each and every allegation of Paragraph 17 as they call for legal conclusions.

4

18.     The Estate of Elaine Steinbeck admits each and every allegation of Paragraph 18.

19.     The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 19.

20.     The Estate of Elaine Steinbeck denies each and every allegation contained in the

second, third, and fourth sentences of Paragraph 20, except admits that John Steinbeck died on

December 20, 1968 in New York.

21.     The Estate of Elaine Steinbeck denies each and every allegation contained in the

second and third sentences of Paragraph 21, and admits that John Steinbeck left a Will which

was probated in New York that described how he wished his assets to be divided. With respect

to the remaining allegations of Paragraph 21, refers to the Will of John Steinbeck for a true and

accurate description of the contents and bequests therein.

22.     The Estate of Elaine Steinbeck denies the each and every allegation of the third

sentence of Paragraph 22 and neither admits nor denies the allegations of the first and second

sentences of Paragraph 22 as they call for legal conclusions.

**The Copyright Conspiracy**

23.     The Estate of Elaine Steinbeck neither admits nor denies the allegations of the

first sentence of Paragraph 23 as they call for legal conclusions and refers to the Will of John

Steinbeck for a true and accurate description of the contents and bequests therein. The Estate of

Elaine denies the remaining allegations of Paragraph 23.

24.     The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 24.

25.     The Estate of Elaine Steinbeck admits that Thomas and John IV filed suit against

Elaine in the United States District Court for the Southern District of New York in 1981 and

refers to the publicly filed documents in Case No. 81 Civ. 6105 for a true and accurate record of

## A-187

the proceedings therein and the 1983 Settlement Agreement for a true and accurate description of its terms.

26.     The Estate of Elaine Steinbeck admits that M&O and Elaine Steinbeck had exclusive control of the copyrighted works and with respect to the remaining allegations of Paragraph 26, The Estate of Elaine Steinbeck refers to the 1983 Settlement Agreement for a true and accurate description of the terms therein.

27.     The Estate of Elaine Steinbeck neither admits nor denies each and every allegation of Paragraph 27 as they call for legal conclusions.

28.     The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 28.

29.     The Estate of Elaine Steinbeck denies the allegations of Paragraph 29 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 29.

30.     The Estate of Elaine Steinbeck admits that John Steinbeck granted book publishing, motion picture, television or other rights in his many works to third parties during his lifetime. Except as expressly so admitted, the Estate of Elaine Steinbeck neither admits nor denies the remaining allegations of Paragraph 30 as they call for legal conclusions.

31.     The Estate of Elaine Steinbeck denies the allegations of Paragraph 31 to the extent they relate to Elaine Steinbeck, neither admits nor denies the first, third, and fourth sentences of Paragraph 31 as they call for legal conclusions, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31.

6

## The Copyright Conspiracy and Blake

32.     The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 32 and neither admits nor denies the remaining allegations of Paragraph 32 as they call for legal conclusions.

33.     The Estate of Elaine Steinbeck denies the allegations of Paragraph 33 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 33.

34.     The Estate of Elaine Steinbeck admits that Blake had periodic contact with Elaine Steinbeck and except as expressly so admitted, the Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34.

35.     The Estate of Elaine Steinbeck denies the allegations of the first and third sentences of Paragraph 35 and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 35.

## Lost Book Publishing Termination Interests

36.     The Estate of Elaine Steinbeck denies the allegations of Paragraph 36 to the extent that they relate to Elaine Steinbeck personally and neither admits nor denies the allegations of the first, second, and fifth sentences of Paragraph 36 as they call for legal conclusions. The Estate of Elaine Steinbeck admits that Thomas purports to have served Notices of Termination and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36.

37.     The Estate of Elaine Steinbeck denies the allegations of Paragraph 37 to the extent that they relate to Elaine Steinbeck, neither admits nor denies the allegations of the first

7

## A-189

and fifth sentences of Paragraph 37 as they call for legal conclusions, and admits that Blake has purported to have served Notices of Termination. The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

### Lost Motion Picture, Television and Related Termination Interests

38.    The Estate of Elaine Steinbeck denies the allegations of Paragraph 38 to the extent that they relate to Elaine Steinbeck and otherwise neither admits nor denies the allegations as they call for legal conclusions.

39.    The Estate of Elaine Steinbeck denies the allegations of Paragraph 39 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the matter asserted.

40.    The Estate of Elaine Steinbeck denies the allegations of Paragraph 40 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40.

41.    The Estate of Elaine Steinbeck denies the allegations to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41.

42.    The Estate of Elaine Steinbeck neither admits nor denies each and every allegation of Paragraph 42 as they call for legal conclusions.

43.    The Estate of Elaine Steinbeck denies the allegations made against Elaine Steinbeck and except as so expressly denied, denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43.

44.    The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 44.

45.     The Estate of Elaine Steinbeck denies the allegations of Paragraph 45 to the

extent that they relate to Elaine Steinbeck, neither admits nor denies the allegations of Paragraph

45 to the extent that they call for legal conclusions, and denies knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of Paragraph 45.

46.     The Estate of Elaine Steinbeck denies the allegations of the first sentence of

Paragraph 46 to the extent that it relates to Elaine Steinbeck and, with respect to the remaining

allegations of Paragraph 46, refers to the Will of Elaine Steinbeck for a true and accurate

description of the contents and bequests therein.

## Malfeasance re Copyrighted Works

47.     The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 47

to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information

sufficient to form a belief as to the truth of the allegations of Paragraph 47.

48.     The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 48

to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information

sufficient to form a belief as to the truth of the allegations of Paragraph 48.

> a.     The Estate of Elaine Steinbeck admits the allegations of the second and
>
> third sentences of Paragraph 44(a), denies knowledge or information sufficient to
>
> form a belief as to the truth of the allegations of the last sentence of Paragraph
>
> 44(a), and, except as expressly so admitted, denies the remaining allegations of
>
> Paragraph 48(a).
>
> b.     The Estate of Elaine Steinbeck denies each and every allegation of
>
> Paragraph 48(b) to the extent that they relate to Elaine Steinbeck and otherwise

9

denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 44(b).

c.      The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 48(c) to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 44(c).

d.      The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 48(d) to the extent that they relate to Elaine Steinbeck or itself and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 44(d).

### Thomas' and Blake's Damages

49.      The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 49.

50.      The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 50.

### The Trademark Conspiracy

51.      The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 51, neither admits nor denies the allegations of the last sentence of Paragraph 51 as it calls for a legal conclusion and, with respect to the remaining allegations of Paragraph 51, refers to the Will of John Steinbeck for a true and accurate description of the contents and bequests therein.

52.      The Estate of Elaine Steinbeck neither admits nor denies the allegations contained in the first and third sentences of Paragraph 52 as they call for legal conclusions, admits that Thomas' surname is "Steinbeck" and, except as expressly so admitted, and denies knowledge or

10

information sufficient to form a belief as to the truth of the remaining allegations of the second sentence of Paragraph 52.

53.    The Estate of Elaine Steinbeck denies the allegations of the first sentence of Paragraph 53 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge sufficient to form a belief as to the truth of the allegations of that sentence. The Estate of Elaine Steinbeck admits that Elaine formed the Foundation in 1998 as a nonprofit corporation, assigned it any and all trademark rights Elaine had in John Steinbeck's name and likeness, and authorized the Foundation to license trademark rights in John Steinbeck's name and likeness and, except as expressly so admitted, he Estate of Elaine Steinbeck denies the remaining allegations of Paragraph 53.

54.    The Estate of Elaine Steinbeck refers to the records of the United States Patent and Trademark Office for a true and accurate description of the information contained in the allegations of Paragraph 54.

55.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 55 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 55 and refers to the Will of John Steinbeck for a true and accurate description of the terms therein.

56.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 56.

**The Conversion of Steinbeck Letters**

57.    The Estate of Elaine Steinbeck denies the allegations of the fourth sentence of Paragraph 57, denies knowledge or information sufficient to form a belief as to the truth of the allegations of the third sentence of Paragraph 57, and admits the remaining allegations of Paragraph 57.

11

**A-193**

58.    The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 58.

59.    The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 59.

60.    The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 60.

61.    The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 61.

62.    The Estate of Elaine Steinbeck denies the allegations of Paragraph 62 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 62.

**Fraudulent Concealment of Misconduct**

63.    The Estate of Elaine Steinbeck denies the allegations of Paragraph 63 to the extent that they relate to Elaine Steinbeck and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 63.

**FIRST CLAIM FOR RELIEF**

(Trademark Infringement and Unfair Competition pursuant to 15 U.S.C. § 1125(a) by Thomas against the Estate of Elaine Steinbeck, the Foundation, Jean, Frushtick and Does 1 through 10)

64.    The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint set forth in Paragraphs 1 through 63 as if fully set forth herein.

65.    The Estate of Elaine Steinbeck neither admits nor denies each and every allegation of Paragraph 65 as they call for legal conclusions.

66.    The Estate of Elaine Steinbeck neither admits nor denies each and every allegation of Paragraph 66 as they call for legal conclusions.

67.     The Estate of Elaine Steinbeck neither admits nor denies each and every allegation of Paragraph 67 as they call for legal conclusions.

68.     The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 68.

69.     The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 69.

## SECOND CLAIM FOR RELIEF

(Fraud by Thomas against Winick, Pinkus, M&O, and the Estate of Elaine Steinbeck)

70.     The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint set forth in Paragraphs 1 through 69 as if fully set forth herein.

71.     The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 71.

72.     The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72.

> a.      The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72(a) and neither admits nor denies the allegations in the Paragraph as they call for legal conclusions.

> b.      The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72(b) and neither admits nor denies the allegations in the Paragraph as they call for legal conclusions.

73.     The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 73.

# A-195

74. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 74.

## THIRD CLAIM FOR RELIEF

(Negligent Misrepresentation by Thomas against Winick and Pinkus)

75. The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint set forth in Paragraphs 1 through 74 as if fully set forth herein.

76. – 82. The Estate of Elaine Steinbeck neither admits nor denies each and every allegation of Paragraphs 76 through 82 as these allegations relate to other Defendants.

## FOURTH CLAIM FOR RELIEF

(Breach of Fiduciary Duty by Thomas against the Estate of Elaine Steinbeck, M&O, Winick, and Pinkus)

83. The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint set forth in Paragraphs 1 through 82 as if fully set forth herein.

84. The Estate of Elaine Steinbeck neither admits nor denies the allegations of Paragraph 84 as they call for legal conclusions and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 84.

85. The Estate of Elaine Steinbeck neither admits nor denies the allegations of Paragraph 85 as they call for legal conclusions and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 85.

86. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 86.

87. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 87.

## FIFTH CLAIM FOR RELIEF

(Promissory Estoppel By Thomas against the Estate of Elaine Steinbeck)

88. The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint set forth in Paragraphs 1 through 87 as if fully set forth herein.

14

89. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 89.

90. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 90.

## SIXTH CLAIM FOR RELIEF

(Interference with Prospective Economic Advantage by Thomas against M&O)

91. The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint

set forth in Paragraphs 1 through 90 as if fully set forth herein.

92. – 96.   The Estate of Elaine Steinbeck neither admits nor denies each and every

allegation of Paragraphs 92 through 96 as these allegations relate to other Defendants..

## SEVENTH CLAIM FOR RELIEF

(Unjust Enrichment by Thomas and Blake against the Estate of Elaine Steinbeck)

97. The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint

set forth in Paragraphs 1 through 96 as if fully set forth herein.

98. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 98.

99. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 99.

## EIGHTH CLAIM FOR RELIEF

(For Imposition of Constructive Trust by Thomas against the Estate of Elaine Steinbeck)

100. The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint

set forth in Paragraphs 1 through 99 as if fully set forth herein.

101. The Estate of Elaine Steinbeck denies the allegations of the first sentence of

Paragraph 101 and denies knowledge or information sufficient to form a belief as to the truth of

the remaining allegations of Paragraph 101.

102. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 102.

103. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 103.

15

## NINTH CLAIM FOR RELIEF

(For Imposition of a Constructive Trust by Blake Against the Estate of Elaine Steinbeck)

104.    The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint

set forth in Paragraphs 1 through 103 as if fully set forth herein.

105.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 105.

106.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 106.

107.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 107.

## TENTH CLAIM FOR RELIEF

(Declaratory Relief re Copyrighted works by Thomas
against the Estate of Elaine Steinbeck, Jean, Frances, Waverly Scott Kaffaga, Davis Scott Farber,
Anderson Farber Runkle, Jebel Kaffaga, and Bahar Kaffaga)

108.    The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint

set forth in Paragraphs 1 through 107 as if fully set forth herein.

109.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 109.

a. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 109(a).

b. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 109(b).

110.    The Estate of Elaine Steinbeck admits each and every allegation of Paragraph

110.

111.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 111.

112.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 112.

## ELEVENTH CLAIM FOR RELIEF

(Declaratory Relief re Copyrighted works by Blake
against the Estate of Elaine Steinbeck, Jean, Frances, Waverly Scott Kaffaga, Davis Scott Farber,
Anderson Farber Runkle, Jebel Kaffaga, and Bahar Kaffaga)

113.    The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint

set forth in Paragraphs 1 through 112 as if fully set forth herein.

114. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 114.

a. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 114(a).

b. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 114(b).

c. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 114(c).

115. The Estate of Elaine Steinbeck admits each and every allegation of Paragraph 115.

116. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 116.

117. The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 117.

## TWELFTH CLAIM FOR RELIEF

(Declaratory Relief re Trademarks by Thom
against the Estate of Elaine Steinbeck, the Foundation, Jean, Frushtick, and Does 1 through 10)

118. The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint set forth in Paragraphs 1 through 117 as if fully set forth herein.

119. The Estate of Elaine Steinbeck denies knowledge or information sufficient to form a belief as to the truth of each and every allegation of Paragraph 119.

a. The Estate of Elaine Steinbeck neither admits nor denies the allegations of Paragraph 119(a) as they call for legal conclusions and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 119(a).

b. The Estate of Elaine Steinbeck neither admits nor denies the allegations of Paragraph 119(b) as they call for legal conclusions and otherwise denies

17

knowledge or information sufficient to form a belief as to the truth of the
remaining allegations of Paragraph 119(b).

    c.    The Estate of Elaine Steinbeck neither admits nor denies the allegations of
Paragraph 119(c) as they call for legal conclusions and otherwise denies
knowledge or information sufficient to form a belief as to the truth of the
remaining allegations of Paragraph 119(c).

120.    The Estate of Elaine Steinbeck denies knowledge or information sufficient to

form a belief as to the truth of each and every allegation of Paragraph 120.

121.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 121.

    a.    The Estate of Elaine Steinbeck denies each and every allegation of
Paragraph 121(a).

    b.    The Estate of Elaine Steinbeck denies each and every allegation of
Paragraph 121(b).

    c.    The Estate of Elaine Steinbeck denies each and every allegation of
Paragraph 121(c).

122.    The Estate of Elaine Steinbeck denies each and every allegation of Paragraph 122.

### THIRTEENTH CLAIM FOR RELIEF

(Declaratory Relief re Literary Agency Agreement by Thomas against M&O)

123.    The Estate of Elaine Steinbeck repeats and realleges its answers to the Complaint
set forth in Paragraphs 1 through 122 as if fully set forth herein.

124.-127. The Estate of Elaine Steinbeck neither admits nor denies each and every
allegation of Paragraphs 124 through 127 as these allegations relate to other Defendants.

## 200

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' allegations set forth in their Complaint against Defendants fail to state a claim upon which relief can be granted.

#### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' allegations set forth in their Complaint are barred, in whole or in part, under the doctrine of *res judicata* and/or waiver.

#### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

#### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations set forth in their Complaint are barred, in whole or in part, under the doctrine of laches.

#### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

#### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because one or more plaintiffs lack standing and/or capacity to sue.

#### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statutes of limitations.

#### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the Statute of Frauds.

#### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the Parol Evidence Rule.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because the interests asserted by Plaintiffs

do not constitute protectable interests as a matter of law.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by Plaintiffs' acquiescence and/or the

doctrine of ratification.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of accord and satisfaction.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendants have complied with

any contractual conditions.

### FOURTEENTH AFFIRMATIVE DEFENSE

The claims of one or more Plaintiffs are barred in whole or in part by virtue of payments

that were made to Plaintiff.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendants were licensed to take

the actions of which Plaintiffs complain.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because Defendants acted in good faith.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because the conduct of Defendant was

justified and not improper.

## 202

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because the relief sought would result in Plaintiffs' unjust enrichment.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because Plaintiffs' injuries, if any, may have been caused in whole or in part by one or more third parties not under the control of Defendants and/or by acts omissions of the other named Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because Plaintiffs' actions constitute fraud and/or misrepresentation.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because Plaintiff has sustained no actual damages.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs have not pled fraud with the requisite specificity.

**A-203**

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff The Estate of Elaine Steinbeck (the "Estate of Elaine Steinbeck"), by and through its undersigned counsel, Pillsbury Winthrop LLP, for its counterclaims alleges as follows:

## SUMMARY OF ACTION

### Overview

1.     John Steinbeck was a prolific writer who left behind a wealth of intellectual property. His works are highly regarded and are considered classics of Twentieth Century American Literature. Throughout his life, John Steinbeck was careful to renew his copyrights to prevent them from falling into the public domain. While he was alive, he entered into numerous agreements with third parties for various licenses under the copyrights but was careful never to give the copyrights away.

2.     When John Steinbeck died in 1968, he left a Will in which he specifically provided a sum total of $50,000 in trust for each of his two sons, Thomas and John IV. He left neither of them any interest in the copyrights, and, instead, left all of these rights to Elaine Steinbeck.

3.     Thomas Steinbeck and John Steinbeck IV's putative daughter, Blake Smyle, by filing the Complaint in this action, seek to obtain rights to the very intellectual property from which John Steinbeck intentionally excluded his two sons, Thomas Steinbeck and John Steinbeck IV.

4.     By operation of law, Thomas and John IV were able to obtain an interest, along with Elaine Steinbeck, in certain works of John Steinbeck which began their renewal period after John Steinbeck's death. Thirteen years after John Steinbeck's death, Thomas and John IV sued

**204**

Elaine Steinbeck in 1981 for a greater distribution of royalties from the copyrights to John Steinbeck's works and litigated the same issues regarding whether Elaine Steinbeck, along with John Steinbeck's literary agent – McIntosh & Otis – engaged in fraud, deception, and misrepresentations. Their claims were dismissed by this Court.

5.      Thomas and now John IV's putative daughter, Blake, allege, once again, fraud, deception, and misrepresentations against the very same individuals in a renewed effort to change the existing distribution of royalties from the works of John Steinbeck. Nothing has changed since the first action, except that Elaine Steinbeck has died. Thomas and Blake's claims again lack merit.

## Declaratory Judgment Reaffirming Settlement of 1981 Litigation

6.      Pursuant to 28 U.S.C. § 2201(a), the Estate of Elaine Steinbeck seeks a declaration that Thomas and Blake are permanently enjoined from contesting the percentage of royalty distribution rights from the works of John Steinbeck as against the Estate of Elaine Steinbeck and her beneficiaries based on the terms of a confidential settlement agreement which Thomas and John IV voluntarily entered into in 1983 (the "1983 Settlement Agreement").

7.      The 1983 Settlement Agreement was a direct result of a 1981 litigation brought by Thomas and his brother, John IV, against Elaine Steinbeck, which contested royalty distributions from the works of John Steinbeck. This 1981 litigation resulted in a grant of summary judgment in favor of Elaine Steinbeck and a dismissal of Thomas' and John IV's complaint on December 28, 1982.

8.      Thomas and John IV appealed the dismissal, but in the interest of resolving the need for further litigation, Thomas and John IV entered into the 1983 Settlement Agreement with Elaine Steinbeck. The 1983 Settlement Agreement resolved copyright issues and royalty

23

## A-205

distribution issues as between Thomas and John IV and Elaine Steinbeck. The 1983 Settlement Agreement bound all heirs, successors and assigns of Thomas and John IV.

9.     For twenty-one years, Thomas and John IV and his successors have benefited from that 1983 Settlement Agreement and have never contested its terms.

10.    After twenty-one years, Thomas and his putative niece, Blake, have alleged an elaborate scheme of fraud and deceit against Elaine Steinbeck and the literary agent for all of John Steinbeck's work, McIntosh & Otis, that are similar in scope to each and every allegation brought in 1981.

11.    The present action has been brought nearly fifteen months after the death of Elaine Steinbeck and seeks to revisit the prior litigation and undermine the terms of the 1983 Settlement Agreement. Accordingly, the Estate of Elaine Steinbeck seeks a declaration that the terms of the 1983 Settlement Agreement continue to bind both Thomas and Blake and that neither can contest the provisions set forth therein.

### Declaratory Judgment Invalidating Notices of Termination

12.    This action also involves the rights of termination under 17 U.S.C. §§ 304(c) and (d) of the Copyright Act of 1976 as Thomas and Blake rely upon these sections in their attempt to terminate existing rights in the works of deceased author John Steinbeck.

13.    Thomas and Blake have issued five Notices of Termination under Sections 304(c) and/or 304(d) to various licensees of John Steinbeck's works. These five Notices of Termination purport to terminate, inter alia, certain rights in various works of John Steinbeck which were the subject of a series of agreements which John Steinbeck entered into with various third parties prior to January 1, 1978.

14.    Pursuant to 28 U.S.C. § 2201(a), The Estate of Elaine Steinbeck seeks a

24

declaration that these five Notices of Termination issued by Thomas, as the sole surviving child of deceased author John Steinbeck, and Blake, the alleged sole surviving child of deceased John IV, are all invalid for the reasons set forth herein.

## Declaratory Judgment Upholding Trademark Rights of the Steinbeck Heritage Foundation

15.     Pursuant to 28 U.S.C. § 2201(a), the Estate of Elaine Steinbeck seeks a declaration that Thomas Steinbeck is permanently enjoined from contesting trademark rights in the name, likeness, and signature of John Steinbeck based on the trademark applications and registrations with the United States Patent and Trademark Office (the "U.S.P.T.O.") owned by the Steinbeck Heritage Foundation (the "Foundation").

## THE PARTIES

### Defendant and Counterclaim Plaintiff

16.     The Will of Elaine Steinbeck was admitted to Probate in the Surrogate's Court for the County of New York, New York in 2003.  Waverly Scott Kaffaga is the Executrix of the Estate of Elaine Steinbeck.

### Plaintiffs and Counterclaim Defendants

17.     Upon information and belief, Plaintiff and Counterclaim Defendant Thomas Steinbeck is an individual residing at 1482 East Valley Road, Suite 100, Montecito, California 93108. He is the sole surviving child of deceased author John Steinbeck.

18.     Upon information and belief, Plaintiff and Counterclaim Defendant Blake Smyle is an individual residing at 6007 Clevelandtown Road, Boonsboro, Maryland 21713.  Blake alleges she is the sole surviving child of deceased John Steinbeck IV, though such allegations have not been substantiated.

## A-207

### JURISDICTION

19.     Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question; 28 U.S.C. § 1332(a), giving this Court original jurisdiction in a civil action where a matter in controversy exceeds the value of $75,000 and is between citizens of different States; 28 U.S.C. § 1338(a), giving this Court original jurisdiction in a civil action arising under the copyright laws of the United States; and 28 U.S.C. § 2201 and § 2202, governing declaratory judgments.

20.     Subject matter jurisdiction over these counterclaims exists as the counterclaims are properly joined under Federal Rule of Civil Procedure 18.

21.     The issues raised by the counterclaims alleged herein are related to the issues originally brought by Plaintiff and Counterclaim Defendant Thomas Steinbeck and his brother John Steinbeck IV, the putative father of Plaintiff and Counterclaim Defendant Blake Smyle, in the case captioned John Steinbeck IV and Thom Steinbeck v. Elaine Steinbeck, No. 81 Civ. 6105, filed in 1981 in this Court.

### VENUE

22.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 28 U.S.C. § 1400(a).

### NATURE OF THE ACTION

#### The John Steinbeck Works

23.     Deceased author John Steinbeck was born on February 27, 1902 and died on December 20, 1968. During his lifetime, he authored no fewer than 35 works and obtained copyright registrations for all of these works. The 1962 recipient of the Nobel Prize for literature, John Steinbeck is one of America's most significant Twentieth Century writers whose

26

works are highly acclaimed and are included in school syllabi, doctoral theses, and Oprah's Book Club.

24.     Upon information and belief, John Steinbeck renewed the copyright registrations in all of his works that came up for renewal during his lifetime. This renewal period began twenty-eight years after the copyright in each work was first obtained. *See* 17 U.S.C. § 304(a). Upon information and belief, John Steinbeck filed copyright renewal registrations for the following works: *Cup of Gold* (©1929), *The Pastures of Heaven* (©1932), *To a God Unknown* (©1933), *The Red Pony* (©1937), *Tortilla Flat* (©1935), *In Dubious Battle* (©1936), *Of Mice and Men* (©1937), *Of Mice and Men* (Play) (©1937), *Murder at Full Moon* (©1938), *The Long Valley* (©1938), *The Grapes of Wrath* (©1939), *Forgotten Village* (©1941), *The Sea of Cortez* (©1941). These works, renewed by John Steinbeck, will be referred to herein as the "Early Steinbeck Works."

25.     John Steinbeck also authored *The Moon is Down* (©1942), *The Moon is Down* (Play) (©1942), *Bombs Away* (©1942), *Cannery Row* (©1945), *The Pearl* (©1945), *The Wayward Bus* (©1947), *A Russian Journal* (©1948), *Burning Bright* (©1950), *Log from the Sea of Cortez* (©1951), *East of Eden* (©1952), *Sweet Thursday* (©1954), *The Short Reign of Pippin IV* (©1957); *Once There Was a War* (©1958), *The Winter of Our Discontent* (©1961), and *Travels with Charley* (©1962), *America and Americans* (©1966). As the copyright renewal term for these works vested *after* John Steinbeck's death, the renewal registrations, upon information and belief, were filed jointly by Elaine Steinbeck, John Steinbeck IV, and Thomas Steinbeck as John Steinbeck's statutory heirs pursuant to 17 U.S.C. § 304(a)(1)(C). These works will be referred to herein as the "Late Steinbeck Works."

26.     The Early Steinbeck Works and the Late Steinbeck Works shall be collectively

27

referred to herein as "The John Steinbeck Works."

27.     Throughout his lifetime, John Steinbeck entered into various agreements with

publishers and production companies for, *inter alia*, various motion picture rights, limited

publication rights, radio rights, film rights, and television rights, with respect to The John

Steinbeck Works.

## Ownership of the Copyrights in the John Steinbeck Works

28.     Upon his death in 1968, John Steinbeck's Will bequeathed all his rights in the

copyrights to The John Steinbeck Works to his widow, Elaine Steinbeck. There were no rights

in these copyrights given to either Thomas Steinbeck or John Steinbeck IV, his only children.

29.     With respect to the Early Steinbeck Works, which were renewed by John

Steinbeck himself, Elaine Steinbeck inherited the entire copyright interest because these rights

passed through John Steinbeck's Will.

30.     With respect to the Late Steinbeck Works, whose renewal period began after John

Steinbeck's death, pursuant to the statutorily created renewal provisions under the Copyright Act

of 1976, 17 U.S.C. § 304(a)(1)(C), the ownership of the copyrights in the Late Steinbeck Works

went to Elaine Steinbeck, Thomas Steinbeck, and John Steinbeck IV.

## The 1981 Steinbeck Litigation and the 1983 Settlement Agreement

31.     In 1981, Thomas Steinbeck and John Steinbeck IV filed an action against Elaine

Steinbeck in this Court captioned John Steinbeck, IV and Thom Steinbeck v. Elaine Steinbeck,

81 Civ. 6105, challenging the royalties distribution plan from some of the Late Steinbeck Works.

A true and correct copy of the 1981 complaint is attached hereto as Exhibit A.

32.     Although Thomas and John IV had entered into a written agreement setting forth

the royalty distribution plan from these works, Thomas and John IV contested said agreement

28

and argued that the agreement was "void because defendant [Elaine Steinbeck] made misrepresentations, overreach[ed] and possibly [committed] fraud at the time of [Thomas' and John IV's] signing of the agreement." (See Endorsed Mem. by Judge Owen (12/8/1982)(internal quotations omitted).) A true and correct copy of this Endorsed Memorandum is attached hereto as Exhibit B.

33.     Thomas' and John IV's pleading entitled, Plaintiffs' Genuine Issues As To Material Facts, further indicates that the 1981 litigation called into question, *inter alia*, "the representation made to [Thomas and John IV] by McIntosh & Otis upon which [Thomas and John IV] relied prior to signing" a letter agreeing to distribution of rights; "the representation made by Elaine Steinbeck;" and "what influence was exerted by the Defendant Elaine Steinbeck on McIntosh & Otis." These allegations are similar to the ones presently alleged in Thomas and Blake's current complaint. A true and correct copy of Plaintiffs' Genuine Issues As To Material Facts filed in 1981 is attached hereto as Exhibit C.

34.     The Honorable Judge Owen found in favor of Elaine Steinbeck and granted her summary judgment and dismissed the complaint, stating that "[i]n order to defeat [Elaine Steinbeck's] motion for summary judgment on the agreement, [Thomas and John IV] must do more than allege fraud or misrepresentation in conclusory terms." (*See* Ex. B, Endorsed Mem. by Judge Owen.)

35.     After Thomas and John IV filed a notice of appeal to the Second Circuit Court of Appeals, Thomas and John IV and Elaine Steinbeck entered into the 1983 Settlement Agreement to resolve the issues with respect to renewal and royalty distributions, which also included a power of attorney to be executed in favor of Elaine Steinbeck for matters related to the lawsuit. Thomas and John IV were represented by counsel during the 1981 litigation and appeal.

36.     The terms of the 1983 Settlement Agreement have been upheld by all parties without any contest for twenty-one years. Thomas, specifically, has benefited from its terms and accepted the distributions thereunder for more than two decades.

37.     Moreover, in Thomas' and Blake's 2002 probate action concerning the Estate of John IV in California (described in more detail in Paragraphs 42 and 43 below), counsel for Thomas Steinbeck acknowledged that all parties to the Settlement Agreement must comply with its terms. In fact, counsel for Thomas stated: "Under the terms of [the 1983] settlement agreement, [John IV's] Estate and any heirs, successors, or assigns are legally bound to comply with its terms. The settlement agreement provides that [John IV] and, accordingly, his successors, heirs, and assigns will execute an irrevocable power of attorney to [Elaine Steinbeck]." (See Thomas' Opposition for Judgment on the Pleadings filed by Nancy Steinbeck, dated March 19, 2002, at 10 n.6.)

38.     The 1981 action demonstrates that Thomas Steinbeck has been advised by legal counsel and has been acutely aware of his rights under the copyright law and, more specifically, that he understands the concept of renewal rights such that it would have been difficult for Elaine Steinbeck to "secretly" file public renewal registrations with the Copyright Office as alleged in Paragraph 23 of Thomas' and Blake's current complaint. More importantly, a review of the 1981 action indicates that the current action seeks to relitigate issues previously addressed by this Court.

## The Death of John Steinbeck IV in 1991 and "Appearance" of Blake Smyle in 2002

39.     John Steinbeck IV died on February 7, 1991. John Steinbeck IV left a Will which devised and bequeathed all of his assets, "including all copyrights and literary property" to Nancy Steinbeck. The Will further provided that "[i]n the event Nancy Steinbeck does not

## 212

survive me, then I hereby give devise and bequeath this, my residuary estate, in equal shares per stirpes, to my daughter Megan and to my son Michael." There was no mention of Blake Smyle anywhere in John IV's Will.

40.     Upon information and belief, the distributions under the 1983 Settlement Agreement were paid to John IV directly until his death in 1991.

41.     After John Steinbeck IV's death in 1991, upon information and belief, John IV's share of the royalties was paid to Nancy Steinbeck.

42.     Ten years later, on or about September 2001, Thomas Steinbeck challenged the marital status of Nancy Steinbeck at the time of John IV's death as she had claimed to be the widow of John IV, thereby calling into question whether she was the lawful successor of John IV and whether she was entitled to any share of John IV's interest in the copyrights of John Steinbeck. The probate action was filed in the Superior Court of the State of California, in and for the County of San Diego, Case No. P180269, captioned In the Matter of the Estate of John Steinbeck IV.

43.     The minutes of the probate court demonstrate that on or about April 25, 2002, Blake Smyle appeared in the probate action, challenging the validity of the Will of John Steinbeck IV. A true and correct copy of the minutes from the probate court are attached hereto as Exhibit D.

44.     Blake's appearance contradicts Thomas Steinbeck's allegation in Paragraph 35 of his Complaint that Elaine Steinbeck "actively concealed" Blake's whereabouts and that he only found her in "late 2002."

45.     Upon information and belief, John IV's royalty distributions under the 1983 Settlement Agreement have been distributed to Thomas Steinbeck, Nancy Steinbeck, and Blake

31

Smyle since mid-2003, when Nancy Steinbeck, Thomas Steinbeck and Blake Smyle entered into a confidential settlement agreement as a result of the probate action in California.

46.     Upon information and belief, Blake Smyle was never adopted by John Steinbeck IV and no paternity test has ever been conducted to confirm that she is the natural child of John Steinbeck IV.

**The 1994 Agreements with Viking Penguin**

47.     On October 24, 1994, Elaine Steinbeck (as "Author") entered into a "new agreement for continued publication" with Viking Penguin, as "Publisher," with regard to the Early Steinbeck Works, renewed by John Steinbeck, and which passed to Elaine Steinbeck in accordance with John Steinbeck's Will (the "Viking Agreement for Early Steinbeck Works" or "Agreement"). Pursuant to the Viking Agreement for Early Steinbeck Works, the Author granted and assigned to the Publisher "the sole and exclusive right to publish" the works defined in that Agreement. Paragraph 19 of the Viking Agreement for Early Steinbeck Works provided that "when signed by Author and Publisher, [this agreement] will cancel and supercede the previous agreements, as amended, for the Works #1-19 covered hereunder." (emphasis added). This Agreement provides for a royalty distribution for the Early Steinbeck Works.

48.     On October 24, 1994, Elaine Steinbeck and Thomas Steinbeck (as "Author") entered into a "new agreement for continued publication" with Viking Penguin (as "Publisher") with regard to the Late Steinbeck Works renewed by Elaine Steinbeck, Thomas Steinbeck, and John Steinbeck IV (the "Viking Agreement for the Late Steinbeck Works" or "Agreement"). Pursuant to that Agreement, the Author granted and assigned to the Publisher "the sole and exclusive right to publish" the works defined in that Agreement. Paragraph 19 of the Viking Agreement for the Late Steinbeck Works provided that "when signed by Author and Publisher,

32

**214**

[this agreement] will cancel and supercede the previous agreements, as amended, for the Works #1-18 covered hereunder." (emphasis added). This Agreement provides for a royalty distribution for the Late Steinbeck Works.

49.     The Viking Agreement for Late Steinbeck Works was signed by Elaine Steinbeck on her behalf, as well as on behalf of Thomas Steinbeck pursuant to the power of attorney Thomas granted to Elaine during the 1983 Settlement Agreement.

50.     On December 22, 1994, Thomas Steinbeck ratified and accepted the Viking Agreement for the Late Steinbeck Works. The ratification and acceptance provided that: "Thom Steinbeck, a/k/a Thomas Steinbeck, a/k/a Thomas Myles Steinbeck, individually and as attorney-in-fact for Nancy Steinbeck, hereby confirms, approves, ratifies and accepts all terms and conditions of the agreement dated the 24th day of October 1994, between Elaine Steinbeck and Thomas Steinbeck as Author and/or Proprietor and Viking Penguin as Publisher relating to the publication of the eighteen literary works written by John Steinbeck, and agrees individually and on behalf on Nancy Steinbeck as her attorney-in-fact to be fully bound by all of the terms and provisions thereof." A true and correct copy of this Ratification and Acceptance of Agreement is attached hereto as Exhibit E.

51.     The two 1994 Agreements cover all of The John Steinbeck Works that are at issue in Thomas' and Blake's action and these counterclaims.

52.     By the express terms of the two 1994 Agreements, all agreements which John Steinbeck had originally negotiated with Viking Penguin for his works were canceled and superseded. As such, there are no other valid agreements in existence with Viking Penguin with respect to The John Steinbeck Works and their publication. The 1994 agreements are not subject to termination rights as a matter of law because they were executed after January 1, 1978 and by

33

the express provisions of 17 U.S.C. § 304(c), only grants of renewal copyrights "executed before January 1, 1978" are subject to termination rights.

53.    Thomas Steinbeck has benefited from the Viking Agreement for the Late Steinbeck Works since 1994, has received royalties thereunder, and has never contested its terms in ten years.

## Elaine Steinbeck's Death in 2003 and Distribution of Copyright Interests

54.    Upon Elaine Steinbeck's death in 2003, all copyrights and proceeds from the exploitation of the Early Steinbeck Works and Elaine Steinbeck's interest in the Late Steinbeck Works were divided as follows under the terms of Elaine Steinbeck's Will: one half to Waverly Kaffaga, her daughter, during her lifetime, with the remainder to Waverly Kaffaga's issue; one quarter to Jean Anderson Boone, her sister, during her lifetime with a successive life estate to Rae W. Downey and the remainder to Waverly Kaffaga's issue; and one quarter to Frances Anderson Atkinson, her sister, during her lifetime with the remainder to Waverly Kaffaga's issue. As Frances Anderson Atkinson is now deceased, her interest has now vested in Waverly Kaffaga's surviving children: David Scott Farber, Anderson Farber, Jebel Kaffaga, and Bahar Kaffaga.

## The Notices of Termination Issued by Thomas and Blake in 2004

### First Notice of Termination for *The Wayward Bus* (©1947)

55.    On or about May 17, 2004, Thomas Steinbeck and Blake Smyle, relying on Section 304(c) of the Copyright Act of 1976, issued a Notice of Termination addressed to the Estate of Elaine Steinbeck c/o McIntosh and Otis, Inc., and Twentieth Century Fox Film Corporation ("Twentieth Century") purporting to terminate "all motion picture rights, limited publication rights, radio rights, film rights, television, and commercial tie-up rights" currently

34

held by Twentieth Century and/or Elaine Steinbeck and which were originally granted by John Steinbeck in *The Wayward Bus* pursuant to various agreements dated May 19, 1949 and June 13, 1949. A true and correct copy of this Notice of Termination is attached hereto as Exhibit F.

56.    17 U.S.C. § 304(c) allows for the termination of any grant of a transfer or license of the renewal copyright. It is recognized that an author can contract to give another his rights during the original term, and also during the renewal term, *provided that the author is alive at the time of renewal* so that he can validly assign the copyright of the work during the renewal period. In the event that an author dies *prior* to the vesting of the renewal rights, any renewal rights previously assigned do not vest in the grantee. *See Stewart v. Abend*, 495 U.S. 207 (1990).

57.    With respect to *The Wayward Bus*, John Steinbeck assigned his renewal rights in *The Wayward Bus* in the aforementioned agreements in 1949, but he died in 1968 *before* the renewal period in this work vested in 1975. As such, there are no renewal rights in existence for *The Wayward Bus* which either Thomas Steinbeck or Blake Smyle can terminate. Accordingly, this Notice of Termination is invalid.

58.    Moreover, the terms of the 1983 Settlement Agreement render this Notice of Termination invalid.

### Second Notice of Termination for *Cannery Row* (©1945)

59.    On or about May 17, 2004, Thomas Steinbeck and Blake Smyle, relying on Section 304(c) of the Copyright Act of 1976, issued a Notice of Termination addressed to the Estate of Elaine Steinbeck c/o McIntosh and Otis, Inc., Rogers & Hammerstein, and MGM purporting to terminate "all motion picture, radio, and television rights" granted to the addressees by John Steinbeck in *Cannery Row* "which formed the basis for rights optioned to Cannery Row Productions, Inc. by short form option agreement dates as of April 10, 1978." A true and correct

copy of this Notice of Termination is attached hereto as Exhibit G.

60.     On or about June 13, 2004, Thomas Steinbeck and Blake Smyle served an Amended Notice of Termination for *Cannery Row* which only changed the Effective Date of Termination to comply, upon information and belief, with the requirement that notice of termination must be given within two to ten years from the Effective Date of Termination. *See* 17 U.S.C. § 304(c)(4)(A). A true and correct copy of this Notice of Termination is also attached hereto as Exhibit G.

61.     Both the original Notice of Termination and the Amended Notice of Termination for *Cannery Row* only mention one agreement that the notice purports to terminate. This agreement, dated April 10, 1978, is not subject to termination as the express terms of 17 U.S.C. § 304(c) apply only to grants "executed before January 1, 1978." Accordingly, this Notice of Termination is invalid.

62.     Additionally, this Notice of Termination is vague as to any other agreements it seeks to terminate. As such, the Notice of Termination fails to comply with the terms of 37 C.F.R. § 201.10(b)(1)(iv).

63.     Further, the terms of the 1983 Settlement Agreement render this Notice of Termination invalid.

Third Notice of Termination for *The Long Valley* (©1938)

64.     On or about May 17, 2004, Thomas Steinbeck and Blake Smyle, relying on Section 304(d) of the Copyright Act of 1976, issued a Notice of Termination addressed to the Estate of Elaine Steinbeck c/o McIntosh and Otis, Inc., and Paramount Pictures Corporation purporting to terminate all rights granted to the aforementioned to release, exhibit and distribute a motion picture entitled *The Red Pony*, based on the story and/or literary material by John

36

**218**

Steinbeck entitled *The Red Pony*, *The Great Mountains*, *The Gift*, *The Long Valley*, *Leader of the People*, and *The Promise*, and to broadcast by radio material therefrom, as well as to exploit limited publication rights therein for advertising purposes pursuant to a 1947 agreement between John Steinbeck and the Charles K. Feldman Group Productions and Lewis Milestone Productions, Inc. A true and correct copy of this Notice of Termination is attached hereto as Exhibit H.

65. This Notice of Termination additionally purports to terminate all rights received from John Steinbeck to all motion picture, radio, and television rights in the stories *The Great Mountains*, *The Promise*, and *The Gift* pursuant to a series of agreements. By the terms of the 1983 Settlement Agreement, this Notice of Termination is invalid.

Fourth Notice of Termination for *The Red Pony* (©1937)

66. On or about May 17, 2004, Thomas Steinbeck and Blake Smyle, relying on Section 304(d) of the Copyright Act of 1976, issued a Notice of Termination addressed to the Estate of Elaine Steinbeck c/o McIntosh and Otis, Inc., and Paramount Pictures Corporation purporting to terminate all rights granted to the aforementioned to release, exhibit and distribute a motion picture entitled *The Red Pony*, based on the story and/or literary material by John Steinbeck entitled *The Red Pony*, *The Great Mountains*, *The Gift*, *The Long Valley*, *Leader of the People*, and *The Promise*, and to broadcast by radio material therefrom, as well as to exploit limited publication rights therein for advertising purposes pursuant to a 1947 agreement between John Steinbeck and the Charles K. Feldman Group Productions and Lewis Milestone Productions, Inc. A true and correct copy of this Notice of Termination is attached hereto as Exhibit I.

67. This Notice of Termination additionally purports to terminate all rights received

37

from John Steinbeck to all motion picture, radio, and television rights in the stories *The Great Mountains*, *The Promise*, and *The Gift* pursuant to a series of agreements. By the terms of the 1983 Settlement Agreement, this Notice of Termination is also invalid.

Fifth Notice of Termination for the *Cup of Gold* (©1929), *The Pastures of Heaven* (©1932), *The Red Pony* (©1937), *To a God Unknown* (©1933), *Tortilla Flat* (©1935), *In Dubious Battle* (©1936), *Of Mice and Men* (©1937), *Of Mice and Men* (the play, ©1937), *The Long Valley* (©1938), and *The Grapes of Wrath* (©1939)

68.     On or about June 13, 2004, Thomas Steinbeck and Blake Smyle, relying on Section 304(d) of the Copyright Act of 1976, issued a fifth Notice of Termination addressed to the Estate of Elaine Steinbeck c/o McIntosh and Otis, Inc., and Viking Penguin, a Division of Penguin Books, USA ("Viking Penguin") purporting to terminate, *inter alia*, "any and all grants of book publication rights, motion picture rights, television rights, dramatic rights, theatrical stage rights, radio broadcast rights" in the *Cup of Gold* (©1929), *The Pastures of Heaven* (©1932), *The Red Pony* (©1937), *To a God Unknown* (©1933), *Tortilla Flat* (©1935), *In Dubious Battle* (©1936), *Of Mice and Men* (©1937), *Of Mice and Men* (the play, ©1937), *The Long Valley* (©1938), and *The Grapes of Wrath* (©1939). A true and correct copy of this Notice of Termination is attached hereto as Exhibit J.

69.     The fifth Notice of Termination, however, completely ignores the fact that the works (all are Early Steinbeck Works) which Thomas Steinbeck and Blake Smyle are purporting to terminate are the subject of a 1994 Agreement with Viking Penguin which, by its own express terms, *cancels and supersedes* all previous agreements with Viking Penguin for the works of John Steinbeck. *See infra* Paragraphs 47 through 53. The only agreements in existence for all of The John Steinbeck Works with Viking Penguin are two 1994 Agreements. These Agreements, both dated October 24, 1994, are not subject to termination as the express terms of 17 U.S.C. § 304(c) apply only to grants "executed before January 1, 1978." Accordingly, this fifth Notice of

38

Termination is also invalid.

70.     Additionally, the terms of the 1983 Settlement Agreement render this Notice of
Termination invalid.

## Viking Penguin's Action for Declaratory Action

71.     On or about August 24, 2004, Penguin Group (USA), as successor of Viking
Penguin, filed a Complaint for Declaratory Judgment, Civ. A. 04-6795, regarding its rights and
obligations concerning the validity and effectiveness of Thomas' and Blake's Fifth Notice of
Termination under 17 U.S.C. § 304(d), the same Notice of Termination discussed at Paragraphs
68 through 70, above.

72.     The declaratory judgment by Penguin Group complaint (USA) states at Paragraph
18, "[a]ll of the Works described in the Termination Notice are subject to the 1994 Agreement.
The 1994 Agreement, by its express terms, cancelled and superseded all prior agreements
concerning the Works including, therefore, any agreements made before 1978.  Accordingly,
there are no existing pre-1978 agreements with respect to the Works, and all such agreements
were lawfully revoked in 1994 and are no longer subject to termination.  The validity and
enforceability of the 1994 Agreement have never been challenged or questioned in the 10 years
since it was signed."

## The John Steinbeck Trademarks

73.     Upon his death in 1968, John Steinbeck's Will bequeathed his residuary estate to
his widow, Elaine Steinbeck.  There were no trademark or publicity rights given to either
Thomas Steinbeck or John Steinbeck IV, his only children, nor to any other beneficiary.

74.     As a matter of law, where a will is silent as to trademark rights, and publicity
rights, to the extent that the law protects a posthumous right to publicity, said rights pass through

**A-221**

the residuary estate of the decedent's will.

75.     Thirty-six years after his death, John Steinbeck's name is well-known not just for his literature but for the philosophies it embodied. Among other tributes to the John Steinbeck legacy, the Steinbeck Center in Salinas, California, and the Center for Steinbeck Studies in San Jose, California, work to preserve and promote the John Steinbeck legacy.

76.     In 1998, Elaine Steinbeck formed the Steinbeck Heritage Foundation (the "Foundation") to protect, preserve, and promote the legacy of John Steinbeck.

77.     On or about September 19, 1998, Elaine Steinbeck, by a written instrument, assigned to the Foundation any and all right, title and interest owned by Elaine in the trademarks and service marks JOHN STEINBECK, STEINBECK, and the signature and likeness of John Steinbeck, together with the goodwill symbolized by the trademarks and service marks and the right to initiate infringement proceedings. A true and correct copy of the Assignment is attached hereto as Exhibit K.

78.     The Foundation has applied for and registered Federal trademark protection for the following uses of the name, likeness, and signature of John Steinbeck with the United States Patent and Trademark Office as follows (collectively, the "Steinbeck Trademarks"):

| MARK | OWNER | FILING STATUS | DATE | GOODS/SERVICES |
|------|-------|---------------|------|----------------|
| STEINBECK | Steinbeck Heritage Foundation ("Foundation") | Allowed<br><br>Opposition filed by Brigham Young University (Terminated)<br><br>Serial No. 75/831,218 | Allowed Aug. 24, 2004.<br>Pub. Jan. 6, 2004.<br>Filed Oct. 19, 1999. | Magnets, educational services, plush toys and bean bags, clothing, mugs, bookmarks, pencils etc., lapel pins. |
| John Steinbeck [signature] | Foundation | Registered<br><br>Registration No. 2,574,954 | Reg. Jun. 4, 2002.<br>Pub. Mar. 12, 2002.<br>Filed Jun. 17, 1999. | Clothing, handkerchiefs, pens. |
| John Steinbeck [signature] | Foundation | Registered<br><br>Registration No. 2,825,467 | Reg. Mar. 23, 2004.<br>Pub. Dec. 17, 2002.<br>Filed Oct. 19, 1999. | Mugs |

| MARK | OWNER | FILING STATUS | DATE | GOODS/SERVICES |
|------|-------|---------------|------|----------------|
| *John Steinbeck* [signature] | Foundation | ITU – Alowed<br><br>Serial No. 75/831,224 | Allowed Mar. 11, 2003<br>Pub. Dec. 17, 2002.<br>Filed Oct. 19, 1999. | Plush toys, bean bags; shopping bags, bookmarks, pencils, etc.; lapel pins. |
| STEINBECK STUDIES | Foundation | Pending<br><br>Serial No. 78/224,531 | Filed Mar. 12, 2003. | Publications, namely, journal "primarily concerning the life of John Steinbeck and the literary works by John Steinbeck in regular print". |
| JOHN STEINBECK | Foundation | ITU – Alowed<br><br>Serial No. 75/826,981 | Allowed Mar. 11, 2003.<br>Pub. Dec. 17, 2002.<br>Filed Oct. 19, 1999. | Plush toys, bean bags; shopping bags, bookmarks, pencils, etc.; lapel pins. |
| JOHN STEINBECK | Foundation | Registered<br><br>Registration No. 2,825,466 | Reg. Mar. 23, 2004.<br>Pub. Dec. 17, 2002.<br>Filed Oct. 19, 1999. | Mugs, pencils, pens. |

True and correct copies of printouts from the United States Patent and Trademark Office for each of the Registrations set forth above are attached hereto as Exhibits L through R.

79.    The Foundation has used, licensed, and prohibited others from making unauthorized trademark use of the name, likeness, and signature of John Steinbeck since as early 1998. The mark STEINBECK STUDIES has been in use since as early as 1986.

80.    As of the date of filing his Complaint, Thomas Steinbeck had not applied for or owned any State, Federal, or Common Law trademarks.

81.    As of the date of filing his Complaint, Thomas Steinbeck had not filed an Opposition to the trademark applications filed by the Foundation, or otherwise challenged any of the Foundation's trademark applications, registrations, or use.

82.    As of the date of filing his Complaint, the Opposition periods for all of the trademarks listed in Paragraph 78 had already expired. As set forth above, all trademarks registered by the Foundation were published for Opposition. Pursuant to the Trademark Manual of Examination Procedures §1503.3, any person has thirty days following publication during

41

## A-223

which he can oppose or request an extension of time in which to oppose. During the relevant

period for each mark, as shown below, Thomas did not act:

| MARK | BEGINNING OF OPPOSITION PERIOD | EXPIRATION OF OPPOSITION PERIOD ABSENT AN EXTENSION |
|---|---|---|
| STEINBECK<br><br>Serial No. 75/831,218 | Pub. Jan. 6, 2004 | FEBRUARY 5, 2004 |
| *John Steinbeck* [signature]<br><br>Registration No. 2,574,954 | Pub. Mar. 12, 2002 | APRIL 12, 2002 |
| *John Steinbeck* [signature] Registration No. 2,825,467 | Pub. Dec. 17, 2002 | JANUARY 16, 2003 |
| *John Steinbeck* [signature]<br>Serial No. 75/831,224 | Pub. Dec. 17, 2002 | JANUARY 16, 2003 |
| JOHN STEINBECK Serial No. 75/826,981 | Pub. Dec. 17, 2002 | JANUARY 16, 2003 |
| JOHN STEINBECK Registration No. 2,825,466 | Pub. Dec. 17, 2002 | JANUARY 16, 2003 |

83.     Upon information and belief, Thomas Steinbeck has not brought an infringement

action against any of the Foundation licensees nor otherwise challenged licensees' use of the

Steinbeck Trademarks. Upon information and belief, Thomas Steinbeck was aware of the

licensing activities in connection with the Steinbeck Trademarks because Thomas Steinbeck is or

was a member of the Executive Board of the National Steinbeck Center, the principal licensee of

the Steinbeck Marks, during the relevant period.

### FIRST CLAIM FOR DECLARATORY RELIEF
### pursuant to 28 U.S.C. § 2201(a)
### Validity of the 1983 Settlement Agreement

84.     Defendant and Counterclaim Plaintiff The Estate of Elaine Steinbeck incorporates

herein by reference all of the allegations and averments contained in Paragraphs 1 through 83 of

these counterclaims.

85.     An actual controversy exists with respect to the continued validity of the terms of

42

**224**

the 1983 Settlement Agreement as Thomas' and Blake's present complaint seeks to undermine its terms with respect to copyright ownership of renewal rights and the distribution of royalties provided for thereunder.

86.    Accordingly, by this action, Defendant and Counterclaim Plaintiff The Estate of Elaine Steinbeck seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that the terms of the 1983 Settlement Agreement continue to bind both Thomas and Blake and that neither can contest the provisions set forth therein.

## SECOND CLAIM FOR DECLARATORY RELIEF
### pursuant to 28 U.S.C. § 2201(a)
### Validity of Termination Notices

87.    Defendant and Counterclaim Plaintiff The Estate of Elaine Steinbeck incorporates herein by reference all of the allegations and averments contained in Paragraphs 1 through 86 of these counterclaims.

88.    An actual controversy now exists with respect to the validity of the foregoing Notices of Termination and their effect on the rights and obligations of the Defendant and Counterclaim Plaintiff, as well as the third parties to whom notice has been given, thus requiring the interpretation and application of the United States copyright law.

89.    Accordingly, by this action, The Estate of Elaine Steinbeck seeks a judgment pursuant to 28 U.S.C. § 2201 declaring the Notices of Termination to be invalid and of no legal force and effect.

90.    Jean avers that John Steinbeck's Will bequeathed all his rights in the copyrights to the John Steinbeck Works to his widow, Elaine Steinbeck. With respect to the Early Steinbeck Works, Elaine Steinbeck is the rightful owner of the entire copyright interest attributed to those works as those interests passed by Will.

43

**A-225**

91.    The Estate of Elaine Steinbeck avers that all five Notices of Termination are invalid because issues related to the copyrights of John Steinbeck are the subject of the 1983 Settlement Agreement.

92.    The Estate of Elaine Steinbeck avers that the First and Second Notices of Termination are further invalid because termination rights can only be effected against transfers of renewal interests that actually *vested* in the grantee. *See Stewart v. Abend,* 495 U.S. 207 (1990). As John Steinbeck died before the renewal period of many of his works (the Late Steinbeck Works), any Notice of Termination seeking to terminate agreements involving works that John Steinbeck was unable to renew has, in fact, nothing to terminate.

93.    The Estate of Elaine Steinbeck avers that the Second and Fifth Notices of Termination are further invalid because the express provisions of 17 U.S.C. § 304 provide that no rights in contracts executed after January 1, 1978 can be terminated. Any Notice of Termination thus seeking to terminate rights governed by contracts executed post January 1, 1978 is invalid. Here, any publishing agreements entered into by John Steinbeck with Viking Penguin prior to 1948 were fully replaced by the agreements negotiated in 1994 covering all of The John Steinbeck Works. There are no pre-1978 agreements with Viking for publishing in existence that can be terminated under the provisions of the 1976 Copyright Act. These notices are, therefore, invalid.

### THIRD CLAIM FOR DECLARATORY RELIEF
### pursuant to 28 U.S.C. § 2201(a)
### Ownership of the Steinbeck Trademarks

94.    The Estate of Elaine Steinbeck incorporates herein by reference all of the allegations and averments contained in Paragraphs 1 through 93 of these counterclaims.

95.    The Estate of Elaine Steinbeck avers that by virtue of the Will of John Steinbeck,

the written transfer and assignment agreement from Elaine Steinbeck, and the trademark registrations and applications filed with the U.S.P.T.O., that the Foundation is the rightful and lawful owner of the Steinbeck Trademarks.

96.     Accordingly, Thomas Steinbeck has no rights to the JOHN STEINBECK trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff The Estate of Elaine Steinbeck demands judgment against Plaintiffs and Counterclaim Defendants as follows:

(1)     Dismissing the Complaint by Thomas Steinbeck and Blake Smyle with prejudice and denying each and every request for relief set forth therein;

(2)     On Defendant and Counterclaim Plaintiff's counterclaims, awarding the Declaratory Relief sought therein, namely:

a.     A declaration that the 1983 Settlement Agreement governs the respective rights of the parties with respect to issues related to copyrights and distribution of royalties from John Steinbeck's works and therefore, the 1983 Settlement Agreement is dispositive of Plaintiffs' complaint;

b.     A declaration that all five Notices of Termination issued by Thomas Steinbeck and Blake Smyle are invalid. Accordingly, no contracts or rights have been terminated. The *status quo* remains as it existed prior to the issuance of the five Notices of Termination;

c.     A declaration that the Steinbeck Trademarks are owned by the Steinbeck Heritage Foundation; and

d.     A declaration that Thomas Steinbeck has no valid trademark claims to the

45

A-227

name, likeness, and signature of John Steinbeck.

(3)    Granting Defendant and Counterclaim Plaintiff such other and further relief as the

Court may deem just and equitable.

Dated: September 30, 2004
       New York, New York

PILLSBURY WINTHROP LLP

By:

Susan J. Kohlmann (SK1855)
Carolina A. Fornos (CF 6689)
Nancy V. Thornton (NT 5325)
1540 Broadway
New York, New York 10036
(212) 858-1000

*Attorneys for Defendant and Counterclaim
Plaintiff Waverly Scott Kaffaga, as the
Executrix of the Estate of Elaine Anderson
Steinbeck (the "Estate of Elaine Steinbeck")*

To:

Alon Markowitz, Esq.
Mark S. Lee, Esq. (*pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
500 Fifth Avenue, 38th Floor
New York, New York 10110
(212) 382-0200
*Counsel for Plaintiff and Counterclaim Defendants Thomas Steinbeck and Blake Smyle*

Elizabeth McNamara
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, Suite 2700
New York, New York 10019
(212) 489-8230
*Counsel for Defendants Samuel Pinkus, Eugene H. Winick, and McIntosh & Otis, Inc.*