ELIZABETH A. McNAMARA (*pro hac vice*)
    lizmcnamara@dwt.com
LANCE KOONCE (*pro hac vice*)
    lancekoonce@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1633 Broadway, 27th Floor
New York, New York 10019-6708
Telephone:  (212) 489-8230
Fax:  (212) 489-8340

NICOLAS A. JAMPOL (State Bar No. 244867)
    nicolasjampol@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
MCINTOSH & OTIS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THOMAS STEINBECK, an individual; and BLAKE SMYLE, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WAVERLY SCOTT KAFFAGA, individual and as executrix of the ESTATE OF ELAINE STEINBECK; JEAN ANDERSON BOONE, an individual; DAVID SCOTT FARBER, an individual; ANDERSON FARBER KING, an individual; JEBEL KAFFAGA, an individual; BAHAR KAFFAGA, an individual; DRAMATISTS PLAY SERVICE, a New York Corporation; MCINTOSH & OTIS, INC., a New York Corporation; and Does 1-10, inclusive, <br><br> Defendants. | Case No. 14-cv-08681-TJH-FFM <br><br> **MCINTOSH & OTIS'S (1) NOTICE OF JOINDER AND JOINDER IN THE ESTATE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT; AND (2) NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Date:      July 27, 2015 <br> Time:     UNDER SUBMISSION <br> Crtrm:    17 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE** that defendant McIntosh & Otis, Inc. ("M&O") joins in the Motion to Dismiss the First Amended Complaint ("FAC") filed by defendants Waverly Scott Kaffaga, Jean Anderson Boone, David Scott Farber, Anderson Farber King, Jebel Kaffaga, and Bahar Kaffaga (collectively, the "Estate Defendants"), on June 1, 2015, and which is calendared for July 27, 2015.  Dkt. # 60 (the "Estate's Motion").  This joinder is made on the grounds that Plaintiffs have failed to state any valid claim against M&O for the same reasons as those set forth the Estate's Motion, and thus the FAC should be dismissed in its entirety.  This joinder is based upon this notice of joinder and the Estate's Motion and Memorandum of Points and Authorities, which M&O fully incorporates here by reference.

    **PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Civil Procedure 12(b)(6), on July 27, 2015, or as soon thereafter as the matter may be heard by the above-entitled Court, M&O will and hereby does move to dismiss the FAC.  In addition to the reasons set forth in the Estate's Motion – which, as stated above, M&O joins and incorporates by reference – M&O brings this motion on the grounds that the First, Third, Fourth, and Fifth Causes of Action against M&O fail for the following independent reasons:

    1.    Plaintiffs' request in their First Cause of Action for a declaration that they validly terminated M&O as literary agent in 2004 should be denied because the Southern District of New York *and* the Second Circuit Court of Appeals have already soundly rejected this argument by Plaintiffs, and thus their request for declaratory relief on these grounds is barred by collateral estoppel.

    2.    Plaintiffs' request in their First Cause of Action that M&O breached its contractual obligations under the purported contract – 1983 Settlement Agreement – and thus justify termination of the agency relationship should also be denied because

1

M&O was not a party to that agreement and, regardless, the agreement does not entitle Plaintiffs to the requested royalty payments.

3.      Even if the termination notices attached as Exhibits H & I to the FAC are valid – which they are not – Plaintiffs' Third Cause of Action for contributory copyright infringement fails to state a claim against M&O because Plaintiffs allege only that M&O "demanded" that defendant Dramatists Play Service ("DPS") pay royalties to M&O instead of to Plaintiffs.  But even if true, merely demanding that a third party infringe another's copyright does not constitute contributory copyright infringement.

4.      Even if the termination notices attached as Exhibits H & I to the FAC are valid – which they are not – Plaintiffs' Fourth Cause of Action for breach of contract fails to state a claim against M&O because it was not a party to the agreement which forms the basis of the claim, specifically the 1983 Settlement Agreement between Elaine Steinbeck, Thomas Steinbeck, and John Steinbeck IV.

5.      Even if the termination notices attached as Exhibits H & I to the FAC are valid – which they are not – Plaintiffs' Fifth Cause of Action for breach of the implied covenant of good faith and fair dealing fails to state a claim against M&O because it was not a party to the underlying contract, the 1983 Settlement Agreement, and thus has no obligations implied from that contract.  In addition, even if M&O was a party to the 1983 Settlement Agreement, a claim for a breach of the implied covenant requires something beyond the breach of the contractual duty itself.

This motion is based upon this notice of motion, the attached memorandum of points and authorities, the Estate's Request for Judicial Notice (Dkt. # 61), any other matters of which this Court may take judicial notice, all pleadings, files, and records in this action, and such other argument as may be presented to the Court at the time of the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 27, 2015.

MCINTOSH & OTIS'S JOINDER AND MOTION TO DISMISS

DATED: June 1, 2015

DAVIS WRIGHT TREMAINE LLP
ELIZABETH A. McNAMARA
LANCE KOONCE
NICOLAS A. JAMPOL

By:    /s/ Elizabeth A. McNamara
          Elizabeth A. McNamara

Attorneys for Defendant
MCINTOSH & OTIS, INC.

3

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ........................................................................ 1

II.   FACTUAL BACKGROUND ......................................................................... 3

    A.    M&O's History with John Steinbeck and His Literary Works ........... 3

    B.    The 1983 Settlement Agreement ...................................................... 4

    C.    Management of the Steinbeck Works ............................................... 5

    D.    The 2004 Litigation ......................................................................... 5

    E.    The Purported Termination Notices and This Action ....................... 7

III.  ARGUMENT ............................................................................................. 7

    A.    For All of The Reasons Stated in the Estate's Motion, Each of
           Plaintiffs' Claims Must Be Dismissed. ............................................. 7

    B.    The First Cause of Action Fails Because M&O's Agency Has Not
           Been Terminated, and Is Not Terminable By Plaintiffs. ..................... 9

         1.    Plaintiffs' Argument That They Had the Authority to
              Terminate M&O Is Barred By Collateral Estoppel. ................. 9

         2.    Plaintiffs Have Not Stated A Claim For Terminating
              M&O's Agency Based on Alleged Breach of
              Contract. ............................................................................... 13

    C.    Even If The Copyright Termination Notices Were Valid,
           Plaintiffs' Claims Against M&O Still Fail. ........................................ 14

         1.    The Third Cause of Action for Contributory
              Copyright Infringement Fails. ................................................ 14

         2.    The Fourth Cause of Action for Breach of Contract
              Fails. ..................................................................................... 16

         3.    The Fifth Cause of Action for Breach of the Implied
              Covenant of Good Faith and Fair Dealing Fails. ..................... 17

IV.   CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
 239 F.3d 1004 (9th Cir. 2001) ........................................................................ 15

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,
 2012 WL 404775 (S.D. Cal. Feb. 8, 2012)....................................................... 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)........................................................................................ 15

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).................................................................................. 12, 15

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
 222 Cal. App. 3d 1371 (1990) ....................................................................... 17

*Chaset v. Fleer/Skybox Int'l*,
 300 F.3d 1083 (9th Cir. 2002) ....................................................................... 18

*Clark v. Bear Stearns & Co.*,
 966 F.2d 1318 (9th Cir. 1992) ....................................................................... 10

*Ellison v. Robertson*,
 357 F.3d 1072 (9th Cir. 2004) ....................................................................... 15

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
 76 F.3d 259 (9th Cir. 1996) ........................................................................... 15

*Hydranautics v. FilmTec Corp.*,
 204 F.3d 880 (9th Cir. 2000) ......................................................................... 10

*Jonathan Neil & Assocs. v. Jones*,
 33 Cal. 4th 917 (2004) ................................................................................... 17

*Peck v. C.I.R.*,
 904 F.2d 525 (9th Cir. 1990) ......................................................................... 10

*Penguin Group (USA) Inc. v. Steinbeck*,
 537 F.3d 193 (2d Cir. 2008)........................................................................ 6, 10

ii

*Penguin (USA), Inc. v. Steinbeck*,
   2009 WL 857466 (S.D.N.Y. Mar. 31, 2009) ....................................................... 5

*Perfect 10, Inc. v. Visa Int'l Service Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ........................................................................ 15

*Resolution Trust Corp. v. Keating*,
   186 F.3d 1110 (9th Cir. 1999) ..................................................................... 10

*Steinbeck v. McIntosh & Otis, Inc.*,
   131 S. Ct. 2991 (2011) ................................................................................ 11

*Steinbeck v. McIntosh & Otis, Inc.*,
   2009 WL 928171 (S.D.N.Y. Mar. 31, 2009) .................................... 4, 6, 10, 11

*Steinbeck v. McIntosh & Otis, Inc.*,
   2009 WL 928189 (S.D.N.Y. Mar. 31, 2009) ............................................. 3, 6

*Steinbeck v. Steinbeck Heritage Found.*,
   400 F. App'x. 572 (2d Cir. 2010) ............................................................. 7, 11

*UMG Recordings, Inc. v. Bertelsmann AG*,
   222 F.R.D. 408 (N.D. Cal. 2004) ................................................................. 15

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ..................................................................... 16

**Statutes**

17 U.S.C. § 304 .................................................................................. *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     SUMMARY OF ARGUMENT

No strangers to the court system, Plaintiffs now seek a new forum in yet another attempt to undo (1) John Steinbeck's decision, nearly 50 years ago, to leave the copyrights to all of his works to his wife Elaine Steinbeck ("Elaine") instead of his sons, and (2) the 1983 settlement agreement entered into by plaintiff Thomas Steinbeck ("Thom") and plaintiff Blake Smyle's father, John Steinbeck IV ("John IV"), over thirty years ago, whereby they provided Elaine with "complete power and authority" to exploit and/or terminate all of Steinbeck's works and granted her with the "sole discretion" to terminate M&O as the literary agent for John Steinbeck's works, in exchange for a greater financial interest in certain Steinbeck works (the "1983 Settlement Agreement").  Despite a multitude of efforts by Thom and John IV, and later Thom and Blake, to rewrite this history via a series of litigations, the federal courts have refused Plaintiffs' efforts, and consistently confirmed the contractual bargains reached by the parties.  This latest effort by Plaintiffs to override Steinbeck's will and the 1983 Settlement Agreement should likewise be rejected.

In this most recent attempt, Plaintiffs bring claims against the Estate Defendants and M&O for contributory copyright infringement based on an alleged direct infringement by DPS involving stage rights to the play version of *Of Mice and Men*, and for breach of contract and breach of the implied covenant of good faith and fair dealing based on an alleged failure to pay royalties.  Plaintiffs also seek a declaration that they control certain rights in Steinbeck works, and specifically with respect to M&O, Plaintiffs contend that M&O can no longer act as Plaintiffs' agent with respect to those purported copyright interests and that the Powers of Attorney to Elaine Steinbeck entered into in connection with the 1983 Settlement Agreement are similarly invalid.  The remainder of the declaratory relief sought by Plaintiffs is pled against both M&O and the Estate Defendants, and relates primarily to the validity of specific notices of termination under the Copyright Act.

MCINTOSH & OTIS'S JOINDER AND MOTION TO DISMISS

Each of Plaintiffs' claims against M&O fail, in the first instance, for all of the reasons set forth in the Estate Defendants' Motion to Dismiss (the "Estate's Motion"), since they apply with equal weight to M&O.  Accordingly, M&O joins the Estate's Motion and incorporates both the Estate's Motion and the accompanying Memorandum of Points and Authorities here.  In particular, as argued in the Estate's Motion, Plaintiffs served two termination notices purporting to terminate certain grants of stage rights in the play version of *Of Mice and Men*, but only *the Estate* has the right to control the exploitation of the Steinbeck Works, including the right to terminate grants.  Estate's Motion at 11-12, 14-15.  Plaintiffs do have a pecuniary interest in the Estate's exploitation of certain works – a very lucrative one – but they long ago contracted away any right of control over the works.  In addition, while Plaintiffs attempt to invalidate the decades-old Settlement Agreement as an "agreement to the contrary" under Section 304 of the Copyright Act, the case law, legislative history, and prior court decisions all make clear that this provision does not apply to contractual agreements between heirs.  Estate's Motion at 16-20.

Plaintiffs' First Cause of Action seeking a declaration that M&O's agency agreement is either no longer in place, or should be terminated by this Court, independently fails because this issue has already been *fully litigated* before in the Southern District of New York and the Second Circuit, which both squarely rejected this identical argument.  Plaintiffs are thus collaterally estopped from relitigating the issue here.  Failing that contention, Plaintiffs next argue that M&O's agency relationship should be terminated because M&O purportedly breached the over-three-decade-old Settlement Agreement even though it was not a party to that agreement, and regardless, the 1983 Settlement Agreement did not entitle Plaintiffs to the requested royalty payments.

Lastly, Plaintiffs' Third, Fourth, and Fifth causes of action against M&O for, respectively, contributory copyright infringement, breach of contract, and breach of the implied covenant of good faith and fair dealing would still fail even if the

Purported Termination Notices (FAC ¶ 41, Exs. H & I) were valid and this Court thus denies the Estate's Motion.  Specifically, Plaintiffs' contributory copyright infringement claim fails for the basic reason that DPS, the alleged direct infringer, has not infringed any rights held by Plaintiffs, as the Estate's motion establishes.  Absent direct infringement, there cannot be contributory infringement.  Next, Plaintiffs' contract claims fail because M&O was not a party to the 1983 Settlement Agreement that was purportedly breached, and, separately, an implied covenant claim requires more than re-alleging a breach of contract.

For these reasons and those set forth below, Plaintiffs' First Amended Complaint should be dismissed with prejudice in its entirety.

## II.    FACTUAL BACKGROUND

### A.    M&O's History with John Steinbeck and His Literary Works

M&O's relationship with Nobel and Pulitzer Prize-winning author John Steinbeck and his works is perhaps unique among authors and literary agents.  M&O began representing Steinbeck in 1931, served as his agent throughout his entire life, and continues to serve as agent for his works today.  *Steinbeck v. McIntosh & Otis, Inc.*, 2009 WL 928189, at *1 (S.D.N.Y. Mar. 31, 2009).  Over the course of his career, Steinbeck wrote more than two dozen books (the "Steinbeck Works"), including the widely-acclaimed *Of Mice and Men* and *Grapes of Wrath*.  FAC ¶ 24.

When John Steinbeck died in December 1968, he bequeathed the entirety of his literary estate to his wife Elaine, and made her the co-executor of his estate.  FAC ¶¶ 25-26; *Steinbeck v. McIntosh & Otis, Inc.*, 2009 WL 928189, at *1 (S.D.N.Y. Mar. 31, 2009), *aff'd*, *Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572 (2d Cir. 2010).  To his sons Thom and John IV, Steinbeck left $50,000 each (not an insubstantial amount in 1968), but did not leave them any interests in the Steinbeck Works.  *Id.*  John Steinbeck thus made a clear choice only to leave a certain amount of money in trust for his sons, while bequeathing his copyrights and other rights in his Works to his wife, along with instructions for her to manage those rights.

**B.     The 1983 Settlement Agreement**

Despite John Steinbeck's express final wishes, by virtue of the Copyright Act, Thom and John IV subsequently obtained certain copyright interests in some of the Steinbeck Works.  In 1974, Elaine, Thom and John IV entered into an agreement specifying that royalties from those renewal interests that were partially owned by Thom and John IV (the so-called "Later Works") would be divided fifty percent to Elaine and twenty-five percent each to Steinbeck's sons.  *Steinbeck v. McIntosh & Otis, Inc.*, 2009 WL 928171, at *1 (S.D.N.Y. Mar. 31, 2009), *aff'd*, *Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572 (2d Cir. 2010).

In 1981, Thom and John IV sued Elaine to demand a greater share of royalties from the Later Works.  After the district court dismissed Thom and John IV's complaint and they appealed, the parties entered into the 1983 Settlement Agreement. *Id.*; FAC ¶ 30, Ex. B.  In exchange for Elaine's agreement to apportion the royalties for the Later Works on a one-third basis for each of the three parties – instead of the previous 50% share to Elaine and 25% share to each Thom and John IV – Thom and his brother "granted to Elaine the exclusive power to manage John Steinbeck works, including works in which T. Steinbeck and J. Steinbeck IV had copyright interests," and "also agreed to give Elaine the sole power to hire or fire the agents at M&O, in connection with John Steinbeck's works."  FAC ¶ 31, Ex. C.  Specifically, the 1983 Settlement Agreement provided:

> The Parties hereby appoint M&O as their literary agent to administer in the future, as it has in the past, all copyrights and rights deriving therefrom in the works of John Steinbeck.  Said appointment shall be terminable solely at the discretion of Elaine Steinbeck.  Elaine Steinbeck and/or her agent shall have the complete power and authority to negotiate, authorize and take action with respect to the exploitation and/or termination of rights in the works of John Steinbeck in which John Steinbeck IV and Thom Steinbeck have or will have renewal or termination rights.  In order to effectuate the terms of this

MCINTOSH & OTIS'S JOINDER AND MOTION TO DISMISS

Paragraph, John Steinbeck IV and Thom Steinbeck shall each execute, simultaneously with the execution of this Agreement, an irrevocable power of attorney in favor of Elaine Steinbeck . . . .

FAC, Ex. B.

Thom and John IV duly executed a power of attorney to Elaine as required by the Settlement Agreement, which stated that Elaine had the sole authority to exercise their "rights of renewal and rights to terminate grants to third parties and make new contracts and grants and assignments of copyrights, and to negotiate and sign contracts and agreements and otherwise take and authorize action" on their behalf, with respect to all Steinbeck Works in which they held renewal or termination rights. FAC, Ex. C.

### C.   Management of the Steinbeck Works

Subsequent to 1983, consistent with the express terms of the 1983 Settlement Agreement all decisions regarding the copyrights were made by Elaine, and M&O followed her instructions.  Thom does not dispute that he benefited financially from this arrangement in light of the tremendous growth in the value of the properties in the intervening years as managed by Elaine and implemented by M&O. For example, in 1994, Elaine negotiated favorable new agreements with publisher Penguin Group that included annual guaranteed advances and increased royalties for all Works, including the Later Works.  *See Penguin (USA), Inc. v. Steinbeck*, 2009 WL 857466, at *1 (S.D.N.Y. Mar. 31, 2009).  These agreements proved to be a financial boon for all of the Steinbeck heirs.  In particular, when the novel *East of Eden* was chosen by Oprah Winfrey in 2003 as one of the selections for her "book club," sales of that novel soared and given the better financial terms negotiated with Penguin in 1994, the 2003 royalties on sales of *East of Eden* were in the millions of dollars.  *Id*.

### D.   The 2004 Litigation

After Elaine's death in 2003, Thom sent a letter to M&O claiming that he was terminating its agency "effective immediately," in connection with particular rights

to the Steinbeck Works. *Steinbeck v. McIntosh & Otis, Inc.*, 2009 WL 928171, at *1. Around that same time, Thom, along with John IV's daughter, plaintiff Blake Smyle ("Blake"), served purported statutory termination notices on various parties with respect to prior grants of rights in the Steinbeck Works, including one sent to Penguin. *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 197 (2d Cir. 2008). They also brought a complaint against the Estate, M&O, and others, claiming that Elaine and M&O had engaged in a 20-year conspiracy of misconduct designed to deprive him of rights to which he purportedly otherwise would have been entitled. Estate's Request for Judicial Notice ("RJN"), Ex. 1. The following month, Penguin brought an action seeking a declaration that the termination was invalid. *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d at 199.

M&O filed a counterclaim against Thom relating to his attempt to terminate M&O's agency. *Steinbeck v. McIntosh & Otis, Inc.*, 2009 WL 928171, at *1. In response, Thom moved for summary judgment, requesting declaratory relief that his termination of M&O's agency was proper, and M&O filed a cross-motion for judgment on the pleadings. *Id.* On March 31, 2009, the district court granted judgment on the pleadings to M&O, specifically finding that Thom had no authority to terminate M&O's agency. *Id.* The court explained that the overall structure of the 1983 Settlement Agreement demonstrated that "Elaine Steinbeck garnered the right to terminate M&O as literary agent for Steinbeck's works, in her sole discretion as part of a negotiated settlement. Plaintiff cannot now argue that her benefit of the bargain does not subsist." *Id.* at *3. In a separate opinion, the district court also recognized that the 1983 Settlement Agreement required M&O to follow the instructions of Elaine and held that Thom "had no right to extract undivided loyalty from M&O when they signed agreements that would necessarily require M&O to give its undivided loyalty to Elaine Steinbeck." *Steinbeck v. McIntosh & Otis, Inc.*, 2009 WL 928189, at *8.

On October 13, 2010, the Second Circuit affirmed the district court's decision, explaining that "[t]he Steinbeck sons surrendered 'complete authority' to Elaine Steinbeck to exploit John Steinbeck's copyrights and also vested her with 'sole discretion' to terminate M&O's agency." *Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 576 (2d Cir. 2010).

### E.     The Purported Termination Notices and This Action

In 2006, Plaintiffs served an invalid termination notice purporting to terminate Steinbeck's grant of non-professional stage rights in the play version in *Of Mice and Men* to defendant Dramatists Play Service, Inc. (the "DPS Termination Notice"). FAC, Ex. H.  In 2014, Plaintiffs served an invalid termination notice purporting to terminate Steinbeck's grant of professional stage rights in the play version of *Of Mice and Men* to defendant Samuel French, Inc. (the "Samuel French Termination Notice") (collectively, the "Purported Termination Notices").  FAC, Ex. I.

Based on the allegation that the Purported Termination Notices were valid, on November 7, 2014, Plaintiffs filed this action, and filed the First Amended Complaint ("FAC") on March 27, 2015.  In addition to a claim for declaratory relief (First Cause of Action), Plaintiffs brought three claims against M&O: contributory copyright infringement (Third Cause of Action), breach of contract (Fourth Cause of Action), and breach of the implied covenant of good faith and fair dealing (Fifth Cause of Action).  M&O now joins the Estate's Motion to Dismiss and separately moves to dismiss the First, Third, Fourth, and Fifth causes of action on alternative grounds.

### III.   ARGUMENT

### A.     For All of The Reasons Stated in the Estate's Motion, Each of Plaintiffs' Claims Must Be Dismissed.

 Plaintiffs' claims center on the validity or invalidity of the Purported Termination Notices.  Without the alleged copyright interests that successful terminations theoretically would provide to Thom and Blake, most of their requests for declaratory judgment collapse, as do their claims for contributory infringement by

MCINTOSH & OTIS'S JOINDER AND MOTION TO DISMISS

the Estate and M&O, direct infringement by DPS, and even their claims based on contract where those claims are based on a failure to pay royalties on copyright interests that only arise if the Purported Termination Notices are valid.  M&O fully joins in the Estate's arguments in its motion and respectfully requests that this Court dismiss Plaintiffs' claims with prejudice for the reasons set forth therein.

As argued in the Estate's Motion, Plaintiffs' two termination notices purporting to terminate certain grants of stage rights in the play version of *Of Mice and Men* are invalid because *only the Estate has the right to control the exploitation of the Steinbeck Works*, including the right to terminate grants.  Estate's Motion at 11-12, 14-15.  Plaintiffs have every right to collect their royalties, but more than thirty years ago, Thom and John IV contracted away the right to control the Steinbeck Works – including any right to terminate M&O's agency relationship – in exchange for significant increased royalty payments.[1]  Thus, while Plaintiffs hold a financial interest in any rights in *Grapes of Wrath* and *Tortilla Flat* that resulted from the  valid termination notices served by Elaine Steinbeck before her death, only the Estate has the right to control those "recaptured" copyright interests, and any exploitation of those rights by the Estate, through M&O as agent, cannot be the subject of valid legal claims by Plaintiffs, however creatively denominated.

Notwithstanding the clear contractual language in the 1983 Settlement Agreement that prevents their claims, Plaintiffs make a strained argument that the agreement – at least the provisions that they do not like – between the heirs of John

_____

[1] The control vested in the Estate with respect to the Steinbeck Works also means that Plaintiffs cannot themselves exploit any copyright interests in the Steinbeck Works, such as by serving termination notices for subsisting grants.  This invalidates both the *Red Pony* and *Long Valley* termination notices (which Plaintiffs agreed were invalid when they entered into a court-ordered stipulation to that effect in 2009), as well as the DPS and Samuel French termination notices.  *See* RJN, Ex. 6.  It also precludes Plaintiffs from serving any new termination notices in the future, for the same reasons.  In addition, as the Estate's Motion makes clear, Plaintiffs have identified no subsisting grants that could be terminated under the narrow window remaining under the Copyright Act and M&O is aware of no grants that fit within that narrow window.  Estate's Motion at 15-16.

Steinbeck is an "agreement to the contrary" under Section 304 of the Copyright Act. FAC ¶¶ 32-33.  But the case law, as well as legislative history, makes clear that this provision, which provides that terminations under Section 304 can be effectuated "notwithstanding any agreement to the contrary," was meant to protect authors and their heirs from waiving termination rights in favor of third parties with greater negotiating leverage, not contractual agreements among the heirs like the 1983 Settlement Agreement.  *See* Estate's Motion at 16-20.  Here, where all of the heirs in 1983 agreed to a framework for addressing termination rights, there is no basis for concluding that the agreement is an "agreement to the contrary" under the Act.  *Id.* Accordingly, since the Purported Termination Notices conflict with the terms of the 1983 Settlement Agreement, they are invalid as a matter of law.

### B.      The First Cause of Action Fails Because M&O's Agency Has Not Been Terminated, and Is Not Terminable By Plaintiffs.

Plaintiffs' pleading is not a model of clarity when it comes to their arguments regarding M&O's agency.  Plaintiffs argue variously that they validly terminated M&O as agent in 2004 (FAC ¶¶ 43, 56(a)-(c)), and that M&O has breached the agency relationship since 2004 by not accurately forwarding royalties relating to certain Steinbeck copyright interests, which should result in termination of the agency by this Court (FAC ¶¶ 56(k), 75).  Neither of these positions find support under applicable law.

### 1.      Plaintiffs' Argument That They Had the Authority to Terminate M&O Is Barred By Collateral Estoppel.

Plaintiffs contend that they terminated M&O as literary agent in 2004, and seek a declaration that this purported termination was "valid as it pertains to Plaintiffs' Terminated Rights and Plaintiffs' Inchoate Termination Rights."  FAC ¶ 56(a).  FAC ¶¶ 43, 56(a)-(c). But the Southern District of New York *and* the Second Circuit Court of Appeals have already soundly rejected this argument by Plaintiffs, and thus their claim for declaratory relief on these grounds is barred by

9

collateral estoppel.[2]  To the extent Plaintiffs argue that the purported termination nevertheless is effective for some limited purposes, this argument also fails because Plaintiffs have identified no cognizable legal theory supporting such a conclusion.

The doctrine of collateral estoppel, which is sometimes called issue preclusion, "prevents parties from relitigating an issue of fact or law if the same issue was determined in prior litigation." *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999).  Collateral estoppel "is intended to limit the number of times a defendant may be forced to litigate the same claim or issue, and to promote efficiency in the judicial system by putting an end to litigation." *Peck v. C.I.R.*, 904 F.2d 525, 527 (9th Cir. 1990).  Collateral estoppel bars relitigation if "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be litigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).[3]

In *Steinbeck v. McIntosh & Otis, Inc.*, Case No. 4-cv-5497 (GBD), 2009 WL 928171, at *1 (S.D.N.Y. Mar. 31, 2009), M&O filed a counterclaim in the 2004

---

[2] Ironically, Plaintiffs themselves make a collateral estoppel argument in the FAC based on an early ruling in the 2004 litigation by Judge Owen on the validity of the *Red Pony* and *Long Valley* termination notices, but for the reasons set forth in the Estate's Motion, this argument is meritless. That ruling was subsequently mooted on the relevant point by a stipulation between the parties that was so ordered by the court, and additionally on appeal the Second Circuit expressly declined to rule on the validity of the notices, eliminating any preclusive effect of the lower court ruling. *Penguin*, 537 F.3d 193.

[3] A similar doctrine, *res judicata*, "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).  "In determining whether successive lawsuits involve the same cause of action, we consider: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.*  To the extent Plaintiffs' claims are not barred by collateral estoppel, they are barred by *res judicata*.

Lawsuit challenging Thom's attempt to terminate M&O as agent with respect to certain works since the attempted termination was contrary to the express terms of the 1983 Settlement Agreement.  M&O subsequently moved for judgment on the pleadings as to the counterclaim and the court granted M&O's motion.  At the same time, the court denied as moot Thom's motion for summary judgment seeking to dismiss the counterclaim and requesting declaratory relief that he properly terminated M&O.  The court explained that the 1983 Settlement Agreement was "sufficient to bring about the appointment of M&O; similarly, it was also sufficient to delineate the manner of M&O's termination."  *Id.* at *2.  Specifically, "Elaine Steinbeck garnered the right to terminate M&O as literary agent for Steinbeck's works, *in her sole discretion*, as part of a negotiated settlement.  Plaintiff cannot now argue that her benefit of the bargain does not subsist."  *Id.* at *3 (emphasis added).[4]

Plaintiffs appealed the court's ruling, and on October 13, 2010, the Second Circuit affirmed.  Specifically, the court ruled that "[t]he Steinbeck sons surrendered 'complete authority' to Elaine Steinbeck to exploit John Steinbeck's copyrights and also vested her with 'sole discretion' to terminate M&O's agency."  *Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x. 572, 576 (2d Cir. 2010).  The court also rejected Plaintiffs' argument that Elaine's "sole discretion" to terminate M&O did not descend to her estate, finding instead that it was "fully descendible."  *Id.* at 579. Plaintiffs petitioned the United States Supreme Court for a writ of certiorari, which it denied on June 13, 2011.  *Steinbeck v. McIntosh & Otis, Inc.*, 131 S. Ct. 2991 (2011).

The issue of whether Plaintiffs had or have the right to terminate M&O has been fully litigated, resulting in a final decision in the district court, which was affirmed by the appellate court, and certiorari denied by the Supreme Court.  This is a final judgment on the merits against the very same Plaintiffs that are now attempting

---

[4] As Plaintiffs themselves allege, "In the 1983 Settlement Agreement T. Steinbeck and J. Steinbeck IV also agreed to give Elaine the sole power to hire or fire the agents at M&O, in connection with John Steinbeck's works."  FAC ¶ 31.

to re-litigate this very same issue here.  Accordingly, Plaintiffs' rehashed request for a declaration that they had and have the right to terminate M&O as literary agent for any of the Steinbeck Works is barred by collateral estoppel and must be denied.

To the extent that Plaintiffs argue that despite these prior decisions directly on point, those decisions do not reach M&O's agency as it relates specifically to Plaintiff's purported "Terminated Rights" or "Inchoate Terminated Rights," FAC ¶¶ 2-3, this contention also fails.  Plaintiffs provide no basis to avoid the clear ruling of these prior decisions and simply reframing the rights at issue does not change the conclusion.[5]  The prior court decisions are in no way limited to particular copyright interests, but instead are based directly on the clear language of the 1983 Settlement Agreement which gives the Estate the sole power to terminate M&O for any and all purposes, whose role is to "administer in the future, as it has in the past, all copyrights and rights deriving therefrom in the works of John Steinbeck," including works "in which John Steinbeck IV and Thom Steinbeck have or will have renewal or termination rights."  (A 417.)  Significantly, those prior decisions were issued after four of the five copyright termination notices that are at issue in this litigation had been served, and indeed three of those notices were before the courts in the prior action.  Plaintiffs identify no basis – nor could they – for distinguishing between the earlier notices and any later purported terminations, with respect to either M&O's role as an agent or the Estate's exclusive right in its "sole discretion" to terminate M&O as agent for Steinbeck works.[6]  For this independent reason, any claim

_____

[5] Further, Plaintiffs have pled no legal basis or facts supporting this conclusory argument, and thus the FAC fails to state a claim for this reason alone. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions") (internal quotation marks omitted).

[6] Of course, to the extent that any such distinction here is based on Plaintiffs' broader argument that the 1983 Settlement Agreement was an "agreement to the contrary" under 17 U.S.C. § 304 and does not preclude copyrights terminations by Plaintiffs, that argument fails for the same reasons set forth in the Estate's Motion. *See* Estate's Motion at 16-20.  It also fails because the agency agreement itself is not an "agreement to the contrary," because it does not and cannot affect the underlying

concerning the termination of M&O as the literary agent for Steinbeck works fail and must be dismissed.

## 2.   Plaintiffs Have Not Stated A Claim For Terminating M&O's Agency Based on Alleged Breach of Contract.

Plaintiffs contend – again, vaguely and without support – that certain actions taken by M&O in connection with its agency for the Steinbeck works require this Court to void the agency provisions in the 1983 Settlement Agreement.  Nowhere in the FAC do Plaintiffs set forth the elements of such a claim, or their factual support for the claim.  At best, it appears that the purported acts that Plaintiffs believe justify this extraordinary relief are the same ones complained of under Plaintiffs' fourth cause of action for breach of contract:[7]  an alleged failure to pay royalties from exploitation of non-professional stage rights to *Of Mice and Men* (FAC ¶ 73).[8]

As a preliminary matter, M&O could not have possibly breached the 1983 Settlement Agreement in purportedly failing to pay certain royalties because, as explained in Section III.C.2, M&O is not a party to that contract.  Even if it were, however, as explained in the Estate's Motion, Plaintiffs have no right to such royalty payments because the 1983 Settlement Agreement creates no contractual duty to compensate Plaintiffs for works that entered their copyright renewal term before John

---

copyright interests or preclude the actual exercise of termination rights, but merely designates an agent for *management* of the Steinbeck works.

[7] Plaintiffs also appear to argue that M&O's purported inducement of copyright infringement by DPS might also serve as a basis for terminating the agency.  As discussed in Section III.C.1, however, there is no basis whatsoever for an inducement claim here, nor do Plaintiffs explain why – even under Plaintiffs' version of the facts – such purported inducement would require termination of the agency agreement.

[8] To the extent that Plaintiffs' breach of contract claim is based in part on an alleged failure to pay royalties on *The Grapes of Wrath*, that work is a work renewed before John Steinbeck's death and is not subject to the royalty payment provisions in the 1983 Settlement Agreement.  Moreover, there is no factual basis for any argument that the relevant royalties have not been paid, because there is no dispute that Plaintiffs are each entitled to and have received 25% of said royalties pursuant to Section 304 of the Copyright Act.

Steinbeck died, as was the case with *Of Mice and Men*.  Estate's Motion at 23-24.
Any financial interest Plaintiffs might have in those royalties would be as a result of
the operation of Section 304 of the Copyright Act, and would be wholly outside the
parties' Settlement Agreement.  However, no such right even theoretically exists, as
Plaintiffs termination notices purportedly giving rise to such an interest were invalid
since they are in conflict with the clear language of the 1983 Settlement Agreement.
FAC, Ex. B.

**C.**      **Even If The Copyright Termination Notices Were Valid, Plaintiffs'
Claims Against M&O Still Fail.**

If the Purported Termination Notices were invalid – which they were –
Plaintiffs' claims must be dismissed against all parties for the reasons set forth in the
Estate's Motion, as discussed above.  But even if the Purported Termination Notices
*were* somehow valid, Plaintiffs' Third and Fifth causes of action against M&O for,
respectively, contributory copyright infringement and violation of the implied
covenant of good faith and fair dealing would still fail and must be dismissed.

**1.**      **The Third Cause of Action for Contributory Copyright
Infringement Fails.**

As set forth in the Estate's Motion, Plaintiffs' third cause of action for
contributory infringement fails because Plaintiffs holds no copyright in the rights
allegedly infringed, as the Purported Termination Notices allegedly giving rise to
such an interest were invalid.  Estate's Motion at 14-15, 22-23.  Absent a valid
copyright interest to enforce, it logically follows that Plaintiffs fail to state a direct
infringement claim by DPS and a contributory copyright infringement against M&O.
*Id.*

Even if the Purported Termination Notices were valid, M&O's purported
misconduct here constitutes merely "demanding" that DPS pay M&O royalties

instead of paying them to Plaintiffs.  FAC ¶ 51.[9]  Under well-established Ninth Circuit law, however, contributory copyright infringement requires "material contribution" to the direct infringement.  In *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788 (9th Cir. 2007), for example, the Ninth Circuit held that credit card companies were not liable for contributory infringement even though their services were used to process payments for the infringers.  The court explained that "[t]he credit card companies cannot be said to *materially contribute* to the infringement in this case because they have no direct connection to that infringement."  *Id.  See also Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004) (plaintiff must prove "that the defendant materially contributed to another's infringement" to succeed on contributory copyright infringement claim).

The type of "material contribution" which gives rise to a contributory copyright infringement claim is *substantially* more than what Plaintiffs have alleged here.  *See also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (finding "material contribution" because "it would be difficult for infringing activity to take place in the massive quantities alleged without the support services provided by the swap meet," including "the provision of space, utilities, parking, advertising, plumbing, and customers"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (Napster materially contributed to infringement because it provided the "site and facilities" for direct infringement) (emphasis added).  Further, a valid claim for contributory copyright infringement also requires the plaintiff to show the defendant's "substantial participation" in an act of direct infringement.  *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 411 (N.D. Cal. 2004).  *See also UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1032 (9th Cir. 2013) (referring to "material assistance requirement").

---

[9] Indeed, Plaintiffs allege nothing more than "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  *See also Twombly*, 550 U.S. at 555.

DWT 26904903v3 0066800-000002

Here, even if DPS did infringe Plaintiffs' copyright – which it did not – M&O did not provide material contribution to direct infringement, nor did it substantially participate in any infringement.  It merely continued to administer the copyright interests that it believed (and still believes) to be controlled by the Estate, including management of the royalty streams from prior grants of rights such as those to DPS. Accordingly, Plaintiffs' contributory copyright infringement against M&O fails.

**2.       The Fourth Cause of Action for Breach of Contract Fails.**

As set forth in the Estate's Motion, Plaintiffs' fourth cause of action for breach of contract fails because the Purported Termination notices were invalid, and thus Plaintiffs had no interest in the non-professional stage rights in *Of Mice and Men*. Estate's Motion at 23.  Their claim separately fails because these rights are not subject to the royalty distributions in the 1983 Settlement Agreement.  *Id.* at 23-24. Even if the Purported Termination Notices were valid *and* subject to the 1983 Settlement Agreement, however, Plaintiffs' breach of contract claim against M&O *still fails* because *it is not a party to the purportedly breached contract*, the 1983 Settlement Agreement.  FAC ¶ 73; FAC, Ex. B.  Indeed, the 1983 Settlement Agreement expressly defines the parties to the contract as John Steinbeck IV, Thom Steinbeck, and Elaine Steinbeck, and only those three parties are signatories to the agreement.  *Id.*

Even if M&O is a third-party beneficiary of the contract – by virtue of the fact that the parties agreed to appoint M&O as their literary agent "to administer in the future, as it has in the past" – such status could only arguably enable M&O to *bring* a breach of contract claim against a party.  It does not enable parties to bring a breach of contract claim against it.  *See, e.g., Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, 2012 WL 404775, at *4 (S.D. Cal. Feb. 8, 2012) ("A third-party beneficiary is not a contracting party.  [Counter-claimant] does not provide any argument or authority for the proposition that a third-party beneficiary may be sued for breach of contract.").  Accordingly, given that M&O was not a party to the 1983

Settlement Agreement, by definition it could not have breached that agreement. Plaintiffs' fourth cause of action must thus be dismissed.

### 3. The Fifth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails.

Even if the Purported Termination Notices were valid, Plaintiffs' fifth cause of action for breach of the implied covenant of good faith and fair dealing against M&O fails because, as explained above, M&O was not a party to the 1983 Settlement Agreement, and thus M&O has no obligations – imputed or otherwise – from that agreement.  Plaintiffs' claim fails for this reason alone.  Also, as set forth in the Estate's Motion, because the 1983 Settlement Agreement did not include any contractual duty to pay royalties on works that entered their renewal terms before John Steinbeck's death, the implied obligation of good faith and fair dealing cannot expand the parties' obligations beyond the four corners of the contract to include a duty to pay royalties not otherwise required by that 1983 Settlement Agreement. Estate's Motion at 24-25.

Even if M&O *were* a party to the 1983 Settlement Agreement, and there *were* some duty to pay royalties, this cause of action would still fail because while every contract "imposes on each party a duty of good faith and fair dealing in its performance," *Jonathan Neil & Assocs. v. Jones*, 33 Cal. 4th 917, 937 (2004), a claim for a breach of this implied covenant must involve "something *beyond* breach of the contractual duty itself."  *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990) (emphasis added).  "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395.

Here, Plaintiffs make no allegation against M&O separate and apart from its purported breach of the 1983 Settlement Agreement, addressed in Section III.C.2

1    above.  FAC ¶¶ 97-99.  Accordingly, Plaintiffs' fifth cause of action fails for this

2    reason as well.

3                         **IV.   CONCLUSION**

4        The FAC should be dismissed in its entirety with prejudice for the reasons set

5    forth in the Estate's Motion.[10]  If the Court denies the Estate's Motion, each of the

6    claims asserted against M&O should still be dismissed for the reasons set forth

7    above.

8

9    DATED: June 1, 2015            DAVIS WRIGHT TREMAINE LLP

10                                    ELIZABETH A. McNAMARA
                                       LANCE KOONCE

11                                    NICOLAS A. JAMPOL

12

13                        By:     /s/ Elizabeth A. McNamara
                                 Elizabeth A. McNamara

14

15                       Attorneys for Defendant
                      MCINTOSH & OTIS, INC.

16

17

18

19

20

21

22

23

24

---

25        [10] Because the FAC represents Plaintiffs' second attempt at stating a valid

26    claim and the Court has all of the factual allegations necessary to dismiss Plaintiffs'
     claims, and there is nothing Plaintiffs can change to survive dismissal, the Court

27    should dismiss Plaintiffs' claims *with prejudice*.  *See Chaset v. Fleer/Skybox Int'l*,
     300 F.3d 1083, 1087-1088 (9th Cir. 2002) ("Because any amendment would be

28    futile, there is no need to prolong the litigation by permitting further amendment.").