ELIZABETH A. McNAMARA (*pro hac vice*)
    lizmcnamara@dwt.com
LANCE KOONCE (*pro hac vice*)
    lancekoonce@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1633 Broadway, 27th Floor
New York, New York 10019-6708
Telephone: (212) 489-8230
Fax: (212) 489-8340

NICOLAS A. JAMPOL (State Bar No. 244867)
    nicolasjampol@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
MCINTOSH & OTIS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS STEINBECK, an individual; and BLAKE SMYLE, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>WAVERLY SCOTT KAFFAGA, individual and as executrix of the ESTATE OF ELAINE STEINBECK; JEAN ANDERSON BOONE, an individual; DAVID SCOTT FARBER, an individual; ANDERSON FARBER KING, an individual; JEBEL KAFFAGA, an individual; BAHAR KAFFAGA, an individual; DRAMATISTS PLAY SERVICE, a New York Corporation; MCINTOSH & OTIS, INC., a New York Corporation; and Does 1-10, inclusive,<br><br>Defendants. | Case No. 14-cv-08681-TJH-GJS<br><br>**MCINTOSH & OTIS'S REPLY IN SUPPORT OF (1) JOINDER IN THE ESTATE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT; AND (2) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: July 27, 2015<br>Time: UNDER SUBMISSION<br>Crtrm: 17 |

**TABLE OF CONTENTS**

**Page**

I. SUMMARY OF ARGUMENT ......................................................................... 1

II. ARGUMENT ..................................................................................................... 1

    A. The 1983 Settlement Agreement Is Not An "Agreement To The Contrary." ................................................................................................. 1

    B. Judge Owen's Ruling Has No Preclusive Effect Here. ......................... 2

    C. Plaintiffs Are Collaterally Estopped From Rearguing That They Had The Authority To Terminate M&O. .............................................. 4

    D. Plaintiffs' Contributory Copyright Infringement Claim Against M&O Fails. ............................................................................................... 5

    E. M&O Is Not Bound By The 1983 Settlement Agreement. .................. 8

    F. M&O Did Not Breach Any Duty Of Good Faith And Fair Dealing. ................................................................................................... 10

III. CONCLUSION ............................................................................................... 12

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Avidity Partners, LLC v. State*,
  221 Cal. App. 4th 1180 (2013) .................................................................... 11

*Brooks v. Key Trust Co. Nat. Ass'n*,
  809 N.Y.S.2d 270 (2006) ............................................................................ 9

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) .................................................................... 11

*Chaset v. Fleer/Skybox Int'l*,
  300 F.3d 1083 (9th Cir. 2002) .................................................................... 12

*Columbia Pictures Indus. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ..................................................................... 7

*Elaine. Steinbeck v. McIntosh & Otis, Inc.*,
  2009 WL 928171 (S.D.N.Y. Mar. 31, 2009) *aff'd*, *Steinbeck v. Steinbeck Heritage Found.*, 400 F. Appx. 572 (2d Cir. 2010) ............................ 9

*Haas v. Palace Hotel Co. of San Fran.*,
  101 Cal. App. 2d 108 (1950) ...................................................................... 10

*Harris v. Provident Life & Acc. Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002) ......................................................................... 10

*Jenkins v. JP Morgan Chase Bank*,
  216 Cal. App. 4th 497 (2013) ..................................................................... 11

*Mack v. Kuckenmeister*,
  619 F. 3d 1010 (9th Cir. 2010) ..................................................................... 5

*MBIA Ins. Corp. v. Royal Bank of Canada*,
  706 F. Supp. 2d 380 (S.D.N.Y. 2009) .......................................................... 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ..................................................................... 7

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*,
  494 F.3d 788 (9th Cir. 2007) .................................................................. 6, 7

*Ryan v. Editions Limited West, Inc.*,
    417 Fed. Appx. 699 (9th Cir. 2011) .................................................................. 6, 7

*Sanchez v. City of Fresno*,
    914 F. Supp. 2d 1079 (E.D. Cal. 2012) ............................................................. 10

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002) ......................................................... 10, 11

*Yamaha Corp. of America v. United States*,
    961 F.2d 245 (D.C. Cir. 1992) ............................................................................ 5

**Statutes**

17 U.S.C. § 106 ............................................................................................................ 7

**Rules**

Ninth Circuit Rule 36-3(a) .......................................................................................... 7

**Other Authorities**

Restatement (Second) of Judgments (1982) ............................................................... 5

# I. SUMMARY OF ARGUMENT

While Plaintiffs claim this lawsuit is not about re-litigating the past, Opp. at 2, their entire opposition brief demonstrates otherwise. Yet again, Plaintiffs attempt to undo the 1983 Settlement Agreement, which they freely and voluntarily negotiated and executed, and as the result of which they collected significant sums of money over decades. Yet again, they claim that the termination notices they issued without any authority whatsoever were actually valid and enforceable. And yet again, they claim that they have the authority to terminate M&O's relationship as agent for the Steinbeck Works, an argument that two other courts have squarely rejected.

Despite Plaintiffs' efforts, this Court should reject their unsupported claims and, once again, bind them to the consequences of their own decision to contract away certain rights in exchange for more royalties. The Copyright Act, including its provisions about termination rights, simply are not designed to allow family members to undo intra-family agreements regarding future royalties, and have not been interpreted by any court in that way.

For the reasons set forth in the Estate's and M&O's motion, and below, Plaintiffs' First Amended Complaint should be dismissed with prejudice in its entirety.

# II. ARGUMENT

## A. The 1983 Settlement Agreement Is Not An "Agreement To The Contrary."

As noted in M&O's motion papers, Plaintiffs' lawsuit is a house of cards that depends almost entirely on this Court finding that the 1983 Settlement Agreement, pursuant to which Plaintiffs have received significant benefits for over thirty years, was void *ab initio* as to its bargained-for provisions giving Elaine Steinbeck power to manage termination rights in certain of John Steinbeck's works. For all of the reasons set forth in the Estate's Reply, Plaintiffs' Opposition provides no further support for – and in fact undermines – Plaintiffs' argument that heirs cannot enter

1

into valid contractual bargains setting forth their respective rights in connection with the original author's works.

In particular, while the Copyright Act does not define "agreement to the contrary," courts have found that the phrase is intended to prevent publishers and producers from using superior bargaining power to compel authors, up front, to relinquish potentially valuable termination rights that belong to them and/or their heirs. Estate's Reply at 5-6. It is *not* intended to prevent statutory heirs from agreeing among themselves how to exercise their termination rights. Estate's Reply at 6. Indeed, the legislative history explains that the termination provision was intended to provide authors with a second chance to negotiate more advantageous grants in their works after those works had been sufficiently exploited to determine their value. Estate's Reply at 5. Here, the parties to the 1983 Settlement Agreement knew quite well the value of the Steinbeck Works and reached an agreement to allocate those valuable rights amongst themselves. The Copyright Act was never intended to – and does not – prohibit or invalidate intra-family agreements allocating rights and royalties to works whose value is well known to all of them, and Plaintiffs' claims must fail as a result.

### B. Judge Owen's Ruling Has No Preclusive Effect Here.

Plaintiffs also do not advance any meaningful support for their argument that a non-final decision by Judge Richard Owen in a prior case is *res judicata* as to the validity of several copyright termination notices served by Plaintiffs. Plaintiffs accuse defendants of trying to "confuse" this Court by raising a court-ordered stipulation that decisively resolves this issue – an order that Plaintiffs did not bother to even mention in their pleading, presumably because it moots their entire argument.

M&O does not dispute that Judge Owen ruled, in 2006, on summary judgment, that Plaintiffs' terminations of grants of motion picture rights in *Long Valley* and *The Red Pony* were valid (that is, he ruled that the Estate's counterclaims as to the invalidity of those notices could not go forward). The parties also agree that no final

judgment was entered with respect to Judge Owen's decision other than with respect to the Penguin termination notice and that his decision as to that notice was then certified for appeal,[1] was appealed to the Second Circuit, then remanded, after which Judge George Daniels granted summary judgment to the Estate and to M&O purportedly on all claims, with final judgements being entered accordingly.  There is, further, no dispute that at the Second Circuit pre-argument conference before the second appeal, the Second Circuit raised the fact that there were issues below that had not been made final in Judge Daniels' decision, and the parties then entered a stipulation, so ordered by the Court, that addressed all non-final claims (the "2009 Order").

     The 2009 Order could not be clearer.  It recites that Judge Daniels' decision resolved "Thomas Steinbeck and Blake Smyle's … first, second, fourth, fifth, seventh, eighth, ninth and twelfth claims (and by necessary inference the tenth, eleventh and thirteenth declaratory judgment claims) in the Complaint" against the Estate, as well as their "second, third, fourth and sixth claims in the Complaint" as pled against M&O.  It then notes that despite the fact that Judge Daniels' order purported to dismiss the case in its entirety, certain "certain counterclaims by the Estate Defendants against the Steinbecks, as well as, an intervenor complaint filed by intervenor plaintiff Nancy Steinbeck were not the subject of the summary judgment motions previously submitted to this Court." Thus, in order to achieve finality and confer jurisdiction on the Second Circuit, the parties agreed to dismissal of the counterclaims not subject to the summary judgment motion heard by Judge Daniels. There is no reference whatsoever to Judge Owen's prior decision.

---

[1] In his certification order, Judge Owen directed the entry of judgment only as to the validity of the Penguin termination notice, not as to validity of any other termination notices, and expressly noted that the parties had not waived their right to seek certification of the summary judgment decision in its entirety. *See* Estate's RJN (Dkt. # 61), Ex. 4.

Plaintiffs now argue, however, that the 2009 Order does not mean what it says, and despite the fact that the Order enters final judgments on all claims not resolved by Judge Daniels, the decision of Judge Owen somehow acts as a final judgment on the counterclaims. This despite the fact that the 2009 Order clearly states that judgment is to be entered in the Estate's favor on "Counterclaim Two (Validity of the Termination Notices)," not – as Plaintiffs would have it – on just one of the five termination notices. And this despite the fact that Judge Owen never entered judgment on any of the termination notices at issue in the instant case. The simple fact is that the only final judgments of the Southern District of New York are those of Judge Daniels, including the 2009 Order.

### C. Plaintiffs Are Collaterally Estopped From Rearguing That They Had The Authority To Terminate M&O.

As explained in the Motion, the Southern District of New York *and* the Second Circuit Court of Appeals have rejected Plaintiffs' now-tired argument that they validly terminated M&O as literary agent in 2004. Mot. at 9-11. In a bizarre attempt to avoid the straightforward application of collateral estoppel, Plaintiffs argue that "M&O speciously claims Plaintiffs are collaterally estopped from challenging the 1983 Settlement Agreement as an 'agreement to the contrary' under 17 U.S.C. §304(5)." Opp. at 16. This is not what M&O argued. M&O has argued only that Plaintiffs are collaterally estopped from asserting that they terminated M&O as literary agent, *not* that they are collaterally estopped from challenging the 1983 Settlement Agreement. Because Plaintiffs do not make any argument whatsoever about whether they are collaterally estopped from once again claiming that they terminated M&O, they have conceded the issue.

Although Plaintiffs restate the correct test for issue preclusion, they then contend that "M&O cannot demonstrate that the issues in this case are 'identical' to the issues decided in previous litigation." Opp. at 16-17. Of course, collateral estoppel applies to particular issues raised and decided in prior cases, and does not

4

require that *all* issues in the prior and present cases be identical. *See Mack v. Kuckenmeister*, 619 F. 3d 1010, 1023 (9th Cir. 2010) ("Issue preclusion applies to prevent relitigation of only a specific issue that was decided in a previous suit between the parties.") (internal quotation marks omitted). Here, Plaintiffs attempt to recast the "central issue" in the instant case as only the "federal issue" of whether the 1983 Settlement Agreement was an agreement to the contrary, and argue that the prior cases were decided on state law grounds and thus did not involve these "federal issues."

As M&O set forth in its initial motion papers, the *sole* issue it claims is precluded here is Plaintiffs' argument that they have validly terminated M&O as their literary agent. Mot. at 9-10; *see* FAC ¶¶ 43, 56(a)-(c). This issue was definitively decided by the Southern District of New York, and upheld by the Second Circuit. Mot. at 10-11. Plaintiffs do not even attempt to argue that this is not true, relying entirely on the sleight-of-hand discussed above to try to divert the Court's attention from the clear conclusion that Plaintiffs are collaterally estopped from trying again to terminate M&O.[2]

### D. Plaintiffs' Contributory Copyright Infringement Claim Against M&O Fails.

Plaintiffs concede, in the first instance, that if the Court finds that Plaintiffs' 2006 termination notice was invalid, there can be no direct copyright infringement here, and thus all contributory infringement claims fail. Opp. at 18; *see* Mot. at 14.

---

[2] To the extent that Plaintiffs argue that the *reasoning* underlying the previous court decisions no longer applies because Plaintiffs now argue that the 1983 Settlement Agreement is an "agreement to the contrary," this cannot not bar the application of collateral estoppel because the issue of whether Plaintiffs could validly terminate has been litigated and decided twice, and whether they now have new *arguments* does not create a new *issue*. *See, e.g., Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case") (emphases in original); Restatement (Second) of Judgments § 27, cmt. c (1982) ("[I]f the issue was one of law, new arguments may not be presented to obtain a different determination of that issue").

Even assuming copyright interests that might be enforced here, under Ninth Circuit law, one only contributorily infringes where he or she "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (internal quotation marks omitted). Plaintiffs wholly ignore M&O's arguments that M&O did not materially contribute to DPS's purported infringement, and thus concede the point.

Plaintiffs argue only that M&O "induced" DPS's purported infringement, Opp. at 18-20, based entirely on the allegations in Paragraph 51 of their First Amended Complaint. That paragraph alleges that "M&O has induced, encouraged and persuaded DPS to continue to exploit stage rights in *Of Mice and Men* despite T. Steinbeck's and Blake's objection" and has "induced, encouraged and persuaded DPS to pay M&O all monies generated by DPS's exercise of those rights despite the Notice of Termination served by T. Steinbeck and Blake . . . ." FAC ¶ 51. As set forth in M&O's initial motion papers, these allegations constitute merely of "naked assertions" – indeed, the statement that M&O "induced" DPS to infringe is a conclusion regarding the ultimate legal issue, not a factual allegation. Mot. at 15 n.9.

Plaintiffs' Opposition merely confirms that Plaintiffs are resting on the above bare allegations, restating that M&O induced or encouraged DPS to continue exploiting the work. Opp. at 20. Plaintiffs now say, disingenuously, that this is the same thing as alleging that M&O granted DPS "permission" to exploit the work. *Id.* (citing *Ryan v. Editions Limited West, Inc.*, 417 Fed. Appx. 699, 700 (9th Cir. 2011)). Putting aside that the complaint does not actually say this, in *Ryan*, by contrast, the defendant sold a poster of a copyrighted work to a third party, and *expressly* granted permission to that third party to make reproductions (even though the defendant did not have the authority to grant any such permission). *Ryan*, 417 Fed. Appx. at 700-701. Here, Plaintiffs do not allege that M&O actually purported to grant a license to

DPS, only that it in some wholly undefined way "encouraged" DPS to exploit Plaintiffs' alleged copyright.[3]

To the extent that the Plaintiffs rely on their allegation that M&O encouraged DPS to pay M&O royalties instead of paying them to Plaintiffs, Opp. at 20, liability for contributory copyright infringement based on "inducement" does not apply at all in this context. First, paying royalties (to any party) is not copyright infringement, because it is not a violation of any of the five exclusive copyright interests, as it does not constitute reproduction, distribution, public performance, display, or creation of a derivative work. *See* 17 U.S.C. § 106. Moreover, payment typically (and as alleged here) does not occur until *after* an exploitation of a copyright that generates royalties, and thus logically a demand to pay those royalties to a particular party cannot serve to induce a precedent infringement. Additionally, in the Ninth Circuit the "inducement rule" typically is applied where a device is being distributed; to the extent that inducement may be found outside of this context, it is only where a defendant "provid[es] some service used in accomplishing the infringement." *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013). *See also Visa*, 494 F.3d at 800-802 (credit card services); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) (search engine). No such services are alleged to have been provided here. Further, Plaintiffs simply do not provide any authority for the proposition that encouraging the payment of royalties to the wrong party constitutes contributory copyright infringement under the "inducement rule."[4]

---

[3] In addition, *Ryan* is not precedent under Ninth Circuit Rule 36-3(a).

[4] Plaintiffs rely on *Fung* in arguing that "communication" is one example of "an inducing message," Opp. at 19, but that case held nothing of the sort. The defendant in *Fung* operated multiple "torrent sites," which enabled third parties to download pirated copies of copyrighted works. *Fung*, 710 F.3d at 1023-1024, 1028-1029. Beyond merely collecting and organizing torrent files, one of the defendant's sites actually modified the files to make them more reliable for its users to download. *Id.* at 1028-1029. In addition, the defendant "posted numerous messages … requesting that users upload torrents for specific copyrighted films; in other posts, he provided links to torrent files for copyrighted movies, urging users to download them." *Id.* at 1036. In contrast to *Fung*, there is no device, product, or service at

In sum, as explained in the Motion, Plaintiffs' claim for contributory copyright infringement fails because DPS did not directly infringe any purported copyright. Mot. at 14. Even if DPS did infringe, however, this claim *still* fails because Plaintiffs conceded that M&O did not materially contribute to any infringement, and Plaintiffs lack any support whatsoever for the proposition that merely demanding a third party commit copyright infringement constitutes "inducement."

### E. M&O Is Not Bound By The 1983 Settlement Agreement.

While Plaintiffs assert a breach of contract claim against M&O for purportedly failing to pay them royalties from the exploitation of the non-professional stage rights of *Of Mice and Men*, Plaintiffs do not have any interest in those rights because their termination notices were invalid. Mot. at 16. Even if their termination notices were valid, however, royalties derived from the exploitation of these rights are not subject to the royalty distributions in the 1983 Settlement Agreement. *Id.* Plaintiffs do not dispute this latter point, but instead argue – irrelevantly, in light of the above – that even though M&O is not a party to the 1983 Settlement Agreement, it is still bound by its terms. This argument lacks merit.

The 1983 Settlement Agreement only determines the rights and obligations of the parties to that contract – Elaine Steinbeck, John Steinbeck IV, and Thom Steinbeck – not M&O. *See* FAC, Ex. B (expressly defining the parties to the agreement). The only reason M&O appears in the document at all is because the parties agreed that M&O would serve as literary agent for the Steinbeck Works and that only Elaine would have authority to terminate that relationship. Whatever obligations M&O has in connection with the Steinbeck Works do not stem from any obligation it has under the 1983 Settlement Agreement, but from its role as literary agent, which Elaine could have terminated at any time. Indeed, if Elaine *had* decided to terminate M&O's agency relationship, it would have no separate obligations under

---

issue here, and the defendant's alleged involvement in inducing infringement in *Fung* went *significantly* beyond the alleged conduct here.

8

MCINTOSH & OTIS'S REPLY ISO JOINDER AND MOTION TO DISMISS
DWT 27261535v4 0066800-000002

the 1983 Settlement Agreement – because none exist. In essence, Plaintiffs are attempting to turn what at most would be claims for breach of fiduciary duty into claims for breach of contract, but the mere existence of a written agency agreement does not convert such claims into breach of contract claims. *See Brooks v. Key Trust Co. Nat. Ass'n*, 809 N.Y.S.2d 270, 272 (2006) (explaining that plaintiff's claims for breach of fiduciary duty and breach of contract were duplicative).

Plaintiffs argue that under New York law, M&O is bound by the 1983 Settlement Agreement because it manifested an intent to be bound and assumed obligations under the contract, Opp. at 20, but they do not explain how exactly it manifested that intent or what supposed obligations M&O has under the contract, apart from its obligations as the selected agent for the Steinbeck Works.[5] More importantly, as one court already determined, any obligations that M&O does have under the 1983 Settlement Agreement *are solely to Elaine*. *Steinbeck v. McIntosh & Otis, Inc.*, 2009 WL 928171, at *8 (S.D.N.Y. Mar. 31, 2009) (recognizing that the 1983 Settlement Agreement required M&O to follow the instructions of Elaine and held that Thom Steinbeck "had no right to extract undivided loyalty from M&O when they signed agreements that would necessarily require M&O to give its undivided loyalty to Elaine Steinbeck"), *aff'd*, *Steinbeck v. Steinbeck Heritage Found.*, 400 F. Appx. 572 (2d Cir. 2010).[6]

---

[5] While Plaintiffs provide several case citations for the general proposition that a non-party may be bound by a contract if the non-party objectively manifests an intent to be bound by the obligations in the contract, they provide no support for the argument that a contract between two unrelated parties agreeing to name a non-party as an agent binds that agent to the promises that the parties made to each other.

[6] Plaintiffs argue that an entity can be found to have assumed the obligations of a contract by participating in the negotiations and drafting of the contract, Opp. at 21, but that consideration is merely used to determine whether a non-party has assumed obligations under the contract. *See, e.g., MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 397-398 (S.D.N.Y. 2009) (applying New York law). Here, again, there were no obligations for M&O to assume apart from its role as literary agent. Further, Plaintiffs' argument is based on a wholesale misreading of Judge Daniels' 2009 decision. That decision indicates only that M&O was involved in the *settlement* process, and thus was aware Elaine would be given the sole power to terminate M&O. 2009 WL 928171, at *2 ("It would appear nonsensical that a power

Similarly, Plaintiffs argue that under California law, M&O is bound by the 1983 Settlement Agreement because it voluntarily accepted the benefits of the transaction, and because it was the agent of a signatory. Opp. at 21-22. Again, however, any benefits stemming from its service as literary agent are the result of Elaine continuing the agency, not because it accepted benefits flowing from the 1983 Settlement Agreement. Plaintiffs rely on *Haas v. Palace Hotel Co. of San Fran.*, 101 Cal. App. 2d 108, 117 (1950), but that case expressly holds that that "[w]hile a person may accept the benefits of a contract made for his benefit, such acceptance implies an acceptance of the obligations *necessarily connected with the contract*"; here, M&O's obligations are not set forth in the contract, they are connected only to its role as literary agent for the Steinbeck Works. Second, the fact that the parties decided to appoint M&O – a decision which Elaine could have revisited – does not bind M&O to the agreement. Plaintiffs rely on *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1120 (E.D. Cal. 2012), but in that case, the agreement at issue specifically bound "all agents and employees" of the signatory, and thus the court found that because the defendants were agents of the signatory, they were bound to the agreement as well. That does not mean, however, that all agents are bound to all contracts agreed to by their principals.

Again, however, the salient point here is that the 1983 Agreement simply did not create contractual obligations that M&O has even been alleged to violate, given that the agreement does not cover the early works.

### F. M&O Did Not Breach Any Duty Of Good Faith And Fair Dealing.

Even if M&O was somehow a party to the 1983 Agreement, Plaintiffs' claim for breach of the duty of good faith and fair dealing still fails because Plaintiffs do not dispute that the claim relies on the same purported conduct as its breach of contract claim. "New York law does not recognize a separate cause of action for

---

of attorney would be necessary to evidence to M&O, the agent, that it could be fired by Elaine Steinbeck, the principal.").

10

breach of the covenant of good faith and fair dealing." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002). *See also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (explaining that New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled"). The claim also fails under California law, where causes of action for breach of implied duty of good faith and fair dealing that rely on the same purported facts as a breach of contract claim "may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

Plaintiffs strangely argue, instead, that *if* M&O is bound by the 1983 Settlement Agreement *but* the agreement does not expressly require M&O to compensate Plaintiffs for their ownership of certain rights, *then* M&O would still be required to compensate Plaintiffs under the duty of good faith and fair dealing. Opp. at 23-24. This is nonsensical. A claim for breach of the duty of good faith and fair dealing cannot expand a contract beyond its bounds to cover properties that are not the subject of the contract at all. *Wolff*, 210 F. Supp. 2d at 497 ("The covenant of good faith cannot be used to create independent obligations beyond the contract."); *Jenkins v. JP Morgan Chase Bank*, 216 Cal. App. 4th 497, 525 (2013) ("[I]t is well settled the implied covenant does not extend so far as to impose enforceable duties that are beyond the scope of the contract"); *Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1204 (2013) ("The implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed."). Plaintiffs seem to tacitly recognize this, and devote a footnote to asking the Court to allow them to amend their pleading to add "quasi-contractual/equitable claims" for these purported failures to pay royalties. Opp. at 23.

This request should be denied as futile,[7] and in any event Plaintiffs' contractual claims based on these alleged omissions must be dismissed.

### III. CONCLUSION

For the reasons set forth in M&O's and the Estate's motions to dismiss, and the reply briefs in support, the FAC should be dismissed in its entirety with prejudice.

DATED: July 13, 2015

DAVIS WRIGHT TREMAINE LLP
ELIZABETH A. McNAMARA
LANCE KOONCE
NICOLAS A. JAMPOL

By: /s/ Elizabeth A. McNamara
Elizabeth A. McNamara

Attorneys for Defendant
MCINTOSH & OTIS, INC.

---

[7] Plaintiffs have already had one opportunity to amend their complaint – in addition to the numerous opportunities in prior litigation – and cannot add any factual allegations that would cure the deficiencies in their claims. Accordingly, Plaintiffs' claims should be dismissed with prejudice. *See Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087-1088 (9th Cir. 2002) ("Because any amendment would be futile, there is no need to prolong the litigation by permitting further amendment.").